1

```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO

Case No. 21-cv-01382-NYW-NRN
_____

ANDREW SCHOBER,

     Plaintiff,

vs.

BENEDICT THOMPSON, et al.,

     Defendants.
_____

         Proceedings before N. REID NEUREITER, United
States Magistrate Judge, United States District Court for
the District of Colorado, commencing at 9:30 a.m., October
17, 2022, in the United States Courthouse, Denver, Colorado.
_____
         WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS
ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .
_____
                         APPEARANCES
         ETHAN MORA, Attorney at Law, appearing for the
Plaintiff.
         CARL HJORT, Attorney at Law, appearing for the
Thompson Defendants.
_____
                  TELEPHONIC MOTION HEARING
```

```
 1                  P R O C E E D I N G S
 2            (Whereupon, the within electronically recorded
 3   proceedings are herein transcribed, pursuant to order of
 4   counsel.)
 5            THE COURT:  This is Magistrate Judge Reid
 6   Neureiter, 9:30 a.m.  I'm calling the case Schober vs.
 7   Thompson, 21-cv-01382.  Appearances for the plaintiff,
 8   please.
 9            MR. MORA:  Good morning, Your Honor.  Ethan Mora
10   appearing on behalf of plaintiff Andrew Schober.
11            THE COURT:  Mr. Schober is also on the line; is
12   that right?
13            MR. MORA:  Yeah.
14            MR. SCHOBER:  Yeah.
15            THE COURT:  And for the defendant, the Thompsons?
16            MR. HJORT:  Good morning, Judge.  This is Carl
17   Hjort with Cantafio & Song for the Thompson defendants.
18            THE COURT:  Okay.  And Mr. -- are any of the Read
19   defendants or Hazel Wells, anybody appearing on behalf of
20   those people?  Mr. Hjort, did you -- have you had any
21   communication with the Read defendants?
22            MR. HJORT:  I have not, Your Honor.
23            THE COURT:  When Judge Wang -- has anybody else --
24   like at the scheduling order, did the Read defendants
25   appearing at the scheduling conference?
```

```
 1            MR. HJORT:  They did, yes.  They were present
 2   telephonically.
 3            MR. MORA:  Yes.  And I corresponded with Oliver
 4   Read via e-mail and he actually exchanged some discovery
 5   about a month ago.
 6            THE COURT:  Who is speaking?  You have to identify
 7   yourself.
 8            MR. MORA:  My apologies.  This is Ethan Mora for
 9   the plaintiff.
10            THE COURT:  So he was aware of this -- this
11   hearing today as far as you know?  Did somebody just join
12   the call?  Hello?  Did somebody just call in?
13            MR. VETZ:  Yeah, I'm just listening in.
14            THE COURT:  Can I ask who you are?
15            MR. VETZ:  Nick Vetz (ph).
16            THE COURT:  Are you just an observer?  This is
17   Magistrate Judge Reid Neureiter.  It's a public hearing, so
18   you're welcome to.  We're trying to --
19            MR. VETZ:  No, that's correct.  I'm just an
20   observer.
21            THE COURT:  Okay.  All right.  Well, we've got a
22   motion to dismiss I think on personal jurisdiction grounds
23   by defendant Oliver Read, but Mr. Read is not on the phone.
24   I'll give him a couple more minutes.  I don't like having
25   communications with a party if the parties are not present,
```

4

1   but Mr. Read, none of the Read defendants are there.
2          Well, I'll hear from plaintiff's counsel.  I mean,
3   the motion is basically like he's never been in the United
4   States, he's never come to Colorado.  And your response is,
5   well, using the Internet and malware he's managed to have
6   impact in Colorado.
7          What are the best cases -- there have got to be
8   some cases about this where people are sued for malware in a
9   state where it has impact where they've never physically
10  been present.  What would be the best cases you would direct
11  me to that support your position there is personal
12  jurisdiction over an international defendant like Mr. Read?
13         MR. MORA:  Well, Your Honor, there is cases
14  particularly from the Ninth and Seventh Circuit.  I can
15  point you to Microsoft Corp v. Does (ph), which is a 2021
16  case.  There is Google v. Scaroviaov, Felland v. Clifton,
17  Green v. Carpellis (ph), and the United States vs. Hutchins.
18         In those cases, for example, the Felland and
19  Carpellis cases, address communications, (indiscernible) in
20  the form of e-mail, regular and telephone, in furtherance of
21  a fraudulent scheme can be the basis for specific
22  jurisdiction.
23         The Microsoft and Google cases stand for the
24  proposition that defendants who utilized malware to infect
25  or steal from victims in the U.S. are subject to

1   jurisdiction in the United States.

2             And the Hutchins case --

3             THE COURT:  Are those criminal cases or are those

4   private party -- private party civil cases?

5             MR. MORA:  The -- all of them that I mentioned,

6   except for Hutchins, is a civil -- are civil cases.

7   Hutchins is a criminal case, but in that case very

8   factually -- are relatively factually on point, discussing

9   the distribution of malware to a person in the United States

10  would subject the defendant's jurisdiction.

11            But in this case, I think it's also relevant that

12  the malware was operating on plaintiff's computer in

13  Colorado, and other cases, including the United States vs.

14  Hutchins and -- which notes the Wiretap Act -- discusses

15  software, including malware, as a device.  And so,

16  therefore, a device was operated by defendants in Colorado

17  as well.

18            THE COURT:  Okay.  Can you -- with respect to

19  those court cases, are those cited in your brief?

20            MR. MORA:  Those cases -- Hutchins is cited in the

21  brief.  I found Felland, Carpellis and Microsoft and Google

22  just a couple days ago.

23            THE COURT:  Okay.  Can you please give me the

24  citation -- say the full names again slowly and give me the

25  citations.

1          MR. MORA:  Okay.  The Microsoft v. Does, I have 21
2   U.S. District -- it's a Lexis cite, so Lexis 258143.
3          The Google case is Google, LLC vs. S-C-A-R-O-V, as
4   in Victor, I-A-O, V as in Victor.  That's 2022 U.S. District
5   Lexis 76860.
6          The Hutchins case is cited in my opposition.
7   That's 361 f.supp 3d 779.
8          There is also Felland vs. Clifton.  That's
9   F-E-L-L-A-N-D vs. Clifton 682 F.3d 665.
10         And the Green vs. Carpellis case is 2019 U.S.
11  District Lexis 39254.
12         THE COURT:  Okay, all right.  I'm not going to --
13  I'll look up the brief and those citations, then, and I'm
14  going to take this under advisement and make a decision.
15         Let me ask the other defendants who are present
16  with counsel, you did not -- did you move to join the motion
17  or did you -- are you not challenging personal jurisdiction?
18         MR. HJORT:  You know, we are challenging personal
19  jurisdiction.  We did not move to join Mr. Read's motion.
20  We'll be putting on our own motion on this topic probably
21  before the end of discovery.
22         THE COURT:  Okay.  So you sort of acknowledged
23  that discovery is appropriate on the personal jurisdiction
24  issue?  So we're not -- I mean, I realize the moving party,
25  Mr. Oliver Read, is not on the phone, but to the extent, you

1  know, there will be a decision made -- or at least a
2  recommendation, because I mean, procedurally what happened
3  was Judge Wang became a federal district judge, an Article
4  III, you all had consented her to jurisdiction.  She's now
5  keeping the substantive issues, but I think she referred
6  this one to me because there was a pro se party that moved.
7          Typically the Article III, if it's a fully
8  lawyered motion and they're keeping it, they won't refer to
9  a magistrate judge recommendation, but Judge Wang is -- who
10 knows what she's going to do.  She's sort of developing her
11 practices.
12         She's decided, though, she was going to keep any
13 cases to whom where the parties have consented to her
14 jurisdiction when she became an Article III judge.  So on
15 this recommendation it will be a recommendation.
16         But -- so that I don't -- you know, I'm here only
17 hearing one side making the argument and defense counsel
18 for -- is it Ms. Thompson, is that who you represent?
19         MR. HJORT:  That's correct.
20         THE COURT:  Are there any principles that you
21 think I should be -- I'm not asking you to argue your
22 client's motion right now, but it does seem like some of the
23 principles that you might be raising in your more
24 evidence-based motion to dismiss for lack of personal
25 jurisdiction, are there any principles or cases you think I

 1   need to be alert to here so that I'm not -- I'm not just
 2   hearing one side of the argument and issuing -- I mean, it
 3   does seem like if somebody is outside the United States, but
 4   they're launching long distance Trojan horses into an
 5   American state that has impact in America and ends up
 6   draining somebody's bitcoin account and electronically
 7   moving the -- the currency overseas, I can see that there
 8   might be jurisdiction in the United States to hold them to
 9   account for the tort that they committed here.
10           So are there any thoughts you would like to give
11   me as I struggle with this issue?
12           MR. HJORT:  I do have some thoughts, Judge, and
13   I'm happy to -- happy to give you some -- some of my
14   thoughts on the issue.  Sure, sure.
15           The first -- the first -- I mean, obviously we all
16   know the analysis is has a requirement to the Long Arm
17   Statute met, and two, is there minimum contact.
18           So my first problem is with the Long Arm Statute.
19   Now, Colorado has, what I would call, a limited Long Arm
20   Statute in that Colorado only allows for jurisdiction over
21   torts committed in Colorado.  Unlike say, for instance, a
22   state like New York, which has a Long Arm Statute that says
23   a tort committed outside the states having an impact inside
24   the state is covered by New York's Long Arm Statute, we have
25   no analogous provision to that here in Colorado.  So --

1           THE COURT:  But I thought the Long Arm Statute in
2    Colorado is co -- coexistent with the requirements of due
3    process.  So if the federal constitution allows it, then you
4    can have jurisdiction over someone.
5           MR. HJORT:  Well, so I think those are -- I think
6    it's two separate issues.  Yes, the Colorado Long Arm
7    Statute is commensurate with the full scope of due process,
8    but I think certain states have different -- different
9    scopes of their Long Arm Statute.  Certainly, you know, I've
10   had to, you know, litigate this issue a lot and I know that
11   there are differences between, you know, various state Long
12   Arm Statutes.
13          But my point is this, is that I don't believe this
14   was a tort that was committed in Colorado, okay.  If you
15   accept the fact as being true in the complaint, then the
16   defendants who are all located in the UK, all of their
17   actions take place in the UK.  And so to suggest that -- I
18   mean, I think that fits into the -- into the statutory
19   framework of a tort committed outside the state having an
20   impact inside the state, which isn't, you know, covered by
21   our Long Arm Statute.
22          THE COURT:  Okay.
23          MR. HJORT:  The second point I would make is that,
24   you know, minimum contact is just not present here.  You
25   know, minimum contact is its own, you know, analysis.  We

1  all know, you know, what to look for for minimum contact:

2  When people have property here, they employ people here,

3  they pay taxes here, they have a bank account here, they

4  enter into contract here.  None of that is the case, none of

5  that is the case.

6          THE COURT:  But help me understand how in the

7  electronic age of the Internet, I mean, is it -- is your

8  position that the only way the plaintiff here can get

9  justice is to sue in the UK because that's where the alleged

10 thieves were located and they used -- you know, talk about

11 long arms, they used the long arm of the Internet to come

12 into Colorado and pull the bitcoin out of the guy's computer

13 and out of his wallet.

14         But under your view, the only way that justice can

15 be done here, assuming the truth (indiscernible) in the

16 complaint is to sue in the UK?

17         MR. HJORT:  That's correct, Judge, yeah.  And, you

18 know, I don't know of any -- of any cases where we've

19 subjected people to personal jurisdiction based solely on

20 Internet contact.  I think this comes back to another like

21 major issue with this case is that, you know, I can tell you

22 that the Thompsons don't have any assets in Colorado, don't

23 have any assets in the United States.  I doubt --

24         THE COURT:  Collection is certainly going to be an

25 issue.

1              MR. HJORT:  Right, collection is going to be an
2     issue.  But, you know, when this judgment, if one is
3     obtained, is taken to a court in the UK for enforcement,
4     they're going to reconsider the issues of jurisdiction anew.
5     I don't think they're just going to -- they're just going to
6     enforce this -- you know, enforce a judgment without, you
7     know, considering whether this Court has jurisdiction to do
8     what we're purporting to do here.
9              So, you know, I -- I think that there is -- there
10    is a high potential that we all spent a bunch of money and
11    time, you know, taking this case, you know, through the
12    process, getting to a judgment, and then that judgment might
13    not be enforceable at the end of the day.
14             THE COURT:  All right.  My understanding is that
15    the sort of personal jurisdiction -- and this is sort of a
16    vague recollection, but the personal jurisdiction doctrine
17    in federal court has in some ways been modified by the
18    doctrine of forum non conveniens.
19             Does it -- to your knowledge, and maybe my
20    recollection is just off, but to your knowledge, does the
21    forum non conveniens doctrine have any role to play in the
22    analysis here?
23             MR. HJORT:  To my knowledge, no, I don't think the
24    forum non conveniens doctrine -- I mean, those are -- those
25    are separate -- separate issues.  No.

```
 1            THE COURT:  Okay.  All right.  Anything else that
 2   you want me to think about as I address this?
 3            MR. HJORT:  No.  Those are the only -- those are
 4   the only points I think I have right now.
 5            THE COURT:  Okay.
 6            MR. MORA:  Your Honor --
 7            THE COURT:  Yeah, you get to talk.  I'm not --
 8            MR. MORA:  Thank you, Your Honor.
 9            THE COURT:  Mr. Oliver Read's -- and he has --
10   even though he has not retained counsel, he just had a proxy
11   argue for him so you get a rebuttal.  Go ahead.
12            MR. MORA:  All right.  So, thank you, Your Honor.
13   I would like to offer just three points that clarify why
14   plaintiff is (indiscernible) prima facie burden at this
15   stage.
16            The first point is that software, as I mentioned,
17   including malware, is often considered a device by courts
18   and legislation.  And so this means that once the malware
19   was installed on Mr. Schober's computer, the defendants --
20   the defendant participated in a scheme that utilized a
21   device located in Colorado.
22            The defendants programmed the malware device to
23   steal bitcoins automatically.  So initially defendant may or
24   may not have known from where or from whom the malware sold
25   the bitcoin, but nevertheless, the defendants' decision to
```

1    indiscriminately target U.S. citizens and property in all 50
2    states surely does not mean that defendant should be subject
3    to jurisdiction (indiscernible).
4           My second point is that defendants damaged and
5    stole personal property belonging to Mr. Schobert which was
6    located in Colorado and subject to the U.S. and Colorado
7    laws.  So plaintiff's bitcoins were sent from a Colorado
8    cryptocurrency exchange -- or sent from Colorado to
9    cryptocurrency exchange in the British Virgin Islands where
10   at least two defendants have cryptocurrency wallets.
11          My third point is that Mr. Schobert is a Colorado
12   citizen and he experienced all of his (indiscernible) and
13   losses in Colorado.  I think the jurisdictional analysis
14   here might be less care had Mr. Schobert's bitcoins
15   initially been stolen from the wallet that was hosted on the
16   British -- in the British Virgin Islands, or had
17   Mr. Schobert been vacationing abroad, for example,
18   plaintiff's bitcoins were stolen.  But in this case,
19   Colorado is really the only reasonable jurisdiction.
20          There was a point on the collection that I wanted
21   to address, which is that Mr. Schobert just want his -- has
22   always just wanted his bitcoins returned.  And there is a
23   mechanism by which, I think, the Court might be able to
24   enforce on cryptocurrency exchanges.  At least, you know,
25   globally there is -- there is -- there is the OFAC list and

1   sanctions list, and there is the ability to blacklist
2   certain cryptocurrency wallets.  And I think there could be
3   potentially an order from a U.S. Court that would be -- that
4   easily enforceable on and implemented by exchanges, not only
5   in the UK, but exchanges such as bitcoin, where they're
6   based in the United States and have offices in operation in
7   the UK.
8           So if the rules -- if the judgment is in
9   plaintiff's favor and requires the return of bitcoins
10  because discovery has allowed us to trace the current
11  location of those bitcoins, an order can be enforced against
12  the exchanges, I think, to allow the return of
13  Mr. Schobert's bitcoins directly to him.
14          THE COURT:  Okay.  And fill me in, just because I
15  haven't, you know -- usually when a case is assigned to me
16  from the beginning, we have a status conference, I do the
17  scheduling conference and I get a better sense of what the
18  case is.  Here I'm just getting a motion to dismiss and I
19  may have to (indiscernible) on that.
20          The claim against the parents is they should have
21  somehow --
22          MR. MORA:  Yeah.  The defendants were minors at
23  the time, and there -- there may be some instances where the
24  defendant, at least one of them, or both were exchanging
25  bitcoins and other cryptocurrencies between one another in

1    an effort to launder and (indiscernible) the proceeds of
2    these ill-gotten gain.
3            THE COURT:  But what's your practical basis for
4    thinking the parents were involved?
5            MR. MORA:  We named the parents initially because
6    the defendant Read and -- Oliver Read and Benedict Thompson
7    were minors at the time when they committed the crimes.
8            THE COURT:  I know.  Do you have any -- do you
9    have any evidence that the parents were actually
10   meaningfully involved other than a letter was sent by the
11   plaintiff saying, Hey, make your kids give the money back or
12   the give the bitcoin back?  I'm just curious as to --
13           MR. MORA:  We subsequently uncovered that at
14   least -- well, one of the parents may have been involved in
15   certain transactions that are related to the stolen bitcoins
16   obtained from the malware, and that's relevant obviously
17   because bitcoins are obvious pseudonymous wallet address,
18   and so nothing about the owner needs to be known.  They can
19   be transferred peer to peer, from, to, anywhere by anyone.
20   And the defendants have also shown that they take steps to
21   mask their identities and their connections to their
22   unlawful conduct.
23           So identify -- identifying when or how the parents
24   interacted with the young men in this case is relevant to
25   tracing the bitcoins and uncovering exactly who was involved

```
 1   and what their degree of involvement was.
 2            THE COURT:  Okay.  All right.  Anything else?
 3            MR. MORA:  That's -- I have other points, Your
 4   Honor, but I think --
 5            THE COURT:  All right, make them.  I've got time.
 6   I don't want to cut you off.  When I -- sometimes when I say
 7   anything else, people think, Oh, he is cutting me off.  No,
 8   I really want to know.  If there is anything else, then go
 9   ahead and tell me what other points you have to make,
10   because we're --
11            MR. MORA:  Okay.
12            THE COURT:  So go ahead.
13            MR. MORA:  Yeah.  So I would like to just kind of
14   give the opening statement that I was prepared to make,
15   which is that plaintiff alleges the defendant
16   indiscriminately targeted their conduct to all U.S. citizens
17   and participated in a scheme that used a device that was
18   located in Colorado -- that's the malware -- to damage and
19   remove Mr. Schober's personal property from Colorado.
20   Property is his bitcoins and his bitcoin wallet and his
21   computer while located in Colorado.
22            The defendants' intentionally actions also caused
23   Mr. Schobert, who is a citizen of Colorado, harms and losses
24   that he experienced in Colorado due to the defendants'
25   (indiscernible) of Colorado laws.
```

 1          The theory here that I want to mention is that
 2   defendants were part -- initially a part of an online gaming
 3   crew and this is typically, you know, how some of these
 4   young hackers who have worked or developed.  They were put
 5   of an online gaming crew that eventually began developing
 6   malware that members of the crew used to steal bitcoins from
 7   unsuspecting victims that we did not believe were limited
 8   to, but certainly included plaintiffs.
 9          And I have some points as well just to note on the
10   reasonableness factor, which is mainly that specifically to
11   the fifth factor, which is that Mr. Schobert would be
12   prejudiced if the U.S. courts here did not require that the
13   citizens and its citizens' property are governed by United
14   States law and instead allow property theft, which is
15   bitcoins, the theft of bitcoin, and the use of malware in
16   the United States to be subject to the laws of foreign
17   nations when at all relevant times the citizens -- the
18   plaintiff here and his property were located in the United
19   States.
20          So the policy could be that the jurisdiction is
21   (indiscernible) where the stolen property -- where the
22   stolen and damaged property at issue existed during the
23   commission of the harms.  And it's only adds further reason
24   for the Court to exercise jurisdiction that the malware was,
25   in fact, operated in -- in Colorado.

1          THE COURT:  Okay.  Anything else?
2          MR. MORA:  That's all for me, Your Honor.  Thank
3   you.
4          THE COURT:  All right.  Okay.  I'll take it under
5   advisement.  Fill me in -- one other question I have is, I
6   think there is a reference to your client being just an
7   individual.  I don't know if that was in the complaint or
8   where it was, but fill me in on your client's background.
9   Does he work for living?  How old is he?  What's his
10  situation?
11         MR. MORA:  Yeah.  So my client is a massage
12  therapist in Colorado and he was devastated by this loss.
13  He had been saving these bitcoins to go back to school,
14  potentially buy a house and start a family.  And so, you
15  know, it's particularly devastating when he was able to sell
16  his bitcoins when the price went up to $58,000 per coin in
17  around April or May of last year.
18         During his -- when he experienced his loss, he
19  became understandably preoccupied and obsessed with -- I
20  would say obsessed with -- with pursuing, you know, who --
21  who might have been at fault.  At first, you know, he didn't
22  know whether anyone was at fault.  It could have been just a
23  rogue computer program or whatnot, but he eventually became
24  a certified open source intelligence analyst during this
25  process -- or during the ordeal in trying to find who stole

1   his bitcoin.

2           But at this point he still works as a massage

3   therapist.  And he is hoping, you know, to recover these

4   losses so that he can pick up where he left off and

5   hopefully carry on with his -- with his life.

6           THE COURT:  Okay, thank you.  Defense counsel for

7   the Thompsons, I allowed the plaintiff to describe a little

8   bit about the plaintiff.  Could you tell me a little bit

9   about your defendants?  This is the kind of conversation I

10  would have if I had held the scheduling conference with the

11  case.  Who are your clients?

12          MR. HJORT:  Sure, Judge.  My clients are Edward,

13  Claire and Benedict Thompson.  Benedict is Edward and

14  Claire's son.  They are -- you know, as I understand it, you

15  know, Benedict is a university student over there in the UK

16  and Ed and Claire are his parents.

17          THE COURT:  Okay.  All right.  Well, like I said,

18  we'll take it under advisement.  We'll try and get out a

19  recommendation relatively soon.  You all have a good day.

20  We'll be in recess.

21          (Whereupon, the within hearing concluded at 10:01

22  a.m.)

23

24

25

```
                                                        20

1                        TRANSCRIBER'S CERTIFICATE

2                I certify that the foregoing is a correct

3    transcript, to the best of my knowledge and belief (pursuant

4    to the quality of the recording) from the record of

5    proceedings in the above-entitled matter.

6

7    /s/Dyann Labo                        October 26, 2022

8    Signature of Transcriber             Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```