**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-01382-GPG-NRN

**ANDREW SCHOBER,**

> *Plaintiff,*

v.

**BENEDICT THOMPSON, et al.,**

> *Defendants.*

---

## MOTION FOR SUMMARY JUDGMENT

---

Defendants Benedict Thompson, Edward Thompson and Claire Thompson (collectively "the Thompsons"), by and through counsel Carl A. Hjort, III, of Robinson Waters & O'Dorisio, P.C., hereby move this Court for summary judgment dismissing Plaintiff Andrew Schober's ("Mr. Schober") remaining claims in this action pursuant to Federal Rule of Civil Procedure 56 and state and allege the following:

### I.      Introduction

The Court should enter judgment as a matter of law in favor of the Thompsons as to all remaining claims in the Complaint for a myriad of reasons.  First, Mr. Schober's claims are barred by the Statute of Limitations.  The Thompsons brought a motion to dismiss these claims at the outset of these proceedings, and the Plaintiff opposed that motion by representing to the Court that Mr. Schober did not know whether his Bitcoin was stolen or just missing, but that has now been proven to be manifestly untrue.  In documents received from the Federal Bureau of

1

Investigation ("FBI"), as early as February 8, 2018, a little over a week after the Bitcoin was withdrawn from Mr. Schober's wallet, he contacted the FBI to tell them that his Bitcoin was stolen and that the theft was caused by malware. Thus, as early as February 8, 2018, Mr. Schober knew of his injury, i.e. that his Bitcoin was stolen, and its cause, i.e. the malware installed on his computer. Although there are some conflicting decisions on this point, the Court should apply a two-year Statute of Limitations to the claims of conversion and trespass to chattels and find these claims time barred. But even if the Court applies a three-year period of limitations, the Complaint in this case would still need to have been filed by February 8, 2021, and it was not filed until over three months later. These claims are clearly barred by the Statute of Limitations.

Second, this Court lacks personal jurisdiction over the Thompsons. The Thompsons raised the defense of personal jurisdiction in the Answer and have not waived this defense. The Plaintiff bears the burden of proving that the Court has personal jurisdiction, and the Plaintiff, through discovery, has been given an opportunity to marshal facts in support of jurisdiction, but there are no facts to support this Court's exercise of personal jurisdiction. Instead, uncontroverted facts demonstrate that the Thompsons do not have minimum contacts with the State of Colorado, and exercising personal jurisdiction over them would not be consistent with due process. There is no basis for the Court to exercise personal jurisdiction over the Thompsons, who are residents of the United Kingdom, and have no contacts with Colorado.

Third, if the Court reaches the issue of damages in this case, the Court should limit Mr. Schober's damages to the value of the Bitcoin at the time it left his possession or a reasonable time thereafter. Bitcoin and other cryptocurrencies are notoriously volatile, and since 2018 the price of Bitcoin has collapsed significantly and rallied significantly numerous times. Mr. Schober contends that his damages are equal to the highest price of Bitcoin in the subsequent

years, but his contention is based on mere hindsight speculation that he would have sold at the top.  Instead, the Court should follow another court who has looked at this issue and conclude that Mr. Schober's damages are limited to the value of the Bitcoin at the time of his loss or a reasonable time, i.e. three months, thereafter.

Fourth, the Plaintiff has elected not to retain an expert witness in this case, but this is absolutely the type of case that requires an expert.  Most jurors will have no common experience or familiarity with Bitcoin, and certainly not with the highly technical questions of tracing Bitcoin or the alleged operation of the malware at issue in this case.  In cases where an expert witness is required, and the Plaintiff fails to designate one, the Court can enter judgment as a matter of law, since the Plaintiff will be unable to prove his case.  For all these reasons, the Court should enter summary judgment in favor of the Thompsons.

## II.      Statement of Undisputed Material Facts

### A.  The Untimeliness of this Action.

1. The Complaint in this action was filed on May 21, 2021 (See ECF Doc. #1).

2. On February 8, 2018, Mr. Schober contacted the FBI Public Access Line Unit to report that a computer intrusion, which he stated he suspected was caused by "the Malware" resulted in his loss of 16.4552 bitcoins.  (See Ex. "A," Plaintiff's Responses to Second Set of Written Discovery, Request for Admission #2 at page 6, ¶2[1]; See also, Ex. "B," Selected Document Production, SCHOBER_002919, paragraph titled "Complaint Details").

---

[1] For the Court's ease in review of the attached evidence, the relevant passages have been highlighted in the Exhibits.

3.  Mr. Schober told the FBI that, on February 7, 2018, he noticed that his attempted transfer of 16.4552 bitcoins from one of his Bitcoin wallets to another, was apparently intercepted. (See Ex. "A," Request for Admission #3 at page 6, ¶6; See also, Ex. "B," SCHOBER_002920, ¶1).

4.  Mr. Schober told the FBI that the malware is an address changer so it changed the destination of the transfer.  (See Ex. "A," Request for Admission #4 at page 7, ¶2; See also, Ex. "B," SCHOBER_002920, ¶2).

5.  Mr. Schober further told the FBI that the malware is called "the man in the middle" and he identified the bitcoin address to which his bitcoin was transferred.  (See Ex. "A," Request for Admission #5 at page 6, ¶6; See also, Ex. "B," SCHOBER_002920, ¶3).

6.  On February 23, 2018, Mr. Schober met with an FBI agent and gave the FBI custody of his laptop. (See Ex. "A," Request for Admission #6 at page 7, ¶10; See also, Ex. "B," SCHOBER_002920, ¶5).

7.  On February 25, 2018, Mr. Schober informed the FBI that his bitcoin had moved. (See Ex. "A," Request for Admission #7 at page 8, ¶3; See also, Ex. "B," SCHOBER_002921, ¶1).

8.  Documents produced by the FBI indicate that Mr. Schober again contacted the FBI Public Access Line on February 16, 2018 to provide additional information regarding the malware attack.[2] (See Ex. "B," SCHOBER_002923, paragraph titled "Complaint Details").

---

[2] Although Mr. Schober made this call and produced a contemporaneously made record from the FBI discussing this call, he concluded he could neither admit or deny the simple request for admission that this call took place. (See Plaintiff's Responses to Second Set of Written Discovery, Request for Admission #9 at page 8, ¶11.).

9. Documents produced by the FBI indicate that on February 16, 2018, Mr. Schober told the FBI that he had hired a malware expert to help him examine his laptop. (See Ex. "B," SCHOBER_002924, ¶3).[3]

10. Documents produced by the FBI indicate that on February 16, 2018, Mr. Schober told the FBI that the malware expert was able to find the source of the malware on his laptop. (See Ex. "B," SCHOBER_002924, ¶3).  Further, Schober admits that, in February 2018, he told the FBI that he believed he could identify the name and filepath of the Malware on his laptop, and Mr. Schober admits that he told the FBI, in February 2018, that the Malware's malicious payload was apparently created, updated, or published on January 23, 2018 and that on January 29, 2018 the Malware was downloaded onto Mr. Schober's laptop. (See Ex. "A," Request for Admission #11 at page 9, ¶7).

11. Documents produced by the FBI indicate that on February 16, 2018, Mr. Schober told the FBI that the theft happened on January 29, 2018. (See Ex. "B," SCHOBER_002924, ¶5). Further, Schober admits that "he told the FBI that the 'theft' began on January 29, 2018." (See Ex. "A," Request for Admission #12 at page 10, ¶3).[4]

12. On February 21, 2018, Mr. Schober contacted the FBI and provided the FBI a post on Reddit, which included a link to a GitHub repository containing the Malware. (See Ex. "A," Request for Admission #13 at page 10, ¶7).

13. The FBI has produced, and Mr. Schober has authenticated, a summary of an interview that occurred on February 23, 2018, between Mr. Schober and agents of the FBI. These

---

[3] Although Mr. Schober made this call and produced a contemporaneously made record from the FBI discussing this call, he would only admit that this occurred in "February 2018" and that he had hired "someone he deemed qualified to help him examine his laptop." (See Ex. "A,", Request for Admission #10 at page 9, ¶3.).

[4] Mr. Schober also told the FBI that, in February 2018, his bitcoins were transferred from a Bitcoin wallet stored in the Malware, to another Bitcoin wallet not stored in the Malware, although this distinction is irrelevant to the analysis.

documents are SCHOBER 002927-002928.  (See Ex. "A," Interrogatory #1, at page 5, ¶2; Request for Admission #8, page 8, ¶7).

14. At the February 23, 2018 interview, Mr. Schober told the FBI that on January 27, 2018, Mr. Schober saw a post on Reddit for a new bitcoin client called "Electrum Atom."  (See Ex. "A," Request for Admission #15 at page 11, ¶8).

15. Documents produced by the FBI state that Mr. Schober told the FBI agents at the February 23, 2018 interview that he had clicked the link, downloaded the executable and installed the Electrum Atom client. (See Ex. "B," SCHOBER_002927, ¶2).

16. Documents produced by the FBI state that Mr. Schober told the FBI that on January 29, 2018 everything seemed fine with the Electrum Atom client and Mr. Schober attempted to transfer his bitcoin from his wallet to another one of his wallets.  (See Ex. "B," SCHOBER_002927, ¶3).

17. Documents produced by the FBI state that Mr. Schober told the FBI that on February 7, 2018 he realized that there must have been malware on his computer affecting his copy/paste of bitcoin addresses and knew his bitcoin had been stolen.  (See Ex. "B," SCHOBER 002927 last paragraph- 002928 first paragraph).

18. Documents produced by the FBI state that Mr. Schober told the FBI that on February 15, 2018 he posted a warning to Reddit about the Electrum Atom program and that he had been scammed. (See Ex. "B," SCHOBER_002928, ¶2; See also Ex. "B," THOMPSON000012-13[5]).

---

[5] Mr. Schober subsequently deleted the Reddit post set forth in THOMPSON 000012-13, however, it was recovered through a Reddit archive website.  While Mr. Schober disputes the authenticity of THOMPSON 000012-13, note that he does admit that his Reddit username is Drewski1385 (See Ex. "C," Plaintiff's Responses to First Set of Written Discovery, Interrogatory #5 on the chart), and this post is corroborated by the FBI interview summary.

**B.   The Thompsons' Lack of Minimum Contacts with Colorado.**

19. None of the Thompsons have, either in the past or presently, engaged in any business

    activity in Colorado, either on behalf of themselves or any other person or entity.  (See

    Ex. "D," Combined Declarations of Edward, Claire and Benedict Thompson, at ¶3 in

    each declaration).

20. None of the Thompsons derive any income from any services rendered or activities

    taking place in Colorado, either through their own efforts, or on behalf of any other

    person or entity. (See Ex. "D," at ¶4 in each declaration).

21. None of the Thompsons contract to supply goods or services in Colorado either

    themselves directly, or on behalf of any other person or entity. (See Ex. "D," at ¶5 in each

    declaration).

22. None of the Thompsons own or lease any real property in Colorado. (See Ex. "D," at ¶6

    in each declaration).

23. None of the Thompsons employ any person in Colorado. (See Ex. "D," at ¶7 in each

    declaration).

24. None of the Thompsons have a bank account in Colorado, either in their names alone or

    with any other person or entity. (See Ex. "D," at ¶8 in each declaration).

25. None of the Thompsons pay any tax to the State of Colorado. (See Ex. "D," at ¶9 in each

    declaration).

**C.  The Plaintiff's Measure of Damages.**

26. Mr. Schober admits that the amount of Bitcoin that left his possession on January 28,

    2018 was 16.4552 bitcoins and that on that day, one bitcoin was valued at $11,674.99.

    (See Ex. "C," Plaintiff's Responses to First Set of Written Discovery, Interrogatory #1 at

page 4, ¶2).  The value of the Bitcoin at the time it left Mr. Schober's possession is therefore:

16.4552 x $11,674.99 = $192,114.30

27. The Plaintiff claims "[b]etween February 2021 and December 2021, the U.S. dollar price for one bitcoin was approximately $68,000.  Plaintiff was saving his bitcoins for use during this time period and suffered damages when he was deprived of his ability to utilize and/or exchange his 16.4552 bitcoins for U.S. dollars during this time period." (See Ex. "C," Interrogatory #2, at page 4, ¶7).  Thus, Mr. Schober calculates his damages to be 16.4552 x $68,000 = $1,118,953.60

**D.  The Plaintiff's Lack of an Expert on Cryptocurrencies.**

28. In an email dated February 25, 2023, counsel for the Plaintiff stated to undersigned counsel that he had "decided not to designate any expert witnesses (neither retained nor unretained)."  (See Ex. "E," 2/25/23 Email from Ethan Mora to Carl Hjort).

**III.   Argument**

**A.  Mr. Schober's Claims are Barred by the Statute of Limitations.**

"Whether a [Colorado] statute of limitations bars a particular claim is a question of fact, but the issue may be decided as a matter of law if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date." *See Trigg v. State Farm Mut. Auto. Ins. Co.,* 129 P.3d 1099, 1101 (Colo. App. 2005). While the statute of limitations itself is a state law matter, federal law rather than state law determines when a cause of action accrues. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994).  The statute of limitations begins running once "the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969.

**1.    A Two-Year Statute of Limitations Applies to Claims of Conversion and Trespass to Chattel in Colorado.**

Conversion and trespass to chattel are torts, and as such, the Court should apply Colorado's two-year statute of limitations for tort actions to these causes of action in the Complaint.  Applying a two-year statute of limitations to these causes of action, as Judge Wang already did in dismissing the causes of action brought under the Computer Fraud and Abuse Act ("CFFA"), should result in the claims for conversion and trespass to chattel being dismissed as well.[6]

In *McGee v. Hardina*, 140 P.3d 165, 167 (Colo. App. 2005), the Colorado Court of Appeals started its analysis by noting that "[c]onversion is an action in tort."  That simple fact then compelled the Court of Appeals to apply C.R.S. § 13-80-102(1)(a), stating that "tort actions, 'regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter.'"  The holding of *McGee v. Hardina* makes intuitive sense.  There is no reason to apply the three-year statute of limitations for fraud, misrepresentation, concealment or deceit to these torts, because an element of fraud or the like is not an element of these torts.  Instead, the statute of limitations generally applicable to tort causes of action should be applied to these tort causes of action.

The District of Colorado has followed the holding of *McGee v. Hardina* on numerous occasions and held that conversion was subject to a two-year statute of limitations in Colorado. *See, e.g. Focke v. Allen*, No. 20-CV-03014-MEH, 2021 WL 3828714, at *5 (D. Colo. Aug. 27, 2021) (applying a two-year statute of limitations to a conversion claim); *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1168 (D. Colo. 2016); *CGC Holding Co., LLC v. Hutchens*, No. 11-CV-

---

[6] To the extent the Plaintiff's Civil Conspiracy Claim (Count III) is based on these common law torts, then that claim is also barred by the Statute of Limitations. Civil conspiracy claims share a statute of limitations with the underlying causes of action. *See Sterenbuch v. Goss*, 266 P.3d 428, 436 (Colo. App. 2011).

01012-RBJ, 2013 WL 798242 at *7 (D. Colo. Mar. 4, 2013)( "The period of limitation applicable to a common law conversion claim is two years after the cause of action accrues.").

In this case, Judge Wang has already dismissed the CFAA claims, which were subject to a two-year statute of limitations.  As Judge Wang noted:

> Plaintiff discovered that his computer had been accessed without authorized [sic] more than three years prior to the filing of his Complaint – indeed, Mr. Schober alleges that he had been deprived of the use of his cryptocurrency for more than three years, see e.g. [Doc. 1 at ¶ 82]; that he had been deprived of the use of his computer for more than two years, see [id. at ¶ 89]; and that no later than October 2018, he believed Defendant Oliver to be responsible for such injury, see [id. at ¶ 57].

Thus, the Complaint, on its face, demonstrates that it should be dismissed under a two-year statute of limitations.  As will be discussed below, Mr. Schober knew of his injury, the theft of his Bitcoin, and its cause, the Electrum Atom malware in February of 2018.   Thus, under a two-year statute of limitations, Mr. Schober had until February of 2020 to file this action, and he did not file until well over a year later.  All the remaining counts in the Complaint are tort claims to which a two-year statute of limitations applies. These claims are untimely and should be dismissed.

> **2.     Even if the Court Were to Apply a Three-Year Statute of Limitations to These Claims, Which it Should Not, Mr. Schober Knew of his Injury and its Cause in February 2018, and Thus the Statute of Limitations Expired in February of 2021.**

If the Court applies a three-year statute of limitations to the conversion and trespass to chattel claims, the result should also be dismissal of these claims, because uncontroverted evidence from the FBI shows that Mr. Schober knew of his injury, the theft of his Bitcoin, and its cause, the Electrum Atom malware in February of 2018.  Even though Mr. Schober represented to the Court in defending the Thompsons' initial motion to dismiss these claims, that he did not

know whether the Bitcoin was *stolen* or just *missing*, it is clear that he actually did know it was stolen a little over a week after the Bitcoin left his possession.

On January 27, 2018, Mr. Schober saw a post on Reddit for a new bitcoin client called "Electrum Atom."  (See Ex. "A," Request for Admission #15 at page 11, ¶8).  Mr. Schober clicked the link, downloaded the executable and installed the Electrum Atom client. (See Ex. "B," SCHOBER_002927, ¶2).  On January 29, 2018 everything seemed fine with the Electrum Atom client and Mr. Schober attempted to transfer his Bitcoin from his wallet to another one of his wallets.  (See Ex. "B," SCHOBER_002927, ¶3).  Mr. Schober told the FBI that, on February 7, 2018, he noticed that his attempted transfer of 16.4552 bitcoins from one of his Bitcoin wallets to another, was apparently intercepted. (See Ex. "A," Request for Admission #3 at page 6, ¶6; See also, Ex. "B," SCHOBER_002920, ¶1).  It was then that he realized that there must have been malware on his computer affecting his copy/paste of bitcoin addresses and knew his Bitcoin had been stolen.  (See Ex. "B," SCHOBER 002927 last paragraph- 002928 first paragraph).

Mr. Schober then immediately begins to investigate what occurred.  The very next day, on February 8, 2018, Mr. Schober contacted the FBI Public Access Line Unit to inform the FBI that a computer intrusion, which he stated he suspected was caused by "the Malware" resulted in his loss of 16.4552 bitcoins.  (See Ex. "A," Request for Admission #2 at page 6, ¶2; See also, Ex. "B," SCHOBER_002919, paragraph titled "Complaint Details").  Mr. Schober also told the FBI that the malware was an address changer so it changed the destination of the transfer.  (See Ex. "A," Request for Admission #4 at page 7, ¶2; See also, Ex. "B," SCHOBER_002920, ¶2).  Mr. Schober further told the FBI that the malware is called "the man in the middle" and he identified the bitcoin address to which his Bitcoin was transferred.  (See Ex. "A," Request for Admission #5 at page 6, ¶6; See also, Ex. "B," SCHOBER_002920, ¶3).

Mr. Schober, under the username Drewski1385,[7] posted a warning to Reddit about the

Electrum Atom program on February 13, 2018.[8]

> Be Careful! Confirmed Malware Theft from fake Electron Atom client
> Reposting this here. I took down the original so as not to tip off the hacker, but that seems fruitless at this point. Hope my story serves as a reminder, be careful out there.
> Like many Bitcoiners, over the past few months I've been happily claiming & selling all the forked coins. I've synced half a dozen clients and light wallets before learning to use the python scripts. As you probably know, the price of these coins declines quickly as they become available on exchanges, so I was eager to get out ahead to make a bit of profit.
> A few weeks ago I came across a post for "Electrum Atom", a Bitcoin Atom wallet, on github. Awesome, another airdrop to flip! Everything looked like all the other forks, just a light wallet to install, but unfortunately it was a fake client that installed the "Man in the Middle" address changing malware. It changes the bitcoin address you copy/paste, leaving the first few characters so they look similar. For example:
>
> Copy: 1 CZinhiGqCgSQXJ6PMNh1 SW3CKVy7gyjwu
> Paste: 1 CZioyptarnQ3rdT9np2rwMwXftMX9ATT7
>
> The Electrom Atom client didn't work, of course, so I deleted it, but the damage was done. Ironically, I was moving my BTC to a new wallet/privkey as a security measure, copy/pasting some new addresses into a spreadsheet, and I did not catch the difference in addresses. Oh boy.
> Sad to say, I got wiped out. I sent all my BTC to a similar looking address, but it wasn't mine. I realized it a week later when pasting addresses "hey, these don't look right...ohh shit..." and then - gulp - opened the new wallet…..
> If the Gods be merciful, and the hacker happens to see this post, I kindly ask you to return the funds to the sending address. I certainly would appreciate it.
>
> (See Ex. "B," Thompson 000012-13).

---

[7] Mr. Schober admits that his Reddit username is Drewski1385 (See Ex. "C," Interrogatory #5 on the chart).
[8] The recovered Reddit post is dated February 13, 2018, though in the interview with the FBI conducted on February 23, 2018, the post is characterized as having been made on February 15, 2018.

Mr. Schober again contacted the FBI Public Access Line on February 16, 2018 to provide additional information regarding the malware attack. (See Ex. "B," SCHOBER_002923, paragraph titled "Complaint Details").  Mr. Schober told the FBI that he had hired a malware expert to help him examine his laptop. (See Ex. "B," SCHOBER_002924, ¶3).  Mr. Schober told the FBI that the malware expert was able to find the source of the malware on his laptop. (See Ex. "B," SCHOBER_002924, ¶3).  Also on February 16, 2018, Mr. Schober told the FBI that the theft happened on January 29, 2018. (See Ex. "B," SCHOBER_002924, ¶5).  On February 21, 2018, Mr. Schober contacted the FBI and provided the FBI a post on Reddit, which included a link to a GitHub repository containing the Malware. (See Ex. "A," Request for Admission #13 at page 10, ¶7). On February 23, 2018, Mr. Schober met with an FBI agent and gave the FBI custody of his laptop. (See Ex. "A," Request for Admission #6 at page 7, ¶10; See also, Ex. "B," SCHOBER_002920, ¶5).  On February 25, 2018, Mr. Schober informed the FBI that his Bitcoin had moved. (See Ex. "A," Request for Admission #7 at page 8, ¶3; See also, Ex. "B," SCHOBER_002921, ¶1).

The Thompsons submit that by February 7, 2018, and certainly at the latest by the time of the FBI interview on February 23, 2018, there is no material dispute as to the fact that Mr. Schober knew of his injury and its cause, and thus his claim had accrued for statute of limitations purposes.  Mr. Schober knew that the Bitcoin had been stolen, he knew that the Electrum Atom malware was the cause, he knew how that malware worked, he informed the FBI and he posted warnings on Reddit about the malware.  All of these uncontroverted facts support the conclusion that the Statute of Limitations began to run in February 2018, and it expired in February 2021, more than three months before the Complaint was filed.

Plaintiff claims that because he did not know the identity of the alleged perpetrators of the Bitcoin theft in February 2018, the period did not start running at that time.  This argument is of no moment.  Generally, a plaintiff's lack of knowledge concerning the identity of the possible defendants does not toll the statute of limitations. *See Tamblyn v. Mickey & Fox, Inc*., 568 P.2d 491, 494 (Colo. App. 1977), *rev'd on other grounds*, 578 P.2d 641 (Colo. 1978) (holding that plaintiffs' lack of knowledge of the identity of defendants did not toll the statute of limitations because plaintiffs had two years from the time they were aware of their action for damages to conduct an investigation and determine on what theory they would proceed and against whom); *Jenkins v. Duffy Crane and Hauling Inc.*, 2016 WL 9735142 (D. Co. October 17, 2016)( "Colorado courts have determined that a plaintiff's lack of knowledge concerning the identity of the possible defendants does not toll the statute of limitations"); *Lavarto v. Branney*, 201 P.3d 485 (Colo. App. 2009) ("a plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations expires")  *see also Kohler v. Germain Inv. Co*., 934 P.2d 867, 869 (Colo. App. 1966); *Guidry v. U.S.*, No. 05-cv-01356-WYD-OES, 2006 WL 1083959 at *2 (D. Co. April 25, 2006).  Mr. Schober did, in fact, determine the identities of the Defendants in this action, and prior to the time when the statute of limitations expired.  However, he did not bring his action before the Statute of Limitations expired and the date on which he learned the identities of the Defendants is not relevant to that analysis.  All of the remaining claims should be dismissed because they are barred by the Statute of Limitations.

## B.  This Court Lacks Personal Jurisdiction Over the Thompsons.

### 1.      The Thompsons Lack Minimum Contacts with Colorado.

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th

Cir.1984).[9]  After discovery, the plaintiff has the burden to prove facts supporting jurisdiction by a preponderance of the evidence.  *FDIC v. Oaklawn Apartments*, 959 F.2d 170 (10th Cir. 1992). Under the due process clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 472 (1985). Alternatively, the court may maintain general personal jurisdiction over a defendant based on the defendant's pervasive contacts with the forum state.[10]

In analyzing whether minimum contacts exist, the Court must determine whether the defendant purposefully directed its activities at residents of the forum, *id*. at 472, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987). Second, if the defendant's actions create sufficient minimum contacts the Court must then consider whether the exercise of personal jurisdiction

---

[9] The Thompsons raised the defense of lack of personal jurisdiction in the Answer and have not waived this defense. (See, Answer, ECF Doc. #35, Affirmative Defense #1).  The Plaintiff always bears the burden of proving that personal jurisdiction is proper, and this burden cannot be waived.  "[A] plaintiff must have proved by the end of trial the jurisdictional facts by a preponderance of the evidence." *FDIC v. Oaklawn Apartments*,959 F.2d 170 (10th Cir. 1992).  "Even if personal jurisdiction is contested and found initially on the pleadings and by affidavit, it may be reviewed again at subsequent stages in the trial court proceedings as evidence accumulates." Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063 at fn. 3 (10th Cir. 2008)

[10] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915 (2011).  Here it is uncontroverted that the Thompsons are not domiciled in Colorado, and general personal jurisdiction does not apply to them.

over the defendant offends "traditional notions of fair play and substantial justice." *Id.* at 113. None of these elements are met in this case.

First, the Thompsons never purposefully directed any activities at residents of Colorado. The Thompsons deny having any involvement in this matter whatsoever, and specifically deny being involved with development of the Electrum Atom malware or its implementation, but even accepting the Plaintiff's allegations as true, there is no purposeful direction demonstrated.  The uncontroverted facts show that Mr. Schober saw a post on Reddit for a new bitcoin client called "Electrum Atom."  (See Ex. "A," Request for Admission #15 at page 11, ¶8); he clicked the link, downloaded the executable and installed the Electrum Atom client. (See Ex. "B," SCHOBER_002927, ¶2); and when everything seemed fine with the Electrum Atom client Mr. Schober attempted to transfer his bitcoin from his wallet to another one of his wallets. *Id.* ¶3. There is no evidence that the Reddit post mentioned Colorado or made any specific reference to Colorado.  There is no evidence that the Reddit post was limited to Colorado users instead of all Reddit users.  Indeed, it is pure happenstance and coincidence that Mr. Schober downloaded the Electrum Atom malware onto his computer in Boulder, Colorado instead of it being downloaded by a user in Buenos Aires, Argentina or Bangalore, India.  Even accepting the Plaintiff's contentions as true, which the Thompsons specifically deny, they do not show that the Thompsons purposefully directed any activities at Colorado residents; instead they show that the Electrum Atom malware was directed at Reddit users worldwide and not directed to any specific locale.

Second, even if purposeful direction was shown, which it has not been, there has been no showing of actions *by the Thompsons themselves* that create a substantial connection to Colorado.  Again, the Thompsons deny any involvement in placing the Electrum Aton malware

on Reddit or otherwise participating in its use, but even accepting *arguendo* that the Plaintiff's allegations are true, nothing that the Thompsons did creates a substantial connection to Colorado. It was Mr. Schober's actions in downloading the Electrum Atom malware that created an alleged injury in Colorado.  There has been no showing of actions by the Thompsons that create a specific connection to Colorado.

Third, even if minimum contacts had been established, which they have not, subjecting the Thompsons to personal jurisdiction in Colorado offends traditional notions of fair play and substantial justice.  In this regard, the Court should evaluate the "reasonableness" of exercising personal jurisdiction and should consider: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998).

The burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. *Id* at 1096. When the defendant is from another country, this concern is heightened and "great care and reserve should be exercised" before personal jurisdiction is exercised over the defendant. *Id.*  The burden on the Thompsons in this case is significant.  They do not have any business activity in Colorado (See Ex. "D," at ¶3 in each declaration).  They do not derive any income from activity in Colorado. (Id. at ¶4).  They do not supply goods or services in Colorado. (Id. at ¶5).  They do not own or lease any real property in Colorado. (Id. at ¶6).  They do not employ any persons in Colorado.

(Id. at ¶7).  They do not have bank accounts in Colorado. (Id. at ¶8).  They do not pay any tax to the State of Colorado. (Id. at ¶9).  This factor weighs strongly in the Defendants' favor.

The third factor in the reasonableness inquiry hinges on whether the Plaintiff may receive convenient and effective relief in another forum.  There is no indication that Mr. Schober could not receive convenient and effective relief in the courts of the United Kingdom.  In fact, Mr. Schober secured the services of a *pro bono* barrister named Chloe Bell in the UK to advise him on this matter, but he did not follow through with pursuing his causes of action in the UK despite having this representation.  (See Exhibit "B," SCHOBER_001672).   This factor also favors the Thompsons.

Concededly, Colorado would have an interest under factor two of the reasonableness test in providing a forum for its resident to seek redress for his injuries.  Factor four of the test, pertaining to the efficient resolution of controversies, is neutral.  This factor considers issues such as the location of witnesses or the prevention of piecemeal litigation. *Id.* at 1097.  Here, all of the Defendants are located in the United Kingdom and other witnesses are located worldwide. There is no concentration of witnesses in Colorado.  Piecemeal litigation is not a risk because there is only one claim at issue and the Defendants have not asserted counterclaims.  Factor five of the reasonableness test is also likely neutral since social policy interests are not implicated in this case.  In sum, two of the reasonableness factors weigh against personal jurisdiction, one in favor, and two are neutral.  This balancing indicates that exercising personal jurisdiction over the Thompsons is not reasonable in this case.  For all these reasons, the Thompsons lack minimum contacts with Colorado, and therefore the Court cannot exercise personal jurisdiction over them.

### C.  The Plaintiff's Measure of Damages is Limited to the Value of the Bitcoin at the Time it Left his Possession or a Reasonable Time Thereafter.

Bitcoin is notoriously volatile.  At the time that Mr. Schober's Bitcoin left his possession it was worth $192,114.30.  (See Ex. "C," Interrogatory #1 at page 4, ¶2).  However, Mr. Schober contends that he is owed $1,118,953.60, the value of his Bitcoin at the highest value in the history of Bitcoin, which occurred in 2021, over three years after the Bitcoin left Mr. Schober's possession. (See Ex. "C," Interrogatory #2, at page 4, ¶7).  To date, only a single court has grappled with the question of how to value volatile cryptocurrency for the purpose of awarding damages.  In *Diamond Fortress Technologies, Inc. v EverID, Inc.*, 2022 WL 1114528 (Del. Supr. Apr. 14, 2022), the court treated cryptocurrencies in the same way damages for conversion of stock are treated, by application of the "highest value within a reasonable time" framework. Under this framework "the measure of damages for wrongful conversion of stock or properties of like character is the higher value of either: '(1) its value at the time of conversion or (2) its highest intermediate value between notice of the conversion and a reasonable time thereafter during which the stock could have been replaced.'" *Id.* at \*14.  With respect to "reasonable time" the court held:

> What constitutes a reasonable period of time is a question of law for the court to determine.  A plaintiff can't cherry-pick dates to trump up the maximal value. Rather, the date should be established by resort to a constructive replacement purchase by the plaintiff, *i.e.*, how long it would have taken the plaintiff to replace the securities on the open market. <u>Two or three months has been accepted as a reasonable period of time to replace an asset on the open market.</u>

*Id.* The Court should follow the lead of the *Diamond Fortress* court, and limit Mr. Schober's damages to the value of the Bitcoin at the time it left his possession or the highest value within three months after that time.

### D.  The Plaintiff Has Elected Not to Present Expert Testimony, But an Expert is Required to Prove the Plaintiff's Claims.

Only approximately 16% of the U.S. population has ever invested in, traded or used a cryptocurrency.[11]  Thus, testimony about cryptocurrencies, their tracing, and the methods used to identify the Defendants in this case are far outside the scope of what an ordinary juror commonly experiences or would be familiar with, and an expert witness is required to provide this testimony.  For example, in order to prove this case, the Plaintiff will require testimony about the following topics: 1. IP address tracing that allegedly connects the Defendants in this matter to certain cryptocurrency wallets; 2. the Open Source Intelligence (OSINT) tools allegedly used to identify the Defendants in this matter; and 3. cryptocurrency tracing techniques, both for Bitcoin and the privacy-focused cryptocurrency Monero, that allegedly show that Mr. Schober's Bitcoin was transferred to cryptocurrency wallets controlled by the Defendants.

The Plaintiff has "decided not to designate any expert witnesses (neither retained nor unretained)."  (See Ex. "E").  The failure to designate an expert is grounds for summary judgment. S*ee Preventive Energy Sols., LLC v. nCap Ventures 5, LLC*, No. 2:16-cv-809, 2019 WL 2869950, at *2 (D. Utah July 3, 2019) (stating summary judgment appropriate where court found that expert testimony required, but no expert had been designated (*citing Harvey v. United States*, 685 F.3d 939, 950–51 (10th Cir. 2012))).  For this reason alone, the Court should grant summary judgment, because the Plaintiff will be unable to prove his case at trial.

### IV.    Conclusion

For all the foregoing reasons, the Court should GRANT summary judgment to the Thompsons on all remaining claims in the Complaint.

---

[11] https://www.pewresearch.org/short-reads/2021/11/11/16-of-americans-say-they-have-ever-invested-in-traded-or-used-cryptocurrency/

Respectfully submitted,

*/s/Carl A. Hjort, III*
Carl A. Hjort, III
Colorado Bar No. 42108
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: 303-824-3192
Email: chjort@rwolaw.com
***Attorney for Defendants Benedict Thompson, Claire L.
Thompson and Edward J. Thompson***

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2023 I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system. As such, this document was served on all

counsel of record. I also served the *pro se* Defendants via email at the following addresses:

Oliver Read
Oliverread2001@gmail.com
Hazel Wells
Hazelwells44@gmail.com
Paul Read
Paulread66@aol.co.uk

/s/Carl A. Hjort, III
Carl A. Hjort, III