**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01382-GPG-NRN

ANDREW SCHOBER,

                 Plaintiff,

v.

BENEDICT THOMPSON, OLIVER READ,
EDWARD J. THOMPSON, CLAIRE
L. THOMPSON, PAUL READ, and HAZEL
DAVINA WELLS,

                 Defendants.

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THOMPSON
DEFENDANTS**

---

## I.     <u>INTRODUCTION</u>

In January 2018, a malicious software program designed to steal Bitcoins (the
"Malware") was clandestinely installed on Plaintiff Andrew Schober's computer. The
Malware interfered with the copy-paste (or "clipboard") function of Mr. Schober's
computer, which resulted in Plaintiff inadvertently transferring 16.4552 Bitcoins to a
Bitcoin address embedded in the Malware. About a month later, Plaintiff's Bitcoins were
wrongfully transferred from the Bitcoin address in the Malware, to different Bitcoin
address (hosted by Bitfinex, a cryptocurrency exchange based in the British Virgin
Islands). In late 2019, Plaintiff discovered a connection between the Malware and
Defendants Benedict Thompson ("Benedict") and Oliver Read ("Oliver"). Benedict and
Oliver were both under the age of eighteen at the time of the events. On May 21, 2021,
Plaintiff filed his Complaint against Oliver, Benedict, and their respective parents. [Doc.

1]. On January 14, 2022, this Court entered an Order granting in part and denying in part the Defendants' Motions to Dismiss Plaintiff's Complaint. [Doc. 33].

In this Motion, Plaintiff seeks partial summary judgment, as to liability, against the Benedict and his parents, Defendants Edward Thompson and Claire Thompson (collectively, the "Thompson Defendants"), on two of Plaintiff's three remaining claims: (1) Conversion; and (2) Trespass to Chattels. No genuine issue of material fact remains as to liability for these claims among the Thompson Defendants, and judgment should enter against them as a matter of law. If summary judgment enters, the only issues remaining for trial would be the resolution of Plaintiff's civil conspiracy claims against Benedict, Oliver, and Defendant Edward Thompson, and the amount of Plaintiff's damages for his conversion, trespass to chattels, and civil conspiracy claims.

## II.    STATEMENT OF MATERIAL UNDISPUTED FACTS

1.      Plaintiff Andrew Schober is and at all relevant times was a resident of Colorado. [Doc. 1] Compl. ¶ 6. Mr. Schober owned and had the right to use and possess his Asus X501A laptop (his "Computer"), and the 1Mb[1] and 1QG[2] Bitcoin addresses, including the private keys and the 16.4552 Bitcoins formerly therein. Exhibit B – (Bates) SCHOBER_000036.

2.      During the relevant period, Defendant Benedict Thompson ("Benedict") was under eighteen years of age and living with his parents, Defendants Edward Thompson and Claire Thompson, in Southampton, United Kingdom. [Doc. 35] Thompson Answer ¶ 47. Benedict began trading cryptocurrencies in 2014. See Exhibit E – (Bates)

---

[1] 1Mb6H2d4Xu7m5LiW2abA4xvtX7yfFHLtyk.
[2] 1QGHJvJbsr1E3H9h3aj1xFRN2NZnhoz6aD

*Thompson000292*. In 2014, Benedict encouraged Edward to buy cryptocurrencies, and Edward did so. Id.

3.      Between January 1, 2016 and September 12, 2022, Benedict controlled the Bitcoin wallet with the public key hash, "1BeNEdictBLbmVJ9LXkSwqiyWWf36XKTD1" (the "Vanity Address").  Exhibit F – *Benedict Resp. to RFA No. 1, Set #1*.

4.      On March 19, 2017, Benedict created an account on the Bitfinex online platform (Bitfinex is a cryptocurrency exchange platform based in the British Virgin Islands). Ex. E –*Thompson000448*.

5.      On October 25, 2017, Edward forwarded an email to Benedict regarding "Upcoming Bitcoin Forks," which mentioned "Bitcoin Gold." Ex. E – *Thompson000068 – 000069*.

6.      On November 13, 2017, a link to the Malware was posted on the online forum, BitcoinTalk.org, and labeled "Electrum Gold". Ex. C –*SCHOBER_000020*. "Electrum" is a popular and widely used software client application that hosts cryptocurrency wallets. Compl. ¶ 26.

7.      The Malware worked as follows: **(a)** Upon detecting that the victim used his or her computer's clipboard function to copy a Bitcoin wallet address, the Malware automatically inserted a different pre-generated Bitcoin address, selected from within the Malware code, that closely resembled the multi-character wallet address copied by the victim. **(b)** The Malware then manipulated the victim's computer system by causing the computer to replace the victim's intended wallet address with a wallet address stored in the Malware and controlled by the thief. **(c)** By replacing the victim's intended wallet address with an address embedded in the Malware, the thief gains control of the victim's

cryptocurrency, because the thief controls the private key associated with the public key of the wallet address where the cryptocurrency was unintentionally sent as a result of the Malware. Compl. ¶ 23. See id. at ¶¶ 18 – 20 (describing cryptocurrency wallets, public keys, and private keys).

8.      In order to identify, match, and replace all possible bitcoin addresses that the victim might copy, with a similar-looking bitcoin address controlled by the thief (specifically, an address that matched the first three characters of the intended recipient address), the Malware contained a pre-generated list of 195,112 bitcoin addresses embedded within its code. Id. at 29; *see* <u>Exhibit C</u> – (FBI Investigation Report [Redacted]) *SCHOBER_002938*. Each time a victim copied a bitcoin address to his or her computer's clipboard, the Malware replaced the victim's copied address with one of the pre-generated addresses embedded in the Malware. Compl. ¶ at 30.

9.      Only four (4) of the 195,112 bitcoin addresses embedded in the Malware have a transaction history: the "1A6," "1Pp," "1Jr," and "1CZ" Bitcoin addresses.[3] *See* <u>Exhibit B</u> (FBI's February 2019 Report [Redacted]) – *SCHOBER_003040*, and <u>Ex. C</u> – *SCHOBER_000037, SCHOBER_000026*.

10.     On November 14, 2017, two of the Bitcoin addresses embedded in the Malware (1A6 and 1Pp) received approximately 0.5 Bitcoins; those bitcoins were then sent to a Bitcoin address ("1Gq")[4], hosted by Bitfinex, and associated with the email address "annaadmams12@gmail.com" and the username "JamesandJohn". <u>Exhibit A</u>

---

[3] 1A6KNhoda4wo8g4Y1u6Ty3CC74y6ecfYDe ; 1PpVQzeKrbS3h898ZMRKHPfpxRic8BTuwv ;
1A6KNhoda4wo8g4Y1u6Ty3CC74y6ecfYDe ; 1CZioyptarnQ3rdT9np2rwMwXftMX9ATT7.
[4] 1Gqt6RTk7bj9hg6wD3rPM51HsFEQHcrGsc.

(FBI's March 2021 Report [Redacted])– SCHOBER_003042 – 003043; <u>Ex. C</u> – SCHOBER_000026 – 000031.

11.     Benedict has used the "annaadmams12@gmail.com" email address. <u>Exhibit I</u> – *Benedict Resp. to RFAs. No. 13, Set #3.*

12.     On December 11, 2017, Edward emailed himself describing Benedict's cryptocurrency holdings. In the email, he explained that Benedict had been paid, in Bitcoin, for "end user testing" in 2016 and 2017, and Benedict had used "around 0.1 of the bitcoin" to purchase a cryptocurrency called "Raiblocks." <u>Ex. E</u> – *Thompson000303 – 000304.*

13.     On December 27, 2017, Edward sent himself another email, with the subject line "Ben Thompson trail," providing additional details and "evidence" related to Benedict's purported cryptocurrency activities and financial positions. <u>Ex. E</u> – *Thompson000292.*

14.     On December 30, 2017, one of the addresses embedded in the Malware (1Jr) received 0.101 Bitcoins. <u>Ex. C</u> – SCHOBER_000026.

15.     On January 4, 2018, Edward emailed Benedict requesting that Benedict withdraw 0.5 BTC for him. <u>Ex. E</u> – *Thompson000302.*

16.     On January 10, 2018, Edward instructed Benedict to make cryptocurrency trades: "With Raiblocks holding up well during this BTC dump just sell a chunk as planned. $25, $28, $30 – it all makes no odds. We can get it out tonight[.]" <u>Ex. E</u> – *Thompson000298.* On January 18, 2018, Edward emailed Benedict, advising "You [Benedict] need to set a figure to get out [of trading Raiblocks] though – eg at £120k sell £100k and play with the rest?" <u>Ex. E</u> –*Thompson000295.*

17.     On January 27, 2018, a link to the Malware was posted on the online forum, Reddit.com, and labeled "Electrum Atom". Ex. C – *SCHOBER_002930*. Plaintiff downloaded "Electrum Atom" the next day, and Plaintiff's Computer inadvertently became infected with the Malware as a result. *See* Compl. ¶¶ 25, 27, 36.

18.     As soon as the Malware was installed on Mr. Schober's Computer, the Malware began monitoring Plaintiff's computer activity. Compl. ¶ at 27. When the Malware recognized that Mr. Schober had copied a cryptocurrency wallet address, the Malware immediately executed code that replaced the Bitcoin address he copied with a similar-looking Bitcoin address embedded in the Malware. Id. at 28.

19.     On January 29, 2018, Plaintiff's bitcoins were stolen by the Malware. Ex. C – *SCHOBER_002927*.

20.     On February 8, 2018, Mr. Schober reported the Malware and his missing Bitcoins to the FBI; the FBI opened a criminal investigation and took custody of Mr. Schober's Computer, which contained the Malware *See* Ex. C – *SCHOBER_002919 – 002961*.

21.     On February 25, 2018, a Bitcoin address embedded in the Malware (1CZ) sent Plaintiff's 16.4552 bitcoins to a Bitcoin address ("3CW")[5]  hosted by Bitfinex, and associated with an account with the username "thp2pk," and IP address "86.158.130.34." Ex. B – *SCHOBER_003039 – 003041*.

22.     Benedict has estimated that, as of February 28, 2018, he had approximately $100,000 in digital currencies in his possession. Ex. H – *Benedict Resp. to RFAs. No. 2, Set #2*. Around that time, 16.4552 BTC was worth between $100,000 and $200,000.

---

[5] 3CWQ5d2XgCrYuz7F3g4fmhd6VQMv4iPio7.

23.     On June 22, 2018 the FBI returned Mr. Schober's Computer to him. Ex. C – SCHOBER_000526.

24.     In or about April 2020, the FBI (unable to identify a suspect, or tie any person's identity to the unlawful cryptocurrency transactions and data collected from Plaintiff's Computer, and other sources) officially closed its investigation. Ex. C – SCHOBER_001566 – 001569

25.     On June 5, 2019, Plaintiff informed the FBI that he suspected Benedict might be involved with the Malware. Ex. C – SCHOBER_000870 – 000872. Plaintiff then commissioned additional blockchain analysis, which found a connection between an address embedded in the Malware (1Jr)[6] and the Vanity Address. See Ex. C – SCHOBER_000026 – 000031.

26.     In December 2019, Plaintiff contacted the Thompson Defendants and requested that they return his Bitcoin, Thompson Answer ¶ 51 [Doc. 35]; the Thompson Defendants did not respond, id. at 52.

27.     In or around December 2020, Benedict was arrested by U.K. law enforcement authorities. See Ex. C – SCHOBER_000034.

28.     In or around March 2021, an FBI created report ("the March 2021 Report") stating that a "reliable FBI source" provided information for the alias, "JamesandJohn." Ex. A – SCHOBER_003042 – 003043. The FBI has also produced documents, obtained from Bitfinex, showing that the Bitfinex user with the alias "thp2pk" controlled the "44n"[7] Monero address and the 3CW Bitcoin address, and the Bitfinex user logged onto the Bitfinex platform from Southampton, U.K. Ex. B – SCHOBER_003039 – 003041.

---

[6] 1JrT4DePAThEHarvEiYyRu2x2anhMCsoPr.

[7]

## III.   <u>STANDARD OF REVIEW</u>

The purpose of a motion for summary judgment is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the pleadings, fruits of disclosure and discovery, and any affidavits show that no genuine issue of material fact exists relating to the claim, the judgment requested should be granted. F.R.C.P. 56(c)(2); *accord Celotex*, 477 U.S. at 323.

Although the moving party bears the burden of informing the trial court of the basis of the motion and identifying those portions of the record that show an absence of any genuine issue of material fact, the moving party is not required to negate the opposing party's claim. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex*, 477 U.S. at 323.

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon the allegations or denials in the pleadings; instead, the non-moving party must set forth specific facts showing—not merely that there is "some metaphysical doubt as to the material facts," see *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586- 87 (1986)—but that there is a genuine issue for trial as to a dispositive matter for which it (the nonmovant) carries the burden of proof. *See Munoz v. St. Mary-Corwin Hospital*, 221 F.3d at 1164 (10th Cir. 2000). The "mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient" to create a genuine issue or dispute of material fact. *Johnson v. Lindon City*

*Corp.*, 405 F.3d 1065, 1068 (10th Cir. 2005) (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997)).

Also, while the question of a defendant's identity is often a factual matter left to the jury, *see Glenn Arms Associates v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. Ct. App. 1984); *United States v. Dietz*, No. 93-8073, 1994 U.S. App. LEXIS 16722, at *9 (10th Cir. June 30, 1994), when a party's evidence as to a material fact is "*blatantly contradicted*" by objective record evidence such that no reasonable trier of fact could adopt the party's version of the fact, the trial court should adopt the version of the facts supported by the objective evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (version of events contradicted by videotape); *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (stating that if a party's denial of knowledge is "blatantly contradicted by the record," "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

## IV.   <u>ARGUMENT</u>

Federal district courts sitting in diversity apply the law of the state where the action was brought. *See Sellers v. Allstate Ins.* Co., 82 F.3d 350, 352 (10th Cir. 1996). Therefore, Colorado law applies to Plaintiff's state law claims at issue in this Motion.

### A.   <u>Partial Summary Judgment, As To Liability, Against Benedict For Conversion</u>

Plaintiff's conversion claims concern his 16.4552 bitcoins. Compl. ¶ 74-83.

"Under Colorado law, conversion is 'any distinct, unauthorized act of dominion over personal property belonging to another.'" *Williams v. Genesis Fin. Techs., Inc.*, 790 F. App'x 161, 165 (10th Cir. 2019) (citing *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186,

1195 (Colo. App. 2008) quoting *Glenn Arms Associates v. Century Mortg. & Inv. Corp.,* 680 P.2d 1315, 1317 (Colo. Ct. App. 1984)). "To be liable for conversion, a defendant must intentionally exercise control over the property, which typically 'requires an affirmative act on the part of the defendant, as distinguished from a mere omission to act or to perform a duty.'" *Leathers v. Leathers*, 856 F.3d 729, 759 (10th Cir. 2017) (citing RESTATEMENT (SECOND) OF TORTS § 224 cmt. a (Am. Law. Inst. 1965)).

The elements of a conversion claim are: **(i)** the plaintiff owned the property, **(ii)** the defendant interfered with plaintiff's control, possession, or ownership of the property, and **(iii)** the plaintiff did not consent to the defendant's interference. *See Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1175 (D. Colo. 2009) (citing *Glenn Arms Assocs. v. Century Mortg. & Investmt. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984)). In addition, "[p]redicates to a successful claim for conversion are **[(iv)]** the owner's demand for the return of the property, and **[(v)]** the controlling party's refusal to return it." *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 762 (D. Colo. 2007) (quoting *Glenn Arms Assocs.*, 680 P.2d at 1317). *See also*, RESTATEMENT (SECOND) OF TORTS § 237 cmt. e ("conversion consists in the unlawful detention of the [property], and not in the manner in which possession was originally acquired.").

*First*, the Parties do not dispute that Mr. Schober owned and had a right to possess the 16.4552 bitcoins sent from the 1CZ address (embedded in the Malware) to the 3CW address (hosted by Bitfinex). *See* Ex. F – *Benedict Resp. to RFA Nos. 3 and 4, Set #1*; Ex. C – *SCHOBER_000037*. Bitfinex provided (or "hosted") the 3CW address solely for the Bitfinex customer with the account username "thp2pk." "Thp2pk" used his Bitfinex account to access and transact with the 3CW address, and the 44n address. Exhibit A.

*Second*, the Parties do not dispute that the Bitfinex customer with the username, "thp2pk," intentionally interfered with Plaintiff's 16.4552 bitcoins by using the 3CW Bitcoin address and the 44n Monero address, to wrongfully receive, exchange, and convert Plaintiff's bitcoins, to Monero,[8] thereby depriving Plaintiff of his bitcoins. However, without offering any factual support whatsoever, Benedict denies he used the alias, "thp2pk"; he also denies—again, without providing any supporting facts—that he transacted with the 3CW address. Nevertheless, there is no genuine dispute that that the Bitfinex customer, "thp2pk," intentionally and substantially interfered with Plaintiff's 16.4552 bitcoins. Accordingly, the only issue here is whether any reasonable jury could conclude "thp2pk" is anyone other than Benedict.

The Thompson Defendants have not presented, nor can they point to any evidence in the record, that supports their baseless reimagination of the facts; and, as explained in this Motion, undeniable connections between the Bitcoin addresses embedded in the Malware, the Vanity Address, and the alias, "JamesandJohn," reveal, unequivocally, that Benedict is (or during the relevant time period was) the Bitfinex customer with the username, "thp2pk." Therefore, Benedict stole, withheld, destroyed, and refused to return Plaintiff's 16.4552 bitcoins.

Of the 195,112 Bitcoin addresses embedded in the Malware, only four (4) Bitcoin addresses have transaction histories: one of the four addresses (1CZ) sent Plaintiff's 16.4552 bitcoins to the 3CW address, hosted by Bitfinex for the Bitfinex customer, "thp2pk"; two addresses (1A6 and 1Pp) sent about 0.5 Bitcoin to the 1Gq address, hosted by Bitfinex for the Bitfinex customer, "JamesandJohn"; and the fourth address (1Jr) sent

---

[8] Once the stolen assets are converted to Monero, tracing the assets becomes exponentially more difficult than tracing Bitcoin.

approximately 0.1 Bitcoins, first to Shapeshift, then to the Vanity Address, which is *not* hosted by Bitfinex. All four of the "active" Bitcoin addresses are indisputably linked to Benedict, as further described below.

The Parties do not dispute that Benedict controlled the Vanity Address during the relevant time period. The connection between the Vanity Address and the 1Jr address could (possibly) have considered an exceptionally unlikely coincidence linking Benedict to the Malware; but the chance that the same Bitcoin address (the Vanity Address) would appear, randomly, in two distinct cryptocurrency transactions (one involving 1Jr, and another involving 44n), both of which are connected to the Malware, is virtually impossible. There are more Bitcoin addresses than there are atoms on Earth[9]; a person would be more likely to win the Power Ball Lottery, nine times in a row, than see the same Bitcoin address appear, randomly, in two distinct cryptocurrency transactions. Either Benedict is caught in the most improbable coincidence in human history (which, for reasons further explained in this Motion, he clearly is not), or he simply refuses to acknowledge unambiguous, objective evidence revealing discernable connections between him, the Malware, and "thp2pk."

The Bitfinex customer with the username, "thp2pk," used the IP address, "86.158.130.34"—this IP address is located in Southampton, U.K., and is provided by British Telecommunications.[10] Benedict is a resident of Southampton, U.K., and, like "thp2pk," Benedict accessed Bitfinex using an IP address provided by British Telecommunications. Moreover, although the IP addresses are not identical, the IP

---

[9]

[10] An Internet Service Provider (or "ISP") in the U.K.

address used by "thp2pk," and the IP address used by Benedict, share the exact same first three octets, "**86.158.130.**174" (Thompson000540).

In the Ninth Circuit, courts have recognized that, although "an IP address alone does not provide any personal identifying information," an IP address "may be used to obtain such information." *Dig. Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150-JSC, 2016 U.S. Dist. LEXIS 141534, at *14 (N.D. Cal. Oct. 12, 2016) (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), and *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 U.S. Dist. LEXIS 119622, at *3 (N.D. Cal. Aug. 22, 2013). *See also*, *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1023 (D. Minn. 2016) (an IP address, a physical address, and a phone number are all "modern day hallmarks of how a person may be identified").

Moreover, unlike Bitcoin addresses (*i.e.*, the Vanity Address), Monero addresses (*i.e.*, the 44n address) are not published on a publicly-auditable blockchain, which means that only the Monero user, and the person or entity transacting with or facilitating transactions for the Monero user (*e.g.*, Shapeshift, Bitinfex), have information that could be used to identify the person in control of a Monero address. In this case, only Bitfinex, Shapeshift, and Benedict had information concerning the identity of the person who used the 44n address. Records obtained from Bitfinex (produced by the FBI pursuant to Plaintiff's *Touhy* Request) reveal the 44n Monero address was controlled by "thp2pk". According to records produced by Shapeshift, the 44n address and the Vanity Address appeared in the same Shapeshift transaction, *see*, Exhibit B, indicating that the Vanity Address and the 44n address are controlled by the same person. Unless he controlled

the 44n address, there is zero chance Benedict would have been involved in a transaction with it—the mere existence of the 44n address was otherwise unknowable.

Further, in no uncertain terms, the FBI's March 2021 Report (attached hereto as Exhibit A), concludes that "JamesandJohn" "is a username provided as an aka for Benedict Thompson, one of the main subjects in the UK investigation and joint operation for captioned case." Ex. B – SCHOBER_003041 – 003042. To reach this conclusion, the March 2021 Report references digital data, transaction records, and information obtained from Bitfinex, and from "a reliable FBI source," among other sources. The March 2021 Report explicitly connects the username, "JamesandJohn," to the email address, "annaadmas12@gmail.com." Ex. A – ("The victim also highlighted a second account (username: JamesandJohn; email: annaadmams12@gmail.com) that was also operated by the same perpetrator and also received stolen funds and had the same account activity."). The March 2021 Report also suggests that the same Bitfinex customer who controls the "JamesandJohn" account also controls the "thp2pk" Bitfinex account ("In the first account under username "thp2pk" . . . . In the second account under username "jamesandjohn" . . . .").

Benedict has admitted to using the email address, "annaadmas12@gmail.com" — which is the exact email address used by "JamesandJohn." *See* Ex. I – *Benedict Resp. to RFA No. 13, Set #3*. Moreover**,** on January 8, 2017, Benedict posted the following comment, publicly, on GitHub: "I updated to the latest version but on server start, I get this error: . . . . at . . . (/home/***JamesandJohn***/JC3MPSERVER/packages/justcord-3-master/util.js:3:34) . . . ." *See* Ex. C – SCHOBER_003091. Benedict's comment plainly suggests that he control of a device operating system with the username,

"JamesandJohn." Ex. C – *SCHOBER_003091*. Yet somehow, Benedict denies using the alias, "JamesandJohn." Ex. I – *Benedict Resp. to RFA No. 5, Set #3*.

In addition to the incontrovertible facts above, there is also overwhelming circumstantial evidence showing Benedict is the person who stole Plaintiff's bitcoins. For instance, Benedict took deliberate steps to conceal his identity, *see*, Ex. C – SCHOBER_000023 (showing Benedict liked a comment on Twitter concerning "throwaway" email addresses used for Bitfinex). Benedict also made multiple comments online, suggesting he knew how the Malware worked, *see* Ex. C – SCHOBER_000022, and just hours after Plaintiff's bitcoins were stolen, Benedict posted the following comment on GitHub (which he subsequently deleted): "is there any way to get this working with electrum 3 wallet files?," Ex. C – SCHOBER_000025. Benedict's comment suggests he was monitoring the Malware addresses and, as soon as he saw Plaintiff's bitcoins appear in the 1CZ wallet, he began looking for a way to extract the bitcoins.

Benedict wrongfully received and withheld Plaintiff's 16.4552 bitcoins; used burner email addresses and automated software; and took concerted steps to conceal his identity and cover up all traces of his tortious conduct.

*Third*, Plaintiff did not consent to Benedict's interference with his Bitcoins—this fact is undisputed. *See Benedict Resp. to RFA No. 6, Set #1*.

*Fourth*, the Parties do not dispute that, in December 2020, Plaintiff demanded that the Thompson Defendants return Plaintiff's bitcoins to him. *Thompson Answer* ¶ 51.

*Fifth*, the Thompson Defendants did not respond to, and therefore refused Plaintiff's demand. Id. at 52. This fact is not disputed.

No genuine issue of material fact exists as to whether Defendant Benedict Thompson is liable to Plaintiff for conversion. Accordingly, partial summary judgment should be entered against the Thompson Defendants as to liability for conversion.

**B. <u>Partial Summary Judgment As To Liability Against Benedict For Trespass to Chattels</u>**

Plaintiff's trespass to chattels claims concern Benedict's tortious interferences with Plaintiff's Computer and his Bitcoin wallets' private keys corresponding to the 1Mb and 1QG addresses.

"Trespass to chattels is the intentional interference with one's possession or physical condition of a chattel in the possession of another, without justification." *Mountain States Tel. & Tel. Co. v. Horn Tower Constr. Co*, 147 Colo. 166, 170 (1961). The elements of a trespass to chattels claim are: **(i)** the property belonged to the plaintiff; **(ii)** the defendant interfered with the plaintiff's rights to the property; and **(iii)** plaintiff did not authorize defendant's conduct. *See MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*, Civil Action No. 19-cv-00938-MEH, 2019 U.S. Dist. LEXIS 178213, at *30 (D. Colo. Oct. 15, 2019) ("conversion, civil theft, and trespass to chattel . . .  have similar elements of proof.")

### (i)    *Benedict's Trespass To Plaintiff's Computer*

*First*, the Parties do not dispute that Plaintiff owned, possessed, and had a right to possess his Computer, which was infected by the Malware. *See* <u>Ex. C</u> – SCHOBER_002944 – 002949.

*Second*, by utilizing the Malware to persistently monitor and hijack Plaintiff's Computer's clipboard function, the Bitfinex customer with the alias "thp2pk" intentionally

interfered with Plaintiff's possession of his Computer. *See* Ex. B – *SCHOBER_003039 – 003043*. As a result, beginning on January 27, 2018, Plaintiff was unable to safely use and operate his Computer, and ultimately, his Computer was completely destroyed (rendered unsafe for future use; a total loss). Id. See, *infra*, ___.

Only the person who created or generated the Malware would have had the private keys to transfer the bitcoins from the addresses embedded in the Malware. *See*, *infra*, at ___ (stating facts showing Benedict controlled the Malware).

*Third*, the Parties do not dispute that Plaintiff did not consent to the tortious interference with his Computer. *See*, Ex. E – *Benedict Resp. to RFA No. 6, Set #1*.

### (ii)   *Benedict's Trespass To Plaintiff's Private Keys*

*First*, the Parties do not dispute that Plaintiff owned, possessed, and had a right to possess the private keys for the 1Mb and 1QG addresses. *See Benedict Resp. to RFA Nos. 3 and 4, Set #1*.

*Second*, by redirecting Plaintiff's use of his private keys, Benedict used the Malware to interfere with Plaintiff's possession of, and to destroy or substantially impair the value of Plaintiff's 1Mb and 1QG private keys.

*Third*, the Parties do not dispute that Plaintiff did not consent to Benedict's interference with his private keys. *See* Ex. F – *Benedict Resp. to RFA No. 6, Set #1*.

The 1Mb and 1QG private keys were valuable because they are items of digital personal property that, regardless of how many bitcoins are associated with their corresponding wallets, have independent, measurable value derived from the private, secure transactions the private keys are used to facilitate. In this Circuit, trespass to digitally-transmitted data "seems pretty clearly to qualify as exactly the type of trespass

to chattels that the framers sought to prevent when they adopted the Fourth Amendment." *United States v. Ackerman*, 831 F.3d 1292, 1307-08 (10th Cir. 2016) (holding the government's review of private emails was a "search" under the Fourth Amendment); *United States v. Sporn*, No. 21-10016-EFM, 2022 U.S. Dist. LEXIS 39070 at *27-28 (D. Kan. Mar. 4, 2022), (recognizing that "a user's electronic messages may be actionable if they cause damage to the servers of an electronic communications provider").

The value of a private key can be quantified by the sum of all "network fees" paid from the wallet corresponding with the private key. When, as here, a defendant has wrongfully interfered with plaintiff's possession of his private keys, the resulting harm (separate and distinct from the plaintiff's loss of the bitcoins associated with the private key's wallet) is the person's inability to securely or privately re-use the impacted private keys in the future. Here, Benedict compromised Plaintiff's private keys by interfering with Plaintiff's use of them.

Accordingly, partial summary judgment as to liability should enter in favor of Plaintiff, against Defendant Benedict Thompson, on his trespass to chattels claims.

## C. Benedict's Parents Are Vicariously Liable For Benedict's Tortious Conduct As A Minor Child

Where a plaintiff invokes a federal district court's diversity jurisdiction, the district court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Colorado follows the Restatement (Second) of Conflict of Laws for tort actions. *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014). "The Restatement states

that '[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in Section 6.'" *Courtney v. Class Transp., Inc.*, No. 18-cv-02335-RBJ, 2021 U.S. Dist. LEXIS 6347, at *12-13 (D. Colo. Jan. 13, 2021) (citing *Kipling*, 774 F.3d at 1310).

Colorado Revised Statute §13-21-107(2), describes the liability of parents for their minor children when the children cause damages to another person's property:

> any person . . . is entitled to recover damages in an amount not to exceed three thousand five hundred dollars in a court of competent jurisdiction from the parents of each minor under the age of eighteen years, living with such parents, who maliciously or willfully damages or destroys property, real, personal, or mixed, belonging to . . . any such person, . . . .  The recovery shall be the actual damages in an amount not to exceed three thousand five hundred dollars, in addition to court costs and reasonable attorney fees.

Section 13-21-107(2).

Plaintiff and the Thompson Defendants do not dispute that Benedict was under the age of eighteen and living at home with his parents during the relevant time period. *Thompson Answer* ¶ 47 [Doc. 35]. For reasons explained above, and for reasons to be further articulated in the oral argument Plaintiff requests on this issue, Benedict willfully and maliciously damaged Plaintiff's Computer, his private keys, and his 16.4552 bitcoins. Under Colorado law, the Defendants Edward and Claire Thompson are vicariously liable for Benedict's tortious conduct. However, this Court can, and should, apply U.K. common law to resolve the issue of parental liability.

Colorado law holds parents *strictly liable* for their child's malicious or willful conduct resulting in damage or destruction to property located in Colorado. On these facts, imposing strict liability would potentially obviate important facts relating to the degree to

which Benedict's parents knew about, contributed to, or could have prevented the harms Plaintiff sustained. See Ex. E – Thompson000302 – 000304, 000295, 000298.

The Tenth Circuit does not appear to have had an opportunity to determine whether, under the principle of *lex loci delicti*, Colorado law or foreign law should apply when a minor child under the control and supervision of his parents in a foreign country, causes harms in Colorado. While Plaintiff's claims against Benedict undoubtedly involve conduct that occurred, and caused harms sustained entirely in Colorado, this Court can and should apply English law only to decide the issue of parental liability. The application of English law is appropriate because the parental responsibilities of Defendants Edward and Claire Thompson occurred in the United Kingdom. Plaintiff requests oral argument on this issue.

## V.  CONCLUSION

WHEREFORE, Plaintiff Andrew Schober respectfully requests that this Court grant the following relief:

    a.  Enter judgment against the Thompson Defendants as to their liability for conversion of Plaintiff's 16.4552 bitcoins;

    b.  Enter judgment against the Thompson Defendants as to their liability for trespass to Plaintiff's Computer;

    c.  Enter judgment against the Thompson Defendants as to their liability for trespass to Plaintiff's private keys for his 1Mb and 1QG addresses;

    d.  Grant such other and further relief as the Court deems proper and just.

DATED this 30th day of May 2023.

**THE LAW OFFICE OF ETHAN MORA**

*/s/  Ethan E. Mora* _____
Ethan E. Mora, Esq.
1040 E. Herndon Ave., Suite 202
Fresno, CA 93720
(559) 370-1485
ethanmoralaw@pm.me
*Attorney for Plaintiff Andrew Schober*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of May, 2023 I electronically filed the foregoing **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THOMPSON DEFENDANTS** with the Clerk of the Court using the CM/ECF system. As such, this document was served on all counsel of record. I also served the *pro se* Defendants via email at the following addresses:

Oliver Read

  Oliverread2001@gmail.com

Hazel Wells

  Hazelwells44@gmail.com

Paul Read

  Paulread66@aol.co.uk


          */s/ Ethan E. Mora*
          Ethan E. Mora, Esq.