IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01382-GPG-NRN

ANDREW SCHOBER,

    *Plaintiff,*

v.

BENEDICT THOMPSON, et al.,

    *Defendants.*

---

**THOMPSON DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 79]**

---

Defendants Benedict Thompson, Edward Thompson and Claire Thompson (collectively "the Thompsons"), by and through counsel Carl A. Hjort, III, of Robinson Waters & O'Dorisio, P.C., submit the within Brief in opposition to Plaintiff Andrew Schober's ("Mr. Schober") Motion for Partial Summary Judgment [Doc. 79] and state and allege the following:

### I.    Introduction

The Court should deny the Plaintiff's motion for summary judgment because genuine issues of material fact abound with respect to all of the claims asserted by the Plaintiff. The Court should note that the Plaintiff does not have any expert witness who will testify about the contents of the Malware code, Bitcoin blockchain tracing, Monero blockchain tracing or IP address tracing, even though the Plaintiff will need to have opinion testimony on all of these issues in order to prove his case. Instead, the Plaintiff makes bold assertions about these issues,

1

but there is no competent evidence to support these assertions. The Plaintiff, with no competent evidentiary support, claims that Benedict Thompson received a payment from an address associated with the Malware. The Plaintiff asks the Court to then draw the inference that since Benedict Thompson received this payment, he must be in control of the Malware, but the Court cannot draw this inference on summary judgment where the Court must draw all inferences in favor of the non-moving party.

The Plaintiff claims to have the IP address used by the perpetrator of the theft and it would be a simple matter for him to have identified the customer associated with that IP address, but the Plaintiff never took steps to do so in discovery. The Thompsons identified in their initial disclosures an individual named Henry Burchill as a potentially responsible party. Mr. Burchill is a resident of Southampton, just as the Plaintiff alleges the perpetrator to be. The Plaintiff never undertook any investigation to determine if Mr. Burchill was the responsible party in this case. Instead, the Plaintiff relies on impermissible inferences to link together so-called "facts" in an effort to arrive at his pre-determined result that Benedict Thompson is responsible. The Plaintiff has no credible proof tying Benedict Thompson to the theft of his Bitcoin, and he certainly lacks the level of proof required to support a motion for summary judgment.

The Plaintiff's claim with respect to trespass to chattels likewise fails, because it is based on the same arguments and "proof" that the conversion claim is based on. Finally, since the Plaintiff's claims against Benedict Thompson fail for lack of proof, the claims of parental liability similarly fail, and even if the Court is inclined to consider these claims, the Plaintiff's contradictory arguments are not availing. The Court should deny the Plaintiff's motion for summary judgment in its entirety.

II.     **Response to Statement of Undisputed Material Facts**

1. Admitted.

2. Denied-in-part.  Benedict Thompson admits that, at the time of the events set forth in the Complaint, he was under the age of eighteen and living with his parents Edward and Claire Thompson in Southampton, United Kingdom.  Benedict denies that he "began trading cryptocurrencies in 2014."  The document cited in this statement, THOMPSON_000292, states that since 2014 Benedict "has been following cryptocurrencies closely" not that he had been trading cryptocurrencies.  Further, while THOMPSON_000292 states Benedict encouraged Edward to buy cryptocurrencies, it does not state that Edward Thompson actually did so, and therefore this portion of the statement is also denied.

3. Admitted.

4. Admitted.

5. Admitted.

6. Denied.  None of these statements are supported by SCHOBER_000020.

7. Denied.  Mr. Schober merely cites allegations in the Complaint as the factual basis for this statement.  Allegations in the Complaint are not evidence.[1]

8. Denied.  To the extent the supposed factual basis for this statement is merely allegations in the Complaint, this is improper.  Further, SCHOBER_002938[2] does not support this statement.

---

[1] There are many examples where Mr. Schober relies solely on allegations in the Complaint as the basis for material facts and this problem is endemic throughout the statement of allegedly undisputed facts.  This is obviously improper.  *Rolland v. Primesource Staffing, LLC*, 457 F.Supp.2d 1221 (D. Co. 2006)(on summary judgment, unsupported allegations without any significant probative evidence tending to support the complaint are insufficient) s*ee also Sheets v. Dziabis*, 783 F.Supp. 307 (N.D. In. 1990)(party seeking summary judgment cannot rest on mere allegations in pleadings).

9. Denied. None of the Bitcoin addresses referred to in the statement are to be found in SCHOBER_003040. SCHOBER_000026 refers only to the "1Jr" address, which is not associated with the alleged theft of Mr. Schober's Bitcoin. SCHOBER_000037 refers only to the "1CZ" address.

10. Denied. SCHOBER 000026-000031 discuss alleged transactions involving the "1Jr" address that is not relevant to the statement in this paragraph. SCHOBER_003042-003043 make the conclusory statements that transactions occurred, but there is no evidence to support these statements, which constitute hearsay within hearsay.

11. Denied-in-part. Benedict Thompson admitted that he was one of many individuals to use the [annaadmams12@gmail.com](mailto:annaadmams12@gmail.com) address. To the extent the Plaintiff seeks to characterize the use of this email exclusively to Benedict Thompson, that is denied.

12. Admitted.

13. Admitted.

14. Denied. SCHOBER_000026 makes the statement that the transaction referred to in this paragraph occurred, but it does not constitute evidence of such a transaction.

15. Admitted.

16. Admitted.

17. Admitted. The Thompsons admit this paragraph based on review of the FBI documents that establish this timeline, but they specifically deny having anything to do with creating or posting the Electrum Atom malware to Reddit.com.

---

[2] It is disturbing that Mr. Schober characterizes SCHOBER_002938 as a "FBI Investigation Report." This document was prepared by Mr. Schober and given to the FBI, who then included it as an attachment to their report. SCHOBER _002938 is <u>NOT</u> FBI work-product.

18. Denied.  Mr. Schober merely cites allegations in the Complaint as the factual basis for this statement.  Allegations in the Complaint are not evidence.

19. Admitted.  The Thompsons admit this paragraph based on review of the FBI documents that establish this timeline, but they specifically deny having anything to do with creating or posting the Electrum Atom malware.

20. Admitted.

21. Denied.  SCHOBER_003039-003041 do not contain any reference to the "1CZ" address or to the transfer of 16.4552 bitcoins.  These documents only refer to alleged transactions by the "thp2pk" account at Bitfinex.

22. Admitted.

23. Admitted.

24. Admitted.

25. Denied-in-part.  Emails produced between Mr. Schober and the FBI state that Mr. Schober did inform the FBI that he suspected Benedict Thompson was involved with the Malware on June 5, 2019. The Thompsons deny that the Plaintiff's alleged blockchain analysis establishes any connection between an address embedded in the Malware and one controlled by Benedict Thompson.

26. Admitted.

27. Admitted.

28. Denied-in-part.  The Thompsons admit that the FBI documents recited in this paragraph exist but deny that they establish any connection between the Thompsons and any Bitcoin address associated with the Malware and further deny that these documents constitute admissible evidence in this case.

### III. Statement of Additional Disputed Facts

1. In an email dated February 25, 2023, counsel for the Plaintiff stated to undersigned counsel that he had "decided not to designate any expert witnesses (neither retained nor unretained)." (See Ex. "A," 2/25/23 Email from Ethan Mora to Carl Hjort). Therefore, the Plaintiff does not have any expert witness who will testify about the contents of the Malware code, Bitcoin blockchain tracing, Monero blockchain tracing or IP address tracing.

2. It was not possible to trace Monero prior to August 31, 2020, and even then, this functionality was reserved to the U.S. Department of Homeland Security. (See Exhibit "B," press release from CipherTrace dated August 31, 2020).

3. The West Yorkshire Police Department seized Benedict Thompson's electronic devices and subjected them to forensic examination. (See Exhibit "C," Selected Document Production, SCHOBER_002779).

4. The West Yorkshire Police Department in consultation with the Crown Prosecution (Specialist Fraud Division) concluded that because of "insurmountable" evidentiary difficulties, they could not bring any charges against either Benedict Thompson or Oliver Read. (See Exhibit "C," SCHOBER_002885).

5. On February 23, 2018, Mr. Schober met with an FBI agent and gave the FBI custody of his laptop. (See Ex. "C," SCHOBER_002920, ¶5).

6. On April 14, 2020, the FBI informed Mr. Schober that it was closing its investigation because the United States Attorney's Office had declined to prosecute the case. (See Exhibit "C", SCHOBER_001566-67).

7. Henry Burchill is a resident of Southampton, UK.  (See Exhibit "D," Thompson Defendants Initial Disclosures, page 3).

IV.   **Argument**

   1. **Legal Standard**

It is apodictic that "summary judgment is a drastic remedy" and should be awarded with care. *Conaway v. Smith*, 853 F.2d 789, 792 n. 4 (10th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  All factual disputes and inferences must be drawn in favor of the nonmoving party. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980).

   2. **There are Substantial Factual Disputes that Preclude Summary Judgment on the Conversion Count.**

Contrary to the assertions of the Plaintiff, there is no evidence that shows that Benedict Thompson was responsible for the theft of the Plaintiff's Bitcoin, and in fact there are substantial factual disputes on this issue which preclude summary judgment.  Mr. Schober asserts "the Parties do not dispute that the Bitfinex customer with the username, 'thp2pk,' intentionally interfered with the Plaintiff's 16.4552 bitcoins by using the 3CW Bitcoin address and 44n Monero address." The Thompsons have never been asked to admit or deny these claims, and they deny this claim for lack of knowledge.  However, to the extent the Plaintiff asked in discovery for the Thompson's to admit that Benedict Thompson is the user associated with the username "thp2pk" the Thompsons have specifically denied that every time the Plaintiff has asked.  The Plaintiff complains that the Thompsons have not provided "any supporting facts" for the denial that Benedict Thompson is associated with the "thp2pk" account, but here the Plaintiff

7

is asking the Thompsons to do the impossible: to prove a negative. Also, the Plaintiff fundamentally misunderstands the burdens of proof in this case, the burden is on Mr. Schober to prove his case, not for the Defendants to prove their non-involvement. Mr. Schober's "proof" falls far short of establishing liability and certainly falls short of the level of proof required for summary judgment.

As best as the Plaintiff's "proof" can be understood, these are the allegations that the Plaintiff claims tie Benedict Thompson to the alleged theft of Mr. Schober's Bitcoin:

- The Electrum Atom Malware allegedly contains 195,112 discrete Bitcoin addresses in its code, but the Plaintiff has no expert that will testify to these alleged features of the Malware.
- Four (4) of the 195,112 addresses allegedly found in the Malware have had deposits made to them, but the Plaintiff has no expert who will testify as to the blockchain tracing that supports this allegation.
- On December 30, 2017, a month before Mr. Schober's loss, one of the addresses allegedly contained in the Malware ("the 1Jr address") received a deposit of 0.1 bitcoins. Again, no expert testimony will establish this.
- On January 10, 2018, someone allegedly converted the 0.1 bitcoins from the 1Jr address into Monero, but no expert will testify to this. Monero is a privacy focused cryptocurrency that was not traceable until August 31, 2020. (See Ex. "B").
- Mr. Schober contends that in August 2019, he contacted a Redditt user who has never been identified by name, only by the username "priest_of_satoshi." This user claims to have traced the Monero from the 1Jr address, through its

8

conversion to Monero and then conversion back to Bitcoin and eventually to an address controlled by Benedict Thompson ("the Vanity address"), even though such tracing functionality was not available to the U.S. Government until a year later in 2020. (See Ex. "B").  Obviously, "priest_of_satoshi" will not be testifying as an expert in this case.

- The Monero address allegedly found by "priest_of_satoshi" in this tracing exercise was what has been referred to as "the 44n" address.

- The 44n address was also allegedly used by the user "thp2pk" when that user converted Mr. Schober's Bitcoin into Monero.

- Mr. Schober also claims that since the user "thp2pk" allegedly used an IP address that was located in Southampton, UK, that establishes some connection between that user and Benedict Thompson.  This, of course, ignores the fact that Henry Burchill, who the Thompsons identified to Mr. Schober in their initial disclosures as a possible responsible party in this matter, also resides in Southampton, UK.

Even if any of these allegations were true, which the Thompsons deny because the Plaintiff has offered absolutely no proof on any of these allegations, they still would not prove that Benedict Thompson is responsible for the theft of the Plaintiff's Bitcoin.  At best it would prove that Benedict Thompson received a payment from an address associated with the Malware, but not the address associated with the theft of Mr. Schober's Bitcoin.  The Plaintiff asks the Court to then draw the inference that since Benedict Thompson received this payment, he must be in control of the Malware, but the Court cannot draw this inference on summary judgment.  On summary judgment, the Court must draw all inferences in favor of the non-moving party.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980).  Because the Plaintiff has no proof

9

directly connecting Benedict Thompson to the alleged theft of his Bitcoin, and asks the Court to improperly infer a connection, summary judgment is clearly inappropriate in this case.

At the outset of this case, in the initial disclosures, the Thompsons identified to Mr. Schober an individual named Henry Burchill who may have been responsible for Mr. Schober's loss. (See Ex. "D").  Unfortunately, despite having a lengthy discovery period to investigate Mr. Burchill's involvement in the loss, the Plaintiff took no steps to actually do so.  The Thompsons point out that a likely inference that the Court could draw in their favor is that Henry Burchill, a resident of Southampton, UK, is the user associated with the "thp2pk" account and he, and not Benedict Thompson, is responsible for the Plaintiff's loss.  In fact, the Plaintiff has focused his flawed analysis entirely on Benedict Thompson and has worked backward from his assumption that Benedict Thompson is the responsible party, while ignoring other likely liable parties to incorrectly pin the blame on Benedict Thompson.

The case cited by the Plaintiff is on-point, but not in the way the Plaintiff suggests.  *Dig. Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150-JSC, 2016 U.S. Dist. LEXIS 141534, at *14 (N.D. Cal. Oct. 12, 2016) says that "an IP address alone does not provide any personal identifying information," but an IP address "may be used to obtain such information."  That is exactly what the Plaintiff should have done in this case.  The Plaintiff claims to have the IP address used by "thp2pk" and it would be a simple matter for him to have served a subpoena on British Telecom to identify the customer associated with that IP address.  The Plaintiff never did so.  Instead, the Plaintiff relies on conjecture, allegations that have no factual basis and the supposed "expert" opinion of an unnamed Reddit user to try to implicate Benedict Thompson in the theft of this Bitcoin when no such proof exists.

For the sake of completeness, the Thompsons will address the other specious claims made by the Plaintiff in the motion. For instance, the Plaintiff claims at page 13 of the motion that "the 44n address and the Vanity address appeared in the same Shapeshift transaction, see, Exhibit B, indicating that the Vanity Address and the 44n address are controlled by the same person." The Plaintiff's Exhibit B to the motion establishes nothing of the sort. A simple review of Exhibit B shows there is absolutely no reference to the Vanity address (1BeNEdictBLbmVJ9LXkSwqiyWWf36XKTD1) in that document, and thus it establishes no such connection that the Plaintiff claims.

Next the Plaintiff cites to the March 2021 FBI report attached as Exhibit A to the motion and claims that proves some connection between Benedict Thompson and "thp2pk." There are several fatal problems with this FBI report. First, it is hearsay within hearsay, and is only attributable to an unnamed source. The Court should not consider inadmissible evidence in deciding this motion. Second, even to the extent it can be believed, which is should not, it attributes the username "JamesandJohn" to Benedict Thompson, but it does not attribute Benedict Thompson to the user "thp2pk." The Plaintiff has unequivocally claimed that "thp2pk" is the user who stole his Bitcoin, and so whether Benedict Thompson is or is not "JamesandJohn," and he has continuously denied using this account, it is of no moment, because the "JamesandJohn" account concededly is not responsible for the alleged theft of Mr. Schober's Bitcoin. This is yet another example of the Plaintiff trying to tie Benedict Thompson to a Bitcoin address not associated with the alleged theft and then have the Court infer that this connection means that Benedict Thompson is responsible for the theft. The Court cannot make such inferences on summary judgment.

Finally, it appears that the FBI report is merely the restatement of Mr. Schober's claims, not actual evidence. The report says "[f]urthermore, the user was implicated by another user (username: Drewski; email [redacted]) for BTC theft." Drewski is one of Mr. Schober's online aliases. (See Ex. "E," Interrogatory #5 on the chart). The report goes on to say "[t]he victim [presumably Mr. Schober] highlighted a second account…" So, this report is merely the restatement of Mr. Schober's baseless claims, it is not something that the FBI actually investigated. In point of fact, the FBI took custody of Mr. Schober's computer and examined it at length and was not able to demonstrate Benedict Thompson was responsible for the theft. (See Ex. "C," SCHOBER_002920, ¶5; SCHOBER_001566-67). Moreover, the West Yorkshire police took custody of Benedict Thompson's computer, and they also were unable to demonstrate Benedict Thompson was responsible for the theft. (See Ex. "C," SCHOBER_002779; SCHOBER_002885). There is no evidence that establishes a link between Benedict Thompson and the theft of Mr. Schober's Bitcoin.

Lastly, the Plaintiff claims that "overwhelming circumstantial evidence" implicates Benedict Thompson in the theft. This "overwhelming" evidence includes that Benedict Thompson liked a tweet that another user posted that possibly suggests using a throw away address to avoid getting margin call emails. This is hardly evidence that "Benedict took steps to conceal his identity" as claimed by the Plaintiff. The next piece of "overwhelming" evidence is Benedict Thompson's response to another user's question on a Bitcoin mailing list. This response merely notes that a user should check the entire address when copying and pasting Bitcoin addresses because checking the first three digits is not sufficient. There were not multiple posts, as claimed by the Plaintiff, and this commonsense observation does not suggest Benedict "knew how the Malware worked." The final piece of "overwhelming" evidence is a

posting on GitHub about getting an unknown program to work with "electrum 3 wallet files." This post proves nothing about the alleged theft of Mr. Schober's Bitcoin. For all the foregoing reasons, the Plaintiff lacks any evidence tying Benedict Thompson to the theft of his Bitcoin, and certainly lacks the quality of evidence required for judgment as a matter of law. The Court should deny this Motion.

### 3. Summary Judgment on the Trespass to Chattels Count Fails for the Same Reasons as the Conversion Count.

The Plaintiff's arguments with respect to the trespass to chattels count mimic the arguments with respect to the conversion count and fail for the same reasons. Mr. Schober claims that the user "'thp2pk' intentionally interfered with Plaintiff's possession of his Computer." As set forth in depth above, Benedict Thompson denies being the user associated with the account "thp2pk" and the Plaintiff has no evidence that establishes a link between Benedict Thompson and this account. The Plaintiff's only claim is that "thp2pk" has an IP address from Southampton, UK, and because Benedict Thompson lives in Southampton that establishes some type of connection. However, there is no evidence tying Benedict Thompson to the IP address used by "thp2pk" even though the Plaintiff could have easily obtained such evidence. This argument further ignores the fact that the Thompsons disclosed an individual possibly responsible for the theft of the Plaintiff's Bitcoin, but the Plaintiff elected to ignore this disclosure and perform no investigation relative to Henry Burchill's involvement in this matter.

The Plaintiff also baldly states, with no evidence, that his Computer is completely destroyed. It is unclear why the Plaintiff cannot simply wipe the Malware from his hard drive and continue to use his Computer. No facts support the Plaintiff's claim that his Computer is a "total loss." Finally, the Plaintiff claims that his "private keys" have been damaged, but this disregards the fact that the Plaintiff could create new private keys, at no cost, for use in future

13

Bitcoin transactions.  There again is no evidence that the "private keys" have any value or that the Plaintiff has incurred any cost associated with their alleged compromise.  The Plaintiff has not proven that Benedict Thompson is liable for trespass to chattels and he certainly has not adduced the level of proof commensurate with summary judgment.  The Court should deny this motion.

      **4.   Since the Plaintiff is not Entitled to Summary Judgment Against Benedict Thompson, There can be no Award for Parental Liability.**

The Plaintiff's arguments for parental liability against Edward and Claire Thompson fail for the simple reason that the Plaintiff has failed to carry his burden in support of summary judgment as to liability against Benedict Thompson, and therefore no parental liability can attach.  Moreover, the Plaintiff's arguments as to parental liability are unintelligible and seemingly contradictory.  First, the Plaintiff cites to the Restatement (Second) of Conflict of Laws for the proposition that Colorado law should apply to the issue of parental liability because the alleged injury occurred in Colorado.  Second, the Plaintiff cites to C.R.S. § 13-21-107, which establishes a limitation on damages that can be awarded against parents for their minor child's willful or malicious damaging of property.  Third, the Plaintiff then claims that English law should apply to the issue of parental liability but provides no statement of what the English law purportedly is, or how it would apply to this case.  These arguments are contradictory, and the Court can easily dismiss them because since no summary judgment is proper against Benedict Thompson, for all the reasons stated above, summary judgment on the issue of parental liability is also improper.

However, for the sake of completeness, if the Court does consider whether C.R.S. § 13-21-107 applies to this case, it should reject such an application.  C.R.S. § 13-21-107 applies to

14

cases where a minor has committed willful or malicious damaging, it does not apply to theft. Here the gravamen of the Plaintiff's claims is theft, that his Bitcoin has been stolen. The Colorado legislature did not include theft as a tort that was subject to the provisions of C.R.S. § 13-21-107. In fact, C.R.S. § 13-21-107.5 imposes a similar limitation on parental liability in cases of theft, but that statutory provision is limited to cases of retail theft and is clearly inapplicable to this case. In any event, since the Plaintiff is clearly not entitled to summary judgment on the issue of Benedict Thompson's alleged liability, summary judgment is also inappropriate on the issue of parental liability.

## V.     Conclusion

For all the foregoing reasons, the Court should DENY summary judgment.

Respectfully submitted,

*/s/Carl A. Hjort, III*
Carl A. Hjort, III
Colorado Bar No. 42108
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: 303-824-3192
Email: chjort@rwolaw.com
***Attorney for Defendants Benedict Thompson, Claire L. Thompson and Edward J. Thompson***

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. As such, this document was served on all counsel of record. I also served the *pro se* Defendants via email at the following addresses:

    Oliver Read
    Oliverread2001@gmail.com
    Hazel Wells
    Hazelwells44@gmail.com
    Paul Read
    Paulread66@aol.co.uk

                                            /s/Carl A. Hjort, III
                                            Carl A. Hjort, III