IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01382-GPG-NRN

ANDREW SCHOBER,
                          Plaintiff,
v.
BENEDICT THOMPSON, OLIVER READ,
EDWARD J. THOMPSON, CLAIRE
L. THOMPSON, PAUL READ, and HAZEL
DAVINA WELLS,
                          Defendants.

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [DOC. 78]

---

## I.      INTRODUCTION

Plaintiff's Opposition to Defendants' Motion for Summary Judgment addresses the

issues concerning damages and expert witnesses. (Plaintiff addresses the other issues

raised in Defendants' Motion for Summary Judgment, concerning statute of limitations

and personal jurisdiction, in Plaintiff Cross-Motion for Summary Judgment.)

## II.     RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Admitted.

2.      Admitted.

3.      Denied-in-part. Mr. Schober inadvertently sent his bitcoins to the wrong

address because the Malware interfered with the copy-paste function of his computer,

and only to that extent did the Malware, not a person, "intercept" his bitcoins.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Denied. The Malware was downloaded on Plaintiff's laptop on January 27, 2018.

11.     Denied-in-part. Mr. Schober admits the "theft" began on January 29, 2018, but the inadvertent transfer of Mr. Schober's bitcoins to the Malware address was only the start of the theft.  The fact that bitcoins were transferred from a Bitcoin wallet stored in the Malware, to another Bitcoin wallet not stored in the Malware, is indeed highly relevant to the analysis.

12.     Admitted.

13.     Admitted. But note that according to Fed. R. Civ. P. 5.2, the document cited by Defendants has not been properly redacted, and therefore, should be stricken (as Plaintiff has produced the properly redacted document, as well).

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Denied-in-part. Plaintiff did not "know" his bitcoins had been stolen by a person, even if he had told the FBI his bitcoins had been "stolen" by the Malware.

18.     Admitted.

19.     Denied. The Thompson Defendants have not stated who employed or paid Benedict, in Bitcoin, to conduct "end user testing," and therefore, to the extent they cannot

state who employed Benedict, the Thompson Defendants apparently do not know whether engaged in any business activity in Colorado.

20.     Denied. The Thompson Defendants have not stated who employed or paid Benedict, in Bitcoin, to conduct "end user testing," and therefore, to the extent they cannot state who employed Benedict, the Thompson Defendants apparently do not know whether they derived income from any services rendered or activities in Colorado.

21.     Denied. The Thompson Defendants have not stated who employed or paid in Bitcoin Benedict to conduct "end user testing," and therefore, to the extent they cannot state who employed Benedict, the Thompson Defendants apparently do not know whether they contracted to supply services in Colorado.

22.     Admitted.

23.     Admitted.

24.     Denied-in-part. Plaintiff seeks clarification as to whether cryptocurrency addresses might be considered "bank accounts" for the purpose of Defendants' statement.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

### III.     PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

1.     Plaintiff is an Open-Source Intelligence (OSINT) analyst certified through the McAfee Institute who has his Open-Source Intelligence Professional Certification

3

through the IntelTechniques. Declaration of Andrew Schober (Schober Decl.), attached as Exhibit A, at ¶ 5.

2.      Mr. Schober intended to use his Bitcoin to buy and house and go back to school. Id. at ¶ 7.

3.      Mr. Schober has never been to the United Kingdom, and the burden on him to travel to the United Kingdom, or to litigate his claims there, would be significant for him. Id. at ¶ 10.

4.      Plaintiff learned of the connection between Benedict and the Malware, only after spending between 1,000 to 2,000 hours conducting his investigation. Id. at ¶ 14.

## IV.     STANDARD OF REVIEW

In filing a motion for summary judgment, the movant bears the burden of showing an absence of genuine dispute about material facts, even where the party moving for summary judgment would not bear the burden of proof at trial. *Mike Naughton Ford, Inc. v. Ford Motor Co.*, 862 F.Supp. 264 (D. Colo. 1994). If the movant satisfies its burden, the burden shifts to the non-movant to prove by admissible evidence that there is an actual genuine controversy about a material fact. *Celotex*, 477 U.S. at 322.

## V.     ARGUMENT

### A. Measure Of Damages Is a Question Of Fact For The Jury

"The amount of damages is generally a question of fact for the jury, but summary judgment is appropriate if the plaintiff fails to establish he is entitled to damages or provide a fair approximation of those damages. *Terrones v. Tapia*, 967 P.2d 216, 218 (Colo. App. 1998)." *Palmer v. Owners Ins. Co.*, Civil Action No. 18-cv-01953-JLK, 2019 U.S. Dist. LEXIS 223534, at *16 (D. Colo. Nov. 6, 2019). See also, *Ryan v. Mineral Cnty. High Sch.*

*Dist.*, 27 Colo. App. 63, 146 P. 792, 795 (Colo. App. 1915) (finding that the amount of damages is a question of fact for trial). The plaintiff's demand for damages need not be based on mathematical certainty; the amount of damages "may be an approximation, provided that the fact of damages is certain and that the plaintiff introduces some evidence which is sufficient to permit a reasonable estimation of damages." *Hauser v. Rose Health Care Sys.*, 857 P.2d 524, 531 (Colo. App. 1993). Additionally, the issue of what constitutes reasonable effort in mitigation of damages is a question of fact to be determined by the jury, as well. *See Fair*, 943 P.2d at 437 (Colo. 1997).

Plaintiff has provided a fair approximation of his damages, and the amount of Plaintiff's damages should be left to a jury. Plaintiff's approximation of damages is reasonable because it accounts for the time period when Plaintiff demanded that the Thompson Defendants return his 16.4552 bitcoins to him.

### B. Expert Witness Testimony Is Not Required

Expert witness testimony is not required in this case. However, if this Court were to find otherwise, Plaintiff expects he would be able to expeditiously obtain such written testimony, if given leave from this Court to obtain such testimony, and upon this Court's clarification about which topics require expert testimony (although doing so would inherently impose a financial burden on Mr. Schober).

To prove his non-derivative (trespass to chattels and conversion) claims, Mr. Schober must show that he (i) he owned and had a right to possess his computer and his bitcoins—certainly no further testimony is required on this element; (ii) Defendants interfered with his control, possession, or ownership of his property, and (iii) Mr. Schober did not consent to Defendants' interference—again, surely no expert testimony is required

5

on this element. Only the second element of Plaintiff's said claims could even fathomably require expert testimony, but for the reasons articulated below, no such testimony is required.

Plaintiff is a licensed massage therapist (see Schober Decl. at ¶ 4) who, through sheer, unrelenting determination in his pursuit of his stolen property, became a certified Open-Source Intelligence Analyst (Id. at ¶ 5), and who independently discovered the facts necessary to prove this case (Id. at ¶ 16). Plaintiff is more than capable of explaining how he traced his stolen bitcoins to Benedict. And for that matter, Defendants are also capable (as university-level computer science students) of explaining and testifying about the same.

In any case, "[t]he Thompsons deny having any involvement in this matter whatsoever, and specifically deny being involved with development of the Electrum Atom malware [the "Malware"] or its implementation," ECF No. 78, at p. 16. There is no reason why Plaintiff would need to retain experts to describe how the Malware worked or how it was implemented (beyond the testimony Plaintiff himself could or already has described)—those facts are not disputed, nor could they be, nor are those facts (regarding how the Malware worked) even necessary to prove that the Thompson Defendants received and refused to return Plaintiff's stolen bitcoins.

The publicly-available resources and techniques Plaintiff learned and used in the course of his investigation, along with the undisputable records produced by Shapeshift, and the FBI (including the Bitfinex records), provide facts showing Benedict's cryptocurrency addresses received cryptocurrencies from the Malware, including Plaintiff's cryptocurrencies. A jury would not he need experts to explain how social media

6

posts work, or how to access or read publicly-available blockchain information on the internet. Nevertheless, Defendants' MSJ points out three specific subjects, which, for the reasons stated below, no expert testimony is required.

### 1. *IP Address Tracing*

The fact that the IP address used by the "thp2pk" Bitfinex user, and Benedict's IP addresses, both connected to the same telecommunications network, and the fact that Benedict's IP address and "thp2pk"'s IP address are very similar, are meant to show those simple facts: that the IP addresses were both connected to British Telecommunications service network, and that the IP addresses are similar. Defendants fail to explain why Plaintiff must incur additional expenditures, on expert witness testimony, in order to prove these self-evident facts.

### 2. *Open-Source Intelligence (OSINT)*

Plaintiff does not need expert witness testimony to explain the facts uncovered through his Open-Source Intelligence investigation, because Plaintiff is, himself, a certified Open-Source Intelligence analyst who can explain the techniques he used to identify Benedict. The techniques Mr. Schober used are directly supported, and his conclusions, confirmed, by the FBI, Bitfinex, and Shapeshift records.

To the extent Defendants now seek to open the door to expert testimony in the hopes of attempting to disprove Mr. Schober's findings, which are supported by the FBI's consistent conclusions, and impartial, third-party records, Plaintiff could obtain equally compelling expert testimony to verify his findings and dispute the findings (hypothetically, if any) of Defendants' experts. But such dueling testimony would inevitably make the OSINT issues more, not less, complicated for a jury to understand. Expert testimony is

not required to make Plaintiff's case, and Defendants have made zero effort to articulate how could be.

### 3. *Cryptocurrency Tracing And The Malware*

The cryptocurrency tracing techniques Plaintiff used are interesting, but they are not necessary to understand in order to determine Defendants' liability and Plaintiff's damages. In discovery, Plaintiff uncovered records from the FBI, Bitfinex, and Shapeshift, which reveal indisputable and, in most cases, timestamped connections between Benedict and the Malware. Regarding the Bitfinex and Shapeshift records, only those two entities and the person who used their services to transact (*i.e.*, Benedict), would have records connecting the person who utilized the Malware, to the Malware. Those records show Benedict utilized the Malware.

Additionally, Mr. Schober, himself, can explain the cryptocurrency tracing connections, which he discovered, based on his own efforts, by simply referring to publicly-available information, or by cross-referencing his work and knowledge with records obtained through discovery and the declarations produced in this litigation (which speak for themselves). See Schober Decl., Exhibit A; and Declaration of Nicolas Bax, Exhibit B.

While it is true that many people still do not own cryptocurrency, the concept of cryptocurrency is widely known, and Bitcoin is accepted as a form of payment in Colorado, across the United States, and around the world. Moreover, the issues and facts in this case do not require anything more than a basic understanding of the fact that cryptocurrency transactions are recorded on immutable, publicly-accessible,

timestamped ledgers, called "blockchains," which, in most cases, reveal the sender "address" and the recipient "address."

## VI.     CONCLUSION

Because a genuine dispute of material fact exists as to the measure of Plaintiff's damages, and whether expert witnesses are required in this matter, the Defendants' Motion for Summary Judgment should be denied.

DATED this 20th day of June 2023.

THE LAW OFFICE OF ETHAN MORA

/s/ Ethan E. Mora_____
Ethan E. Mora, Esq.
1040 E. Herndon Ave., Suite 103
Fresno, CA 93720
(559) 370-1485
ethanmoralaw@pm.me
*Attorney for Plaintiff Andrew Schober*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. As such, this document was served on all counsel of record. I also served the *pro se* Defendants via email at the following addresses:

Oliver Read

      Oliverread2001@gmail.com

Hazel Wells

      Hazelwells44@gmail.com

Paul Read

      Paulread66@aol.co.uk


                    **THE LAW OFFICE OF ETHAN MORA**

                    ___*Ethan Mora*_____
                    Ethan Mora