# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01382-GPG-NRN

ANDREW SCHOBER,
                Plaintiff,
v.
BENEDICT THOMPSON, OLIVER READ,
EDWARD J. THOMPSON, CLAIRE
L. THOMPSON, PAUL READ, and HAZEL
DAVINA WELLS,
                Defendants.

---

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (ON DEFENDANTS' AFFIRMATIVE DEFENSES)**

---

## I.    INTRODUCTION

Plaintiff's Cross-Motion for Summary Judgment should be granted, and Defendants' Motion for Summary Judgment[1] should be denied, because no genuine disputes of material fact remain as to where Defendants' tortious conduct occurred (Colorado), or when Plaintiff's claims for conversion, trespass to chattels, and conspiracy began to accrue (June 2019 for trespass; December 2019 for conversion and conspiracy).

Mr. Schober is a citizen of Colorado whose 16.4552 bitcoins were remotely stolen from his computer in his home in Colorado. Mr. Schober's personal property was transferred from Colorado to a foreign jurisdiction after Defendants intentionally and indiscriminately engaged in tortious conduct in Colorado, by interfering with, and seizing control and possession of Mr. Schober's property, causing Mr. Schober to sustain his

---

[1] Defendants Benedict Thompson, Edward Thompson, and Claire Thompson (the "Thompson Defendants") filed a Motion for Summary Judgment. Defendant Oliver Read and Defendant Hazel Davina Wells apparently seek summary judgment on the same affirmative defenses.

injuries in Colorado. Even after Defendants knew their conduct had adversely affected and caused harms to Mr. Schober, Defendants intentionally continued to withhold, and have apparently destroyed, or hidden, Mr. Schober's bitcoins.

Contrary to Defendants' position, Plaintiff's claims did not begin accruing until he knew that an identifiable person (a legally-recognized entity; not merely malicious software) had interfered with his bitcoins.

The Defendants' MSJ asks that this Court hold that computer hackers who indiscriminately damaged a computer in Colorado, and intentionally stole valuable personal property from an individual Coloradan, are *not* subject to jurisdiction in Colorado, and are, instead, subject apparently only to the jurisdiction of the courts where the hackers (Defendants) used the internet to commit their tortious acts. On the issue of claim accrual, Defendants MSJ argues that the Malware—not Defendants—were the legal cause of Plaintiff's injuries. Defendants MSJ mischaracterizes or misapplies the term "cause," evidently in service of their untenable position that Plaintiff's claims began accruing when Plaintiff discovered that inanimate computer code (the "Malware") had infected his computer and misdirected his attempts to transfer his bitcoins.

As matters of law: **(1)** Defendants—not the Malware—are the "cause" of Plaintiff's injuries; and prior to December 2019, Plaintiff did not know, nor could he have known, that his bitcoins were transferred, received, and retained by any identifiable person; and **(2)** Defendants established minimum contacts with this forum when they stole Mr. Schober's personal property from Colorado; this Court's exercise of personal jurisdiction over Defendants not only comports with traditional notions of fair play and substantial justice, it is necessary to prevent injustice.

II.     **UNDISPUTED MATERIAL FACTS RELEVANT TO THIS CROSS-MOTION**

1. The Complaint in this action was filed on May 21, 2021 (See ECF Doc. #1).

2. On January 29, 2018, Plaintiff's bitcoins were stolen by the Malware. (See ECF Doc. #79, Plaintiff's Partial Motion for Summary Judgment, "Exhibit C" at *SCHOBER_002927*).

3. "Between January 1, 2016 and September 12, 2022, Benedict controlled the Bitcoin wallet with the public key hash, "1BeNEdictBLbmVJ9LXkSwqiyWWf36XKTD1" (the "Vanity Address"). Exhibit F – Benedict Resp. to RFA No. 1, Set #1." Id. at ¶ 3.

4. "On February 8, 2018, Mr. Schober contacted the FBI Public Access Line Unit to report that a computer intrusion, which he stated he suspected was caused by "the Malware" resulted in his loss of 16.4552 bitcoins. (See Ex. 'A,' Plaintiff's Responses to Second Set of Written Discovery, Request for Admission #2 at page 6, ¶21; See also, Ex. 'B,' Selected Document Production, SCHOBER_002919, paragraph titled 'Complaint Details')." ECF Doc. #78 (Thompson Defendants' Motion for Summary Judgment), ECF Doc. #78, at ¶ 2.

5. On February 25, 2018, a Bitcoin address embedded in the Malware sent Plaintiff's 16.4552 bitcoins to a Bitcoin address ("3CW")[2], hosted by Bitfinex and associated with an account with the username "thp2pk" and the IP address "86.158.130.34." Id. at ¶ 21 (with citations to Exhibits).

6. Documents produced by the FBI, obtained from Bitfinex, show that the Bitfinex user with the alias "thp2pk" controlled the "44n"[3] Monero address and the 3CW

---

[2] 3CWQ5d2XgCrYuz7F3g4fmhd6VQMv4iPio7.
[3] 44nUbfxaFUC42KHPm4sSy4KLVeGsHjcgHVJw1qDBpx6EZvqN9iyCpZL6ajMV.

Bitcoin address, and the same Bitfinex user logged onto the Bitfinex platform from a device in Southampton, United Kingdom. Id. at ¶ 28 (see cited documents).

7. On June 22, 2018 the FBI returned Mr. Schober's Computer to him. Id. at ¶ 23.

8. On June 5, 2019, Plaintiff informed the FBI that he suspected Benedict might be involved with the Malware. Plaintiff subsequently discovered a transaction between an address embedded in the Malware (1Jr)[4] and the Vanity Address. Id. at ¶ 25.

9. "In or about April 2020, the FBI (unable to identify a suspect, or tie any person's identity to the unlawful cryptocurrency transactions and data collected from Plaintiff's Computer, and other sources) officially closed its investigation. Ex. C – SCHOBER_001566 – 001569." Id. at ¶ 24.

10. "During the relevant period, Defendant Benedict Thompson ("Benedict") was under eighteen years of age and living with his parents, Defendants Edward Thompson and Claire Thompson, in Southampton, United Kingdom. [Doc. 35] Thompson Answer ¶ 47. Benedict began trading cryptocurrencies in 2014. See Exhibit E – (Bates) Thompson000292. In 2014, Benedict encouraged Edward to buy cryptocurrencies, and Edward did so. Id." Id. at ¶ 2.

11. In December 2019, Plaintiff contacted the Thompson Defendants and requested that they return his Bitcoin, Thompson Answer ¶ 51 [Doc. 35]; the Thompson Defendants did not respond, id. at 52.

12. "In or around March 2021, an FBI created report ('the March 2021 Report') stating that a 'reliable FBI source' provided information for the alias, 'JamesandJohn.' Ex.

---

[4] 1JrT4DePAThEHarvEiYyRu2x2anhMCsoPr.

4

A – *SCHOBER_003042* – 003043. The FBI has also produced documents, obtained from Bitfinex, showing that the Bitfinex user with the alias 'thp2pk' controlled the '44n' [footnote omitted; fn content: 1JrT4DePAThEHarvEiYyRu2x2anhMCsoPr]. Monero address and the 3CW Bitcoin address, and the Bitfinex user logged onto the Bitfinex platform from Southampton, U.K. Ex. B – *SCHOBER_003039 – 003041*." Id at ¶ 28.

### III.   STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c).

### IV.   ARGUMENT

When a United States citizen has been victimized in the U.S. by a cyber-attack and digital theft carried out by citizens of a foreign nation who are otherwise complete strangers to the victim, courts in the United States may hear the victim's claims brought under U.S. law against the foreign citizens. Under Colorado law, the statute of limitations is three years for Plaintiff's conversion, trespass to chattels, and derivative conspiracy claims, which involve internet-based interference with digital assets (bitcoins). Under federal law, the statute of limitations for Plaintiff's claims began running when he knew the facts essential to form the basis of this action, including facts that, at the very least, suggested there was a reasonable possibility of identifying a tortfeasor.

Defendants acknowledge that "Mr. Schober did, in fact, determine the identities of the Defendants in this action," ECF No. 78 at p. 14; but, Defendants still seem to ignore that Mr. Schober identified the Defendants precisely because, and not independent of the fact Defendants are involved in this matter. By pure happenstance, it was Benedict—not

5

some other person in Moscow, Russia or Pyongyang, North Korea—who remotely pickpocketed Mr. Schober. Had Benedict never stolen Mr. Schober's bitcoins, Mr. Schober would have been perfectly content living the rest of his life never knowing Defendants exist. Plaintiff did not pull Defendants' names randomly out of a hat.

Only after extensive and extraordinary due diligence and unrelenting dedication, in spite of Defendants' formidable efforts to conceal their identities, their illicit activities, and the source of their stolen funds, in June 2019, Plaintiff uncovered facts connecting the Malware to the Bitcoin address 1BeNEdictBLbmVJ9LXkSwqiyWWf36XKTD1 (the "Vanity Address"). This connection was Mr. Schober's first indication that a person or entity named "Benedict," somewhere in the world, likely controlled the Malware and unlawfully took possession of his bitcoins. Mr. Schober eventually discovered that the Vanity Address belongs to Defendant Benedict Thompson ("Benedict"), and although Mr. Schober reported this connection to the FBI immediately, it was not until nearly two years later, in March 2021, that the FBI drafted an internal report (which Plaintiff only uncovered in this litigation pursuant to Plaintiff's *Touhy* request) explicitly identifying Benedict as a suspect in a joint operation between United States and United Kingdom law enforcement agencies, concerning suspected computer hacking and money laundering activities.

### A.  A Three-Year Statute Of Limitations Applies

Defendants previously argued that a three-year statute of limitations applies. ECF No. 11 (Thompson Defendants' Motion to Dismiss), at p. 4 ('The statute of limitations for the common law causes of action is three years. See C.R.S. § 13-80-101(1)(h) (stating a three-year statute of limitations applies for "all actions of replevin or for taking, detaining, or converting goods or chattels'").

6

A three-year limitations period makes sense because Defendants concealed their identities (using various obscure email addresses and usernames, anonymous accounts, and proxy networks), deleted electronic records (social media accounts and posts), disguised the Malware in a trojan horse (the "electrum" software), and laundered Plaintiff's stolen bitcoins (using a privacy-focused cryptocurrency called Monero, and sending funds between one another).

To the extent a different limitations period applies, the unique facts of this case suggest the period should be longer, not shorter. The facts here are more akin to cases concerning stolen artworks[5], or harms caused by pollutants, than they are to most precedent concerning online activity. Plaintiff did not know, nor could he have known the cause or the extent of his injuries, until Plaintiff identified the person who utilized the Malware (the source of the theft). A three-year limitations period should be applied.

Defendants bear the burden of proving when Plaintiff's claims accrued. *Focke*, 2021 WL 3828714, at *5 (citing *Crosby*, 251 P.3d at 1283).

### 1.  *The Malware Was Not The "Cause" Of Plaintiff's Injuries*

"Whether the statute of limitations bars a particular claim is usually a fact question," however, the issue may be decided as a matter of law "if the undisputed facts clearly show that a plaintiff discovered, or reasonably should have discovered, the injury and its cause as of a particular date." *Bad Boys of Cripple Creek Min. Co. v. City of Cripple Creek*, 996 P.2d 792, 796 (Colo. App. 2000) (citing *Mastro v. Brodie*, 682 P.2d 1162 (Colo.1984),

---

[5] See *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 933-34 (1994) ("the Court concludes that as long as the plaintiff is duly diligent, the inability to discover the possessor of the stolen mosaics invokes the doctrine of fraudulent concealment and tolls the running of the statute of limitations for replevin purposes. . . . While acknowledging that the filing of a Doe complaint might have extended the time available to learn the identity of the defendant, it did not, in the Wisconsin court's view, "weaken the public policy favoring the adoption of the discovery rule in this case.") (citations omitted).

and *Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152 (Colo.App.1995)).

Mr. Schober's claims began accruing when **(a)** in June 2019, he knew that a person (a tortfeasor; but not necessarily the tortfeasor's identity) interfered with his possession of his computer and his bitcoins, and when **(b)** in December 2019, Plaintiff knew where, or at least how, to identify Benedict and his parents that Plaintiff could to demand they return his bitcoins.

Defendants MSJ mischaracterizes Plaintiff's argument on the issue of claim accrual—Plaintiff's position is *not* that Plaintiff's claims began accruing when he learned the identities of Defendants. Instead, Plaintiff's position is that his trespass claims began accruing no earlier than June 2019, after he discovered a connection between his stolen assets and a likely tortfeasor named "Benedict" in control of the Vanity Address; and Plaintiff's conversion and conspiracy claims began accruing no earlier than December 2019, after the Thompson Defendants refused his demand to return his bitcoins.

Defendants argue that the "cause" of Plaintiff's injuries was the Malware; but for the same reason a person harmed by toxic pollutants cannot sue the pollutants themselves and must, therefore, identify the source of the pollutants[6], Mr. Schober's loss of his bitcoins did not give rise to his claims until he first traced the Malware (by analogy, the pollutant) to an identifiable source (the Vanity Address), or an identifiable location. *Accord, e.g.*, *Bailey v. Corr. Servs. Corp.*, No. 00-0005 JP/DJS, 2000 U.S. Dist. LEXIS 24279, at *12-13 (D.N.M. June 21, 2000) ("Allegations and determinations as to

---

[6] Compare *Bryer v. ConocoPhillips, Co.,* 725 F. App'x 645, 650 (10th Cir. 2018) ("For a cause of action, Mr. Bryer also needed to know that the refinery [ConocoPhillips] had been the likely source of the benzene.") (citing *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985), with *Silver v. Brown*, 382 F. App'x 723, 732 (10th Cir. 2010).

citizenship which appear illusory, requiring mere guesswork, must be dismissed.") (citing *Molnar v. Nat'l Broad. Co.*, 231 F.2d 684, 686 (9th. Cir. 1956); *Salzstein v. Bekins Lines, Inc.*, 747 F. Supp. 1281, 1283 (N.D. Ill. 1990); *Eckert v. Lane*, 678 F. Supp. 773, 775 (W.D. Ark. 1988).

Although federal courts are split on the issue of whether John Does are permitted in diversity cases originally filed in federal court,[7] even had Plaintiff sued John Does, Plaintiff could not possibly have become reasonably certain of Defendants' identities until June 2019, which is still two years before even the FBI internally reported Benedict's connection to the Malware and theft of Plaintiff's bitcoins. Individual citizens, like Mr. Schober, who have no superior access to knowledge and information, cannot reasonably be expected to learn facts before the FBI's Cyber-Crimes Division learns those facts. Plaintiff only reached his conclusion as to Benedict's identity after devoting incredible, and far beyond reasonable amounts of time and efforts to finding Defendants who tried not be found.

Though Mr. Schober filed a criminal complaint referring to his bitcoins as "stolen," the facts plainly show that, at that time (February 2018), Mr. Schober did not know, nor could he have known, the material facts essential to support his conversion, trespass, or derivative conspiracy claims, even against John Does, let alone against Defendants. Plaintiff had been lulled into inadvertently downloading the Malware himself; thus, he had no way of knowing, until 2019, whether someone (or something) had received, interfered

---

[7] Compare *Howell*, 106 F.3d at 218 (no), with *Macheras v. Ctr. Art Galleries-Hawaii, Inc.*, 776 F. Supp. 1436, 1440 (D. Haw. 1991) (yes), and *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 426 n.10 (1st Cir. 2007) (declining to directly address this issue).

with, or was intentionally withholding his bitcoins, nor had he any way of knowing how, or if it was even possible to demand the return of his bitcoins.

### B. Complaint Filed Less Than Three Years After Claims Began To Accrue

Under federal law, the statute of limitations begins running once "the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus.,* 15 F.3d at 969 (emphasis added). Similarly, under Colorado law, a claim begins to accrue on the day when both the injury and its cause became known or should have been knowable to Plaintiff by the exercise of reasonable diligence. See *Mastro v. Brodie*, 682 P.2d 1162, 1168 (Colo. 1984) ("[T]he statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury *was caused by the wrongful conduct of another*.") (emphasis added); see also, CO Rev Stat § 13-80-118 (2022) ("If, when a cause of action accrues against a person, *the person is out of this state and not subject to service of process or has concealed himself*, the period limited for the commencement of the action by *any statute of limitations shall not begin to run until he comes into this state or while he is so concealed.*") (emphasis added).

#### 2. *Trespass To Chattels Claims Began Accruing In June 2019*

The Tenth Circuit has had few opportunities to address property rights theories involving digital data. See *United States v. Sporn*, No. 21-10016-EFM, 2022 U.S. Dist. LEXIS 39070 (D. Kan. Mar. 4, 2022), at *27-28, ("none [of the cases cited by the court] address a claim of trespass [brought] by a person posting electronic messages.") However, at least two cases in this Circuit, *Sporn* and *Ackerman*[8], have recognized that

---

[8] *United States v. Ackerman*, 831 F.3d 1292, 1307-08 (10th Cir. 2016).

"possessory interests" exist in digital chattels. In both cases, the courts cite positively (or at least neutrally) to *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996).[9]

Notwithstanding whether Mr. Schober's trespass to chattels claims present any matters of first impression in Colorado or in this Circuit, Mr. Schober did not know material facts essential to support his claims until at least June 4, 2019. On June 5, 2019, Mr. Schober informed the FBI that he suspected Benedict Thompson might have used the Malware to steal Plaintiff's bitcoins; accordingly, Mr. Schober requested that the FBI investigate Benedict as a potential suspect in the FBI's criminal investigation.

In discovery, the FBI produced documents that it had obtained from Bitfinex, which show the Bitfinex user with the alias "thp2pk" controlled two cryptocurrency addresses (the "44n"[10] Monero address and the "3CW"[11] Bitcoin address) involved in the theft of Plaintiff's bitcoins, and that the same Bitfinex user logged on to the Bitfinex platform using an IP address connected to the British Telecommunications' service network in Southampton, United Kingdom. This information obtained from Bitfinex was alone, not sufficient to identify a suspect. The FBI's report, dated March 6, 2021 (see ECF No. 79, Plaintiff's Motion for Summary Judgment, at "Exhibit A"), however, reveals that, at some point between February 2018 and March 2021, Plaintiff, Bitfinex, and at least one other "reliable FBI source" provided additional information, including information for the alias,

---

[9] In *Thrifty-Tel*, the California Court of Appeals decided, as a matter of first impression, that intangible computer access codes, comprising of only electronic signals, were sufficiently tangible to support causes of action arising from personal property damage. ("Whether the intangible computer access code, which was never reduced to paper or reflected on a computer disk . . . could be the subjects of conversion . . . is an issue of first impression in California--and apparently most everywhere else as well. [citations omitted]") *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565-66 (1996).
[10] 44nUbfxaFUC42KHPm4sSy4KLVeGsHjcgHVJw1qDBpx6EZvqN9iyCpZL6ajMV.
[11] 3CWQ5d2XgCrYuz7F3g4fmhd6VQMv4iPio7.

"JamesandJohn." The information indicates Benedict used both the "thp2pk" alias and the "JamesandJohn" alias.

In allowing Mr. Schober's remaining tort claims to proceed, the Court's dismissal of Plaintiff's CFAA claims highlights the relevant distinction between the facts essential to plead trespass to chattels (and conversion) claims, as opposed to CFAA claims. These distinctions are relevant to when a claim accrues. The CFAA requires only that Plaintiff knew he was injured by the Malware (*i.e.*, that the Malware dispossessed him of his digital property). Conversely, Mr. Schober's tort claims require, not just that he know he was injured, but that he know the extent of his injuries (*i.e.*, whether his property is recoverable), and the "cause of his injuries" (*i.e.*, that a person, not just the Malware, stole his bitcoins). While Plaintiff may have been able to sue John Does for CFAA violations in February 2018 upon learning his computer had become infected with Malware, the earliest Plaintiff could have sued John Does for his tort claims was June 2019, when Plaintiff first determined identifying the responsible tortfeasors might be possible. The only reason identifying Defendants was not impossible was because Benedict made one mistake: he transacted with the Malware using a Bitcoin address with his name in it, which he had posted on numerous online sites, and publicly claimed belonged to him.

Plaintiff did not know and could not have reasonably known the cause of his injuries until he discovered Benedict's exposed Vanity Address, in June 2019.

### 3.  *Conversion Claims Began Accruing In December 2019*

"Predicates to a successful claim for conversion are the owner's demand for the return of the property, and the controlling party's refusal to return it." *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 762 (D. Colo. 2007) (citations omitted).

12

In December 2019, Plaintiff contacted the Thompson Defendants and requested that they return his bitcoins. *Thompson Answer* ¶ 51 [ECF No. 35]. Within a reasonable time period thereafter, the Thompson Defendants did not respond. *Id.* at ¶ 52.

Plaintiff's conversion claims began to accrue, at the earliest, in December 2019, when Plaintiff demanded the return of his bitcoins from the Thompson Defendants.

### 4. *Conspiracy Claims Began Accruing In December 2019*

Civil conspiracy is a derivative cause of action, therefore Plaintiff's conspiracy claims began accruing in December 2019. *See Double Oak Cons tr., L.L. C. v. Cornerstone Development Intern., L.L.C.,* 97 P.3d 140, 146 (Colo.App. 2003), *cert. denied* 03SC746, 2004 WL 1813933 (Colo. Aug. 16, 2004).

### 5. *Equitable Tolling*

Through the exercise of reasonable diligence, it was not possible for Plaintiff to identify who, or at least where the Defendants were located, prior to June 2019. Therefore, tolling of the statute of limitations would be equitable, if necessary.

The doctrine of equitable tolling "permits courts to extend statutes of limitations on a case-by-case basis in order to prevent inequity." *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012) (citations omitted). The standard applied by the Tenth Circuit for equitable tolling requires that Plaintiff show that his ignorance of the facts giving rise to his claims was not the result of his lack of diligence, but was due to affirmative acts or active deception by Defendants to conceal those facts. *See Johnson v. U.S. Postal Serv.,* 861 F.2d 1475, 1481 (10th Cir. 1988), *cert. denied,* 493 U.S. 811, 107 L. Ed. 2d 23, 110 S. Ct. 54 (1989).

Prior to January 2018, Plaintiff had never heard of the "clipboard-hijacking" malware. The Malware, which Benedict utilized, was embedded within a phony "electrum" brand software Trojan Horse program; it clandestinely installed itself and secretly monitored Mr. Schober's computer, even after Mr. Schober had deleted the decoy "electrum" program from his computer. Moreover, in transferring Mr. Schober's bitcoins from the Malware, Benedict used an obscure email address and "throwaway" account, not tied to his identity, for the purpose of concealing his identity. Defendants also laundered their stolen Bitcoins using Monero, and by making transactions between them. These actions constitute active deception aimed at concealing facts from Mr. Schober.

Courts should apply the tolling doctrine when, as here, Defendants' conduct "rises to the level of active deception, where a plaintiff has been lulled into inaction by a defendant, or 'likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights.'" *U.S. v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (quoting *Biester v. Midwest Health Servs., Inc*, 77 F.3d 1264, 1267 (10th Cir. 1996)).

In Colorado, a statute of limitations may be equitably tolled "where the defendant attempts to avoid service by placing himself beyond the power of the jurisdiction to compel attendance, see § 13–80–118, C.R.S. (2014), or where "the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Malm v. Villegas*, 342 P.3d 422, 426 (Colo. 2005) (quoting *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 149 (Colo.2007)).

### C. Defendants Established Minimum Contacts With Colorado By Refusing To Return Plaintiff's Property

Under Colorado's long arm statute, a person is subject to the jurisdiction of the courts of Colorado, "concerning any cause of action arising from the commission of a tortious act within [the] state." *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1060 (10th Cir. 2008). To satisfy the long arm statute, there must be a showing that the tortious action occurred within the state and that the exercise of jurisdiction over the defendant comports with due process. *Id.* Jurisdiction over a nonresident tortfeasor requires that the injury itself occur in Colorado, even if the negligent act occurs in another state. *McAvoy v. District Court*, 757 P.2d 633 (Colo. 1988); *Sports Sci.*, 514 F.3d at 1054.

Once minimum contacts have been established, a court must determine whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *Encore Prods.*, 53 F. Supp. 2d at 1118.

#### 1. *Defendants Knew Their Conduct Was Aimed At Plaintiff When Plaintiff Demanded The Return of His Bitcoins*

Defendants have not presented a single fact showing the tortious conduct alleged by Plaintiff took place outside of Colorado, nor could they. See ECF No. 78 at p. 16 ("The Thompsons deny having any involvement in this matter whatsoever, and specifically deny being involved with development of the Electrum Atom malware [the "Malware"] or its implementation . . . ."). There is no doubt the tortious conduct took place in Colorado, and there is no doubt Benedict is responsible for receiving Plaintiff's stolen bitcoins[12]. But even had the tortious conduct took place in England, the result would be the same, in

---

[12] See ECF No. 79, Plaintiff's Motion for Partial Summary Judgment.

15

favor of this Court's exercise of specific jurisdiction over Defendants, because the Defendants' tortious conduct caused injury in Colorado.

In *Sports Sci.*, the alleged tortious conduct took place in England, *Sports Sci.*, 514 F.3d at 1060, and initially, the district court declined to exercise personal jurisdiction because the tortious conduct did not take place in Colorado. The Tenth Circuit reversed. Holding that, even where the tortious conduct took place in England, the district court had jurisdiction because "[t]he threshold jurisdictional requirement is established when it is demonstrated . . . 'that tortious conduct in another state ultimately caused injury in Colorado and that requiring a defense to the tort action in this state would be consistent with the due process of law.'" *Id.* (quoting *Fleet Leasing, Inc. v. District Court*, 649 P.2d 1074, 1078 (Colo. 1982)). See also, *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1166-67 (D. Colo. 2016).

In *Silver v. Brown*, 382 F. App'x 723, 732 (10th Cir. 2010), the Tenth Circuit determined that "the damage [caused by libel posted on a web forum] is done when a person searching the internet for information about Mr. Silver runs across Mr. Brown's blog. *Cf. Keeton,* 465 U.S. at 777 ('The tort of libel is generally held to occur wherever the offending material is circulated.')." To be clear, simply posting information to the internet does not subject the poster to personal jurisdiction in every state where the "electronic signal is transmitted and received"; the defendants must have "manifested intent of engaging business or other interactions in the State." *Sebo Am., LLC v. Azar*, Civil Action No. 20-cv-03015-NYW, 2021 U.S. Dist. LEXIS 34245, at *11-12 (D. Colo. Feb. 24, 2021) (quoting *ALS Scan,* 293 F.3d at 714).

16

Defendants manifested their intent to permanently deprive Plaintiff of his 16.4552 bitcoins when **(a)** Benedict used the Malware to transfer Plaintiff's bitcoins from the Malware (in Colorado) to Benedict's own Bitcoin wallet; and when **(b)** the Thompson Defendants refused to return Mr. Schober's bitcoins to him, after Mr. Schober had informed the Thompson Defendants that Benedict had stolen his bitcoins and demanded their return. Plaintiff's position is consistent with *Relaximals, Inc. v. Brentwood Originals, Inc.*, Civil Action No. 19-cv-02721-MEH, 2020 U.S. Dist. LEXIS 55783 (D. Colo. Mar. 31, 2020), where the court found the plaintiff had "established purposeful direction toward or availment of the forum" where the defendant continued to post materials online after plaintiff had warned the defendant it was infringing on the plaintiff's intellectual property rights.[13]

Additionally, many other courts have found that, where the defendant has purposefully directed its actions toward one or more residents of the forum state, the defendant's amenability to personal jurisdiction in the forum is not changed by the fact that the defendant used the internet, and thus was not physically present in the forum state, to commit the intentional tort. See, *e.g.*, *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (out-of-state defendant subject to jurisdiction where he deliberately infringed a forum-state resident's trademark subject); *Tamburo v. Dworkin*, 601 F.3d 693, 707 (7th Cir. 2010) ("Even if a website is passive or informational, if it is

---

[13] Id. at *23-24. "[C]oncerning Colorado-specific conduct, we have the *Shrader* and *Silver* cases placing importance on manipulation of the Internet to direct searches for a forum plaintiff's presence to the defendant's own benefit. In this case, we have an allegation of Defendant continuing its utilization of the Colorado market even after it was warned by Plaintiff of its Infringing Products and their purported violation of the Copyrighted Collection which is unlike the defendant in *Shrader* avoiding contact with the plaintiff's forum."

used to commit an intentional tort expressly aimed at a forum in which defendant knows the brunt of the injury is to be suffered, specific jurisdiction can be found.").[14]

Minimum contacts have been established.

### 2. Traditional Notions Of Fair Play And Substantial Justice Support This Court's Exercise of Specific Jurisdiction

The considerations of "fair play and substantial justice" require the Court to consider: **(1)** the burden on the defendant; **(2)** the forum state's interest in resolving the dispute; **(3)** the plaintiff's interest in receiving convenient and effective relief; **(4)** the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and **(5)** the shared interest of several state in furthering fundamental social policies. *Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006); *OMI Holdings*, 149 F.3d at 1086; see *Asahi*, 480 U.S. at 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92. All five factors weigh in favor of this Court's exercise of personal jurisdiction over Defendants.

*First*, the burden on Defendants is no higher than Mr. Schober's burden if he were required to litigate in England. *Second*, the forum has an unparalleled interest in resolving claims related to cyber-attacks and bitcoin theft, especially because Colorado accepts bitcoin for tax payments.[15] *Third*, Plaintiff would not be able to obtain convenient relief by refiling this case all over again in the U.K., and this Court can provide effective relief. *Fourth*, the U.S. and U.K. have a compelling joint interest in preventing the spread of

---

[14] See also, *Microsoft Corp. v. Does*, No. 1:20-cv-01171 (AJT/IDD), 2021 U.S. Dist. LEXIS 258143, at *3-4 (E.D. Va. Aug. 12, 2021) ("In the context of online activity, it is consistent with due process for a state to 'exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.'") (citing *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).
[15] See, Colorado Dept. of Revenue, *Crypto Currency Now Accepted For All State Tax Payments*, https://tax.colorado.gov/cryptocurrency (accessed June 20, 2023).

Malware, digital online theft, and money laundering.[16] *Fifth*, refiling this action in an English court would be inefficient, as this action is already at the dispositive motion stage.

## V. CONCLUSION

WHEREFORE, Plaintiff Andrew Schober respectfully requests that this Court deny the Defendants' Motion for Summary Judgment, and grant Plaintiff's Cross-Motion for Summary Judgment and Plaintiff's Motion Partial Summary Judgment.

DATED this 20th day of June 2023.

        **THE LAW OFFICE OF ETHAN MORA**

        /s/ Ethan E. Mora
        Ethan E. Mora, Esq.
        1040 E. Herndon Ave., Suite 103
        Fresno, CA 93720
        (559) 370-1485
        ethanmoralaw@pm.me
        *Attorney for Plaintiff Andrew Schober*

---

[16] See, U.K. Ministry of Defence and Strategic Command, *Collaborating with U.S. on Cyber*, https://www.gov.uk/government/news/collaborating-with-us-on-cyber (accessed June 20, 2023).

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. As such, this document was served on all counsel of record. I also served the *pro se* Defendants via email at the following addresses:

Oliver Read

        Oliverread2001@gmail.com

Hazel Wells

        Hazelwells44@gmail.com

Paul Read

        Paulread66@aol.co.uk

**THE LAW OFFICE OF ETHAN MORA**

  *Ethan Mora*
Ethan Mora