IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01382-GPG-NRN

ANDREW SCHOBER,

        Plaintiff,

v.

BENEDICT THOMPSON, OLIVER READ,
EDWARD J. THOMPSON, CLAIRE
L. THOMPSON, PAUL READ, and HAZEL
DAVINA WELLS,

        Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 79]**

## I. INTRODUCTION

No genuine issue of material fact remains as to whether the Thompson Defendants are liable for the Conversion and Trespass to Chattels claims alleged by Mr. Schober.

## II. REPLY TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

1. Undisputed.

2. The material facts are: (1) "Benedict was under the age of eighteen and living with his parents Edward and Claire Thompson in Southampton, United Kingdom" at the time of the events; (2) Benedict "has been following cryptocurrencies closely" since 2014; and (3) Benedict encouraged Edward to buy cryptocurrencies in 2014.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6.  See Bitcointalk.org, Forum Post – "Electrum Gold Release!," *available at*, [link in footnote][1], (posted November 17, 2017).

7.  How the Malware works has never been in dispute. See Copy of Malware, *available at* [link in footnote][2].

8.  There were 195,000 Bitcoin addresses, four of which had transaction histories (1Pp, AQ, 1Jr, and 1CZ). See id. This is not a genuine dispute.

9.  The transactions involving 1Jr are relevant because they substantiate a connection between a pattern of behavior among the Bitcoin addresses embedded in the Malware, and the email address and username used by Benedict. The 1CZ address received Plaintiff's bitcoins, and was also embedded in the Malware. See ([Doc. 79 - 2] – *FBI Records* (SCHOBER_003039 – 003040) (3CW address and 44n address were controlled by the same Bitfinex user); Ex. A – *Shapeshift Records*, (44n address transacted with the Vanity Address).

10. Transactions involving 1Jr are relevant because they substantiate a connection between Benedict and a pattern of behavior. See Ex. A (1Jr transaction with Monero); [Doc. 79 - 1] – "*March 2021 Report*" (SCHOBER_003042 – 003043) (1Gq transaction with Monero); [Doc. 79 - 2] – (3CW transaction with Monero); and Ex. A (Vanity Address transaction with Monero).

11. Undisputed. (Benedict used the "annaadmams12@gmail" email address.)

12. Undisputed.

13. Undisputed.

---

[1] Web address: *https://bitcointalk.org/index.php?action=profile;u=1306048;sa=showPosts*
[2] Web address [copy of the Malware]:
*https://hybrid-analysis[.com]/sample/e0d5e662bb29b62dc06e8c1c5ed07beb282ee6bb61b1fba4fb9393dd3cac4645?environmentId =100* .

14. The transaction referenced in SCHOBER_000026 can be independently verified by anyone, anywhere, anytime, by using the internet to access a blockchain explorer. See, Bitcoin Blockchain (Blockchair.com Explorer), "**1Jr Bitcoin Address**," *available at* [link in footnote][3].

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. The Thompson Defendants had plenty of time to analyze the Malware.

19. Undisputed.

20. Undisputed.

21. The FBI records show "thp2pk" controlled the 3CW address and the 44n address. [Doc. 79 – 2] The transactions from the "1CZ" to "3CW" addresses are publicly-verifiable on the Bitcoin blockchain. See Blockchair.com, "**3CW Bitcoin Address**," *available at* [link in footnote][4].

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. The Vanity Address (Benedict), transacted with the exact Monero 44n address that received Plaintiff's stolen bitcoins. One Shapeshift customer provided the 44n address, and the Vanity Address, as the destination address and backup destination addresses, respectively, in a transaction that Shapeshift facilitated. (Ex. A, *Shapeshift Records*, at 2.)

26. Undisputed.

27. Undisputed.

28. The documents are admissible and speak for themselves.

---

[3] Web address: *https://blockchair.com/bitcoin/address/1JrT4DePAThEHarvEiYyRu2x2anhMCsoPr*.
[4] Web address: *https://blockchair.com/bitcoin/address/3CWQ5d2XgCrYuz7F3g4fmhd6VQMv4iPio7*.

### III. RESPONSE CONCERNING DEFENDANTS' ADDITIONAL DISPUTED FACTS

1. Objection. Misstates evidence. The email does not show that Plaintiff could not designate or obtain testimony from experts; only that none have been designated.

2. Objection. Lacks foundation; Hearsay—Defendants make a claim about the capabilities of the U.S. Department of Homeland Security (and the rest of the world), supported only by a "CipherTrace" (not government-issued) press release. The Parties would seem to agree, however, that U.S. law enforcement agencies, like the FBI and DHS, are credible benchmarks for assessing capabilities, and what is "possible," with cyber-tort investigations.

3. Admitted. The U.K. authorities may have ignored key forms of "evidence."

4. Admitted. U.K. Law Enforcement began their investigation about a year too late.

5. Admitted.

6. Admitted.

7. Denied. When asked to describe his relationship with "Henry Burchill," Benedict described him only as "Friend from school." [Doc. 79 – 8] (*Benedict Resp. to Interrog. No. 6, Set #3*). When asked to produce documents that support why "Henry Burchill" is listed in his Initial Disclosures, Benedict stated he "does not have any responsive documents to this request." [Doc. 79 – 8] (*Benedict Resp. to RFP No. 3, Set #3*). Also, contrary to Defendants' assertions, Plaintiff did investigate "Henry Burchill," of Southampton. (*See also*, Ex. B, *Email from Carl Hjort to Ethan Mora, "No Expert Witnesses to Designate,"* dated April 10, 2023.)

### IV. ARGUMENT

#### A. Every Element Of Plaintiff's Conversion And Trespass Claims Is Met

*First*, Plaintiff owned the property (his computer, private keys, 16.4552 bitcoins) at issue in this matter. This is an undisputed fact. ([Doc. 82], at p. 3, ¶ 1). *Second*, Benedict is "thp2pk."

4

"Thp2pk" used the Malware to interfere with Plaintiff's property. Because Benedict denies he is "thp2pk," Benedict's identity is further addressed in the section below. *Third*, the parties do not dispute that Mr. Schober did not authorize the Defendants to interfere with his property. [Doc. 79 – 6], *Benedict Resp. to RFA Nos. 3, 4, 6, Set #1*. With respect to Plaintiff's conversion claims, the parties do not dispute that the *fourth* and *fifth* elements ("demand and refusal") are, or would (upon proof of Benedict's identity) be met. ([Doc. 82], at p. 7, ¶ 26). Only one aspect of the second element of Plaintiff's conversion and trespass to chattels claims—Defendants' identity—is at issue.

For reasons below, each element of Plaintiff's conversion and trespass claims is met.

### B. Benedict is "thp2pk" – Element Two Of Plaintiff's Tort Claims Is Satisfied

The facts show: **(a)** Benedict and "thp2pk" used nearly-identical IP addresses, issued by British Telecom, in Southampton, and both Benedict and "thp2pk" are connected to the 44n address—Benedict is "thp2pk"; **(b)** both Benedict and "JamesandJohn" used the same email address, and Benedict has publicly commented referencing that exact name, "JamesandJohn"—Benedict is "JamesandJohn"; and **(c)** "thp2pk" and "JamesandJohn" received bitcoins from addresses embedded in the Malware—which connects Benedict to the Malware.

### 1. Inherent Problems In Identifying Minor-Defendants

The Thompson Defendants have stated that "it would be a simple matter for [Mr. Schober] to have served a subpoena on British Telecom to identify the customer associated with" the IP address (**86.158.130.34**) linked to the theft of Plaintiff's bitcoins. Subpoenaing a foreign telecom provider for personally identifiable information is not a simple matter; regardless, Benedict was a minor in 2018, so he was not old enough to be a British Telecom "subscriber." Accordingly, sending a subpoena to British Telecom surely would not have yielded any personally identifiable "subscriber" information connecting Benedict to any specific IP address. Establishing a connection

between a specific IP address (*e.g.*, **86.158.130.34**), a network provider (British Telecom), and a geographic place (Southampton) is not enough information to, thereby, identify a minor child.

In any event, Plaintiff does not merely present facts showing that a single IP address in Southampton is, alone, proof that Benedict is "thp2pk"; in addition to the similar IP addresses, Plaintiff presents objective facts linking Benedict directly to the Malware and the conversion of Plaintiff's bitcoins. That Benedict used IP addresses with the same first three octets as the IP address used by "thp2pk"—on multiple occasions (see [Doc. 79 - 5] – *Email from Bitfinex to Benedict,* Thompson000540 (**86.158.130.174**); and Ex. C – *PDF copies (selections) from records produced by (non-party) Github*, SCHOBER_003147 (**86.158.130.235**), SCHOBER_003167 (**86.158.130.100**), SCHOBER_003168 (**86.158.130.107**))—implies, but does not prove, that Benedict connected to the same WiFi network, or was in close geographic proximity to "thp2pk."

### 2. ShapeShift And Bitfinex Records Connect Benedict To The 44n Monero Address; BTC-XMR Transaction Link 1Jr Bitcoin Address To The Malware

According to Shapeshift's "Subpoena Key" (Ex. A, at p. 1), the "withdraw" (or "Output address") shown in the transactions is the "address ***provided by the customer*** for receiving the cryptocurrency withdrawal from their exchange." The "returnAddress" is the "address ***provided by the customer*** for receiving a refund of the deposited cryptocurrency if the trade were to fail." Id. at p. 2. The customer provides both addresses to Shapeshift.

The Shapeshift records show two transactions. In the first transaction, the "withdraw," or "Output address," is listed as the "46u address"[5]; and the "Return Address" is listed as the "1Jr address"[6]. Id. The 1Jr address is an address embedded in the Malware. See, *supra*, n.2. That the same Shapeshift user provided both the 46u address and the 1Jr address shows the person in control

---

[5] 46uKqypoMZFFURWJd1H8z5fFwrUHES2PgHUUQ7b4mSQW2LBCg67S3fqdZ4asfaRcHj115TMTepHyxT9zYCRJR9pkAuZnNEY
[6] 1JrT4DePAThEHarvEiYyRu2x2anhMCsoPr.

of the Malware (*i.e.*, the person able to transfer bitcoins from 1Jr address embedded in the Malware) is familiar with converting bitcoins (BTC) to Monero (XMR).

In the second transaction shown in the Shapeshfit records, the Vanity Address is listed as the "Output address," and the 44n address is listed as the "Return Address." Ex. A, at p. 2. Again, the same Shapeshift user provided both the 44n address, and the Vanity Address. This shows that the person who controlled the 44n address also controlled the Vanity Address. Benedict admits he controlled the Vanity Address ([Doc. 79 – 6] – *Benedict Response to RFA No. 1, Set #1*). Therefore, Benedict controlled the 44n Monero address. There is only one 44n address, and only the person who controls the 44n address can send cryptocurrency from that address.

The Bitfinex user, "thp2pk," who converted Plaintiff's 16.4552 bitcoins to Monero (XMR), sent the XMR (Plaintiff's converted bitcoins) to the 44n address. *See* [Doc. 79 – 2]. While Benedict claims he is not "thp2pk," objective facts contradict his version of the facts: both "thp2pk," and Benedict (with his Vanity Address), both used the 44n address. See id., and Ex. A. The only rational presumption, based on the facts, is that Benedict controlled the 44n address.

### 3. Obscure Email Address And Precise Comment About "JamesandJohn" Connect Benedict To A Pattern Of Suspicious Behavior Linked To Malware

Early in discovery, Plaintiff asked Benedict to list all email addresses and aliases he has used; on September 12, 2022, Benedict responded, listing neither "JamesandJohn," nor "annaadmams12@gmail.com." Further, even though Benedict posted a public GitHub comment, in which he explicitly suggested his computer's operating system was named "JamesandJohn," Benedict denies using the alias, "JamesandJohn" ([Doc. 79 - 8] – *Benedict Resp. to RFA No. 5, Set*

7

*#3*).[7] In December 2022, the FBI (a non-party) produced the *March 2021 Report* ([Doc. 79 - 1]), in response to Plaintiff's *Touhy* request, and for the first time, Plaintiff learned that Benedict is associated with the alias, "JamesandJohn" and the email address, "annaadmams12@gmail.com."[8] When Plaintiff confronted Defendants with the March 2021 Report, Benedict admitted to using the, "annaadmas12@gmail.com" address. *See* [Doc. 79 - 8] – *Benedict Resp. to RFA No. 13, Set #3*. Frustratingly, Benedict's Github comment referencing "JamesandJohn" was unrecognizable as a fact connecting Benedict to the Malware until Plaintiff learned of Benedict's link to "annaadmas12@gmail.com."

The FBI's March 2021 Report and Benedict's own public comment connect Benedict to "JamesandJohn"; and the Shapeshift and Bitfinex records directly connect Benedict to "thp2pk." Plaintiff is not asking the Thompson Defendants to "do the impossible: to prove a negative" (*i.e.*, that Benedict is not "thp2pk"). However, Benedict has had plenty of time to, for example, produce email records supporting Benedict's claim that multiple individuals, in addition to himself, used the "annaadmas12@gmail.com" address. The record remains devoid of facts showing anyone other than Benedict interacted with addresses embedded in the Malware.

Simply put: **(a)** Benedict is the only person who used a Bitcoin address *with his full first name in it*, to transact with *the exact Monero address* that received Plaintiff's converted bitcoins; and **(b)** one of Benedict's email addresses is *the exact email address* used by a Bitfinex user who received bitcoins from an address embedded in the Malware. Based on the transactions involving "JamesandJohn" and "thp2pk," the Vanity Address, and Malware addresses, as well as the nearly-

---

[7] Benedict also denies transacting with the 1Gq address ([Doc. 79 - 7] – *Benedict Response to RFA No. 1, Set # 2*.), which, according to the FBI, was used by the Bitfinex user, "JamesandJohn," to receive bitcoins from addresses embedded in the Malware ([Doc. 79 - 1] – FBI, *March 2021 Report*, SCHOBER_003042 – 003043).

[8] According to the FBI, "JamesandJohn" is an "aka" used by Benedict. [Doc. 79 -1]

identical IP addresses used by both Benedict and "thp2pk," no reasonable jury could conclude that "thp2pk" and "JamesandJohn" were controlled by anyone other than Benedict.

### C.  Parental Liability: U.K. Law Should Apply Because Duties Arose In U.K.

Where a plaintiff invokes a federal district court's diversity jurisdiction, the district court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. See *Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Colorado follows the Restatement (Second) of Conflict of Laws for tort actions. See *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014) ("the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under [the Restatement].'").

Here, the Court should apply English law—as to *only the parental liability issue*—because, unlike the underlying torts, which involve reaching into Colorado to interfere with Plaintiff's property, the duties and liability of Benedict's parents to Mr. Schober arose from their parental responsibilities in England. Therefore, applying English law to the parental liability issue[9] would not only be consistent with notions of fairness and international comity (by limiting direct imposition of American parental values abroad), according to the *lex loci delicti* principle (*i.e.*, that the law of the state where the tort occurred applies), application of English Law to this narrow issue would also be consistent with federal and state law.

As in the U.S., a person does not legally become an adult in the U.K. until their eighteenth birthday (see Family Law Reform Act 1969 s1 ("Reduction of age of majority from 21 to 18."))[10].

---

[9] Under Colorado law, C.R.S. § 13-21-107 states that the parents of a minor living at home can be liable if the minor maliciously, or willfully, damages, or destroys, property (real or personal) belonging to another.
[10] Family Law Reform Act 1969, available at Legislation.uk.gov: *https://www.legislation.gov.uk/ukpga/1969/46/section/1*

According to the U.K.'s Children Act 1989,[11] the civil culpability of minors is a requirement based on two factors: the child's age; and an objective standard of conduct. Parents are liable for their child's wrongdoing if the parent **(a)** has been personally negligent, or **(b)** can be shown to have vicarious liability.

A leading authority on parental liability in the law of England and Wales is Bebee v. Sales [1916] 32 TLR 413. See also, Newton v. Edgerley [1959] 1 W.L.R. 1031; Ingram v. Lowe (1974) 55 D.L.R. (3d) 292; Ryan v. Hickson (1974) 55 D.L.R. (3d) 196. In Bebee, a 15-year-old boy injured another child with an airgun given to him by his father. The English court found the father vicariously liable for the injuries his son caused, because the father failed to remove the gun from his son's possession after his child had previously broken a neighbor's window with the gun.

Here, like the father in Bebee, not only was Defendant Edward Thompson (a professional banker at HSBC) negligent for failing to ensure his son returns Plaintiff's stolen bitcoins, and for ignoring the suspicious BTC "bounties" paid to Benedict for "end-user testing"; Edward is also vicariously liable for the conversion and laundering of Plaintiff's funds, as Edward funded Benedict's escapades (see [Doc. 79 -5]) and "instructed Benedict to make transactions" for him.[12]

V.      **CONCLUSION**

For the foregoing reasons, the Court should GRANT Plaintiff's Motion for Partial Summary Judgment as to the Thompson Defendants' liability for Conversion and Trespass to Chattels.

---

[11] Children Act 1989, available at Legislation.uk.gov: *https://www.legislation.gov.uk/ukpga/1989/41/contents*
[12] See, Ex. D, *Email from Carl Hjort to Ethan Mora, "Response to the discovery conferral letter,"* dated May 5, 2023 (Edward Suppl. Resp. to Discovery), at p. 3.

DATED this 20th day of July 2023.

THE LAW OFFICE OF ETHAN MORA

*/s/ Ethan E. Mora*

Ethan E. Mora, Esq.

1040 E. Herndon Ave., Suite 202

Fresno, CA 93720

(559) 370-1485

ethanmoralaw@pm.me

*Attorney for Plaintiff Andrew Schober*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2023 I electronically filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system. As such, this document was served on all counsel of record. I also served the *pro se* Defendants via email at the following addresses:

Oliver Read

    Oliverread2001@gmail.com

Hazel Wells

    Hazelwells44@gmail.com

Paul Read

    Paulread66@aol.co.uk


                                                      */s/ Ethan E. Mora*

                                                      Ethan E. Mora, Esq.