IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01382-GPG-NRN

ANDREW SCHOBER,

    *Plaintiff,*

v.

BENEDICT THOMPSON, et al.,

    *Defendants.*

---

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [ECF #78]**

---

Defendants Benedict Thompson, Edward Thompson and Claire Thompson (collectively "the Thompsons"), by and through counsel Carl A. Hjort, III, of Robinson Waters & O'Dorisio, P.C., hereby Reply in support of their Motion for Summary Judgment and state and allege the following:

    **I.**    **Reply Concerning Undisputed Material Facts**

For the sake of brevity, the Thompsons will reply only to those paragraphs denied by the Plaintiff in the Response. All paragraphs not listed below were admitted and thus undisputed.

10.    The documents cited in this paragraph speak for themselves. (See ECF #78-2 SCHOBER_002924, ¶3 and ECF #78-1 Request for Admission #11 at page 9, ¶7). The only dispute seems to be that the FBI documents recite a date of January 29, 2018 as the date Mr. Schober downloaded the Malware and Mr. Schober contends it was actually January 27, 2018, but these differences in dates are of no moment to the analysis.

11. The documents cited in this paragraph speak for themselves. (See ECF #78-2 SCHOBER_002924, ¶5 and ECF #78-1 Request for Admission #12 at page 10, ¶3). There is no dispute that the conversion occurred on January 29, 2018.

16. The documents cited in this paragraph speak for themselves. (See ECF #78-2 SCHOBER_002927, ¶3). Whether it was the Electrum Atom software or the Plaintiff's computer that "seemed fine" is of no moment to the analysis.

17. The documents cited in this paragraph speak for themselves, regardless of how the Plaintiff now wants to recharacterize his statements to the FBI. (See ECF #78-2 SCHOBER 002927 last paragraph- 002928 first paragraph).

19. The Plaintiff has no good faith basis for this denial. To the extent that Benedict Thompson engaged in freelance end user testing for which he was paid £140 in 2016-2017 that does not constitute employment. Also, no evidence suggests the party paying for the end user testing was based in Colorado. No evidence suggests that Edward or Claire Thompson were involved in the end user testing.

20. The Plaintiff has no good faith basis for this denial. No evidence suggests the party paying for the end user testing was based in Colorado. No evidence suggests that Edward or Claire Thompson were involved in the end user testing.

21. The Plaintiff has no good faith basis for this denial. No evidence suggests the party paying for the end user testing was based in Colorado. No evidence suggests that Edward or Claire Thompson were involved in the end user testing.

24. The Plaintiff has no good faith basis for this denial. Even if cryptocurrency addresses were "bank accounts," which they are not, the documents cited by the Plaintiff fail to establish that any of those cryptocurrency addresses are in any way connected to Colorado.

26. The document cited in this paragraph speaks for itself, regardless of how the Plaintiff now wishes to recharacterize his own discovery responses (See ECF #78-3 Plaintiff's Responses to First Set of Written Discovery, Interrogatory #1 at page 4, ¶2).

27. The document cited in this paragraph speaks for itself, regardless of how the Plaintiff now wishes to recharacterize his own discovery responses (See ECF #78-3 Interrogatory #2, at page 4, ¶7).

## II. Response Concerning Disputed Facts

1. Admitted.
2. Admitted.
3. Admitted.
4. Denied. The Plaintiff never asked in discovery for the Thompsons to "produce any additional information about the annaadmams12@gmail.com address." The Plaintiff merely asked for an admission that Benedict Thompson had used this address, which was admitted with the qualification that many other people also had access to and used this address. (See Attached Ex. "A," Benedict Thompson Discovery Responses). Moreover, while the Thompsons have no direct evidence tying Henry Burchill to the theft of the Plaintiff's Bitcoin, they have stated "Henry Burchill is also a resident of Southampton, that to the extent that any location of the persons allegedly responsible for the theft of Mr. Schober's bitcoins can be only be resolved to Southampton, then it is possible that Mr. Burchill, a known computer hacker, may be the actual person responsible in this case and

3

not Benedict Thompson." (See ECF #97-3, Email from C. Hjort).  Unfortunately, the Plaintiff chose not to investigate Mr. Burchill's involvement in the matter.

5. Denied.  Benedict Thompson had no reason to disclose his use of Shapeshift in response to the Plaintiff's discovery requests, because Shapeshift is not an "exchange" as that term was defined in the discovery requests. (See Attached Ex. "A," Benedict Thompson Discovery Responses).

6. Denied. Mr. Schober secured *pro bono* counsel in the UK.  (See ECF #78-2 SCHOBER_001672).

7. Admitted.

8. Admitted.

9. Admitted.

10. Denied.  It is purely speculative that Mr. Schober "would have continued purchasing" Bitcoin.

11. Denied. This is purely self-serving speculation.

12. Denied. Mr. Schober has no claim for attorneys' fees in this matter.

13. Denied.  There is no "online copy of the malware" at the link cited, and certainly no lay juror would understand the information at the link provided.

14. Admitted.

15. Denied.  There is no Exhibit "G" attached to the Response that shows what is claimed in this paragraph.

16. Denied. No evidence exists to show that the 44n address was used by Benedict Thompson.

17. Denied, because the provenance of the cited documents is unknown.  However, even the Plaintiff admits that having a similar, but not the same IP address does not prove any

4

connection between those IP addresses. (See ECF #98, p. 6, last sentence of first full paragraph).

18. Admitted, however the Plaintiff admits that having a similar, but not the same IP address does not prove any connection between those IP addresses. Id.

19. Denied. No information was produced in discovery as to Mr. Schober's alleged certifications and Mr. Schober was not identified as an expert pursuant to Fed. R. Civ. P. 26(a)(2) by the deadline established in the Scheduling Order.

### III. Argument

#### A. The Plaintiff's Claims Are Barred by the Statute of Limitations.

The Plaintiff's claims are barred by the Statute of Limitations and none of the specious arguments made in the Response have any merit. First, the Plaintiff argues that a two-year statute of limitations should not apply to these claims based on the general proposition that when two periods of limitation are arguably applicable, the Court should choose the longer one. This, of course, ignores the settled law set forth in the opening brief that the two-year limitations period applies. This is not a situation where two statues are arguably applicable, instead Colorado state and federal courts have held that a two-year statute of limitations applies to conversion torts, and that should be the result in this case as well.

Next, the Plaintiff erroneously tries to analogize this case to a toxic tort[1] case, to sidestep the compelling precedent set forth in the opening brief holding that the plaintiff's knowledge of the identities of the potential defendants is <u>not</u> a requirement for the period of limitations to begin running. This is not a case, like a toxic tort, where causation is in doubt. Mr. Schober knew in February 2018 that his Bitcoin was stolen and the Malware was the cause, as is clearly

---

[1] Of course, toxic tort cases *always* require an expert witness, and the Plaintiff has no expert witness in this case.

shown in his statements to the FBI discussed at length in the opening brief. In fact, the analogy proposed by the Plaintiff demonstrates that the statute runs from the time of injury, not from the time of discovery of the defendant's identity. If an arsonist burns down a house, the statute of limitations begins running when the fire occurs and it is known to be arson. The date when the arsonist's identity is discovered is immaterial, because Colorado courts have held that "a plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations expires." *Lavarto v. Branney*, 201 P.3d 485 (Colo. App. 2009). It cannot be overstated that Mr. Schober did in fact learn the identities of the Defendants well before the period of limitations expired, but then waited until after it expired to file this suit. Colorado case law holds that the statute of limitations begins running when the injury and its cause are known, not when the defendant's identity is discovered.

Next, the Plaintiff erroneously claims that his conversion claim did not accrue until after he demanded the return of his Bitcoin and the Defendants refused. This is simply not the law. Making a demand for return of the goods may be an element of the tort of conversion which must be satisfied before filing a complaint, but the starting of the limitations period is not when a complaint is ready to be filed, it is when the injury and its cause are known. If the Plaintiff's position were adopted, there would be essentially no statute of limitations on conversion claims, because a plaintiff could delay for years or even decades in demanding the return of his property and then claim that the limitations period had just begun. The period of limitations starts when the plaintiff's injury and its cause are known, not when the complaint is ready to be filed.

Similarly, the Plaintiff incorrectly contends that conversion is a "continuing" tort. The cases cited by the Plaintiff in this regard are easily distinguishable. *Tiberi v. Cigna Corp.*, 89 F.3d 1423 (10th Cir. 1996) concerned a breach of contract where continued representations

6

relative to the breach could be considered continuing. *Hoery v. U.S.*, 324 F.3d 1220 (10th Cir. 2003) was a toxic tort case. Neither of these cases support the contention that conversion is a continuing tort, because it simply is not. The fact that the Plaintiff contends the Bitcoin was moved to other addresses after the initial conversion is of no moment. It is not in dispute that the Plaintiff was permanently deprived of his Bitcoin on January 29, 2018, no matter where the Bitcoin was located after that date. The Plaintiff also incorrectly argues that his tort claims do not "automatically afford him a right to seek redress in this forum." That is absolutely incorrect, the Plaintiff is proceeding under diversity of citizenship in this case and could bring those tort claims as soon as they occurred.

Finally, the Plaintiff invokes equitable tolling to justify his failure to file suit before the expiration of the statute of limitations. But, for the same reasons that Judge Wang found equitable tolling inapplicable in her order of January 14, 2022 (ECF Doc. #33), equitable tolling is inapplicable to these claims. The Plaintiff argues at length the Thompsons allegedly concealed their identities, but it is undisputed that the Plaintiff had discovered their identities by December of 2019 (*See* Complaint, ECF #1 at ¶51) and in fact, Mr. Schober knew of their identities well before that time in August of 2019 (See Attached Ex "B" SCHOBER_000893, in an email dated August 25, 2019 "[r]e: Ben Thompson, I am increasingly convinced that he wrote the code."). Even if the Thompsons had concealed their identities, which they did not, the Plaintiff has not demonstrated that this misled him into thinking he did not have a cause of action. There is simply no basis to conclude that "extraordinary circumstances" rendered the filing of the tort claims within the statutory period impossible so as to warrant equitable tolling.

7

B.  **The Thompsons Do Not Have Minimum Contacts with Colorado.**

The Plaintiff erroneously argues that refusing his demand to return the Bitcoin is purposeful availment, but this is legally incorrect.  The Plaintiff cannot create personal jurisdiction by his own act of sending a demand letter.  "Plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 285-286 (2014).  The case cited by the Plaintiff, *Relaximals, Inc. v. Brentwood Originals, Inc.*, Civil Action No. 19-cv-02721-MEH (D. Colo. Mar. 31, 2020), is easily distinguishable.  In that case, the court found that all of the following had occurred: (1) operating an interactive website; (2) putting goods into the stream of commerce knowing that some will be sold in Colorado; (3) engaging in a nationwide distribution system or marketing plan; (4) causing intellectual property harm to a Colorado resident; (5) deliberately exploiting search-engine technology to funnel searches regarding the forum plaintiff's products to defendant's products; (6) engaging in direct to consumer sales via an Internet platform; and (7) selling to the forum's residents through numerous brick and mortar retail stores.  None of those factors even allegedly occurred in this case.

The Plaintiff also argues that because he sustained his alleged injuries in Colorado, that satisfies the minimum contacts test, but this again is incorrect.  The Tenth Circuit has been quite clear that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011).  A defendant's use of the Internet does not itself create personal jurisdiction. "Consistent with the thrust of the *Calder*-derived analysis for specific jurisdiction in the internet context discussed

above, in considering what 'more' could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader* at 1241.  Regardless of whether Mr. Schober's alleged injuries occurred in Colorado, he has completely failed to demonstrate that the Defendants directed a message at an audience in Colorado and intended harm to the Plaintiff occurring primarily or particularly in Colorado.  The minimum contacts test has not been met, and to that extent, the Court need not even consider the "fair play and substantial justice" factors.  The Plaintiff's cursory discussion of these factors does not demonstrate they are met, even if they are considered.

### C. The Court Cannot Allow a Jury to Make Up a Damages Figure in this Case.

The Plaintiff does not engage with the case law cited in the opening brief regarding the measure of damages in Bitcoin cases, and instead merely claims that this is a question that "should be left to the jury."  The jury cannot be allowed to make a speculative award in this case.  As noted in the opening brief, the amount of Bitcoin allegedly converted and its value on the date of conversion are not disputed.  The measure of damages for conversion is generally the value of the converted property at the time of its misappropriation. *Masterson v. McCroskie*, 573 P.2d 547, 551 (Colo.1978).  As noted in the opening brief, the time period for valuing the Bitcoin might also extend to a "reasonable time" after the conversion, which was held to be three months.  The Plaintiff contends that he should be able to value the Bitcoin years later, at its maximum value, using the benefit of hindsight to speculate that he would have sold at the top.  A case cited by the Plaintiff even holds that damages cannot be speculative. *See Palmer v. Owners Ins. Co.*, No. 18-cv-01953-JLK (D. Colo. Nov. 6, 2019)(the court's task is to ensure that the damages are "more than speculative.").  The Court should not allow the jury to speculate as to

9

when Mr. Schober would have sold his Bitcoin, and instead should hold as a matter of law that the value is fixed at the time of the alleged conversion or a reasonable time thereafter.

### D. The Lack of an Expert Witness is Fatal to the Plaintiff's Case.

As was discussed at length in the Response to the Plaintiff's Summary Judgment Motion (ECF #82), the technical nature of this case requires an expert, and no lay juror will be able to understand the complex cryptocurrency-related subjects of testimony unaided. The Plaintiff claims that "there has never been a genuine dispute about how the Malware worked," but that is untrue. The Plaintiff has a theory of how the Malware works, but the Defendants never admitted that theory. It is incumbent on the Plaintiff to prove his case, and one of the elements of that case is how the Malware works. In his Response, the Plaintiff claims that there is an online copy of the Malware and provides a link in a footnote to this alleged copy. First, a review of this link does not reveal any copy of the Malware, but more importantly, even a cursory review of the linked site demonstrates that it is full of technical jargon that no lay juror will understand. Contrary to the Plaintiff's assertion, this is not a case of simple ledgers, transaction records and online profiles; it is a complex computer science case that requires expert testimony to prove. Finally, the Thompsons would be highly prejudiced if the Court reopened discovery for Plaintiff to drum up an expert witness at this stage of the litigation. *See Graves v. Wirta*, No. 20-cv-03595-NYW, 2022 U.S. Dist. LEXIS 82765, at *20 (D. Colo. May 6, 2022) (finding prejudice where a party intended to disclose a new expert witness upon reopening of discovery and that the potential expert "may need to be deposed, which would likely result in additional fees incurred by Defendant.")

For all the foregoing reasons, the Court should GRANT summary judgment to the Thompsons on all remaining claims in the Complaint.

Respectfully submitted,

/s/Carl A. Hjort, III
Carl A. Hjort, III
Colorado Bar No. 42108
ROBINSON WATERS & O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: 303-824-3192
Email: chjort@rwolaw.com
***Attorney for Defendants Benedict Thompson, Claire L. Thompson and Edward J. Thompson***

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. As such, this document was served on all counsel of record. I also served the *pro se* Defendants via email at the following addresses:

Oliver Read
Oliverread2001@gmail.com
Hazel Wells
Hazelwells44@gmail.com
Paul Read
Paulread66@aol.co.uk

/s/Carl A. Hjort, III
Carl A. Hjort, III