IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 21-cv-01382-GPG-NRN

ANDREW SCHOBER,

    Plaintiff,

v.

BENEDICT THOMPSON,
OLIVER READ,
EDWARD J. THOMPSON,
CLAIRE L. THOMPSON,
PAUL READ, and
HAZEL DAVINA WELLS

    Defendants.

## ORDER

Before the Court is Defendants Benedict Thompson, Edward Thompson, and Claire Thompson's (collectively, the Thompson Defendants) Motion for Summary Judgment (D. 78).[1] For the following reasons, this motion is DENIED.

### I. FACTUAL BACKGROUND

Plaintiff alleges that Defendants Benedict Thompson (Defendant Benedict) and Oliver Read (Defendant Oliver) created "clipboard hijacking" malware, which they then used to steal 16.4552 bitcoins belonging to Plaintiff. Defendant Benedict and Defendant Oliver—both residents of the United Kingdom—were teenagers at the time of the alleged theft (D. 1 at 1).

---

[1] This Order refers to the remaining Defendants—Oliver Read, Paul Read, and Hazel Davina Wells—as the "Read Defendants," and to the Thompson Defendants and Read Defendants collectively as "Defendants."

1

The alleged theft occurred in January 2018 (*id.* at 9). That month, Plaintiff downloaded "Electrum Atom" software from the online forum Reddit (*id.* at 6, 9). Unbeknownst to Plaintiff, this software contained malware allegedly developed by Defendants Benedict and/or Oliver (*id.* at 9). When Plaintiff attempted to transfer his bitcoins from one digital wallet to another, the malware executed code that replaced the address of the intended recipient wallet with a new address controlled by Defendants (*id.* at 7). On February 7, 2018, Plaintiff realized that his intended transaction had been intercepted (D. 78-1 at 4). He promptly contacted the Federal Bureau of Investigation (FBI), calling an FBI hotline on February 8, 2018 (D. 78-2). Plaintiff contacted the FBI at other times in February 2018, updating them on successive transfers of his bitcoins, and providing further details of the malware attack (*id.*).

Via blockchain tracing analyses, Plaintiff learned that his bitcoins had been transferred to a Bitfinex deposit address and converted to Monero—"a unique 'privacy-focused' cryptocurrency that deliberately obfuscates and anonymizes transactions" (D. 1 at 10 n.5). Though the full details of his investigation are not completely clear, Plaintiff purportedly was able to associate certain implicated accounts and online profiles with Defendants Benedict and Oliver by cross-checking their online forum posts with blockchain transaction records and exchange platform data (D. 97-10 at 4). In or around October 2018, Plaintiff emailed a letter to the Read Defendants demanding that they return his cryptocurrency (D. 1 at 13). In or around December 2019, Plaintiff emailed a similar letter to the Thompson Defendants (*id.* at 12).

Plaintiff filed suit on May 21, 2021, after Defendants did not return his cryptocurrency. Plaintiff is suing Defendant Thompson and his parents—Edward J. Thompson and Claire L. Thompson (*see generally* D. 1). He is also suing Defendant Read and his parents—Paul Read and

2

Hazel Davina Wells (*id.*). Plaintiff's complaint asserted four claims against all Defendants: (1) conversion, (2) trespass to chattels, (3) civil conspiracy, and (4) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 130 (*id.*). In an Order dated January 14, 2022, the Court dismissed Plaintiff's fourth claim for relief on statute of limitations grounds (*see* D. 33 at 14). The Thompson Defendants have since moved for summary judgment on Plaintiff's remaining claims (D. 78). Defendants Oliver and Hazel Davina Wells joined in this motion (D. 80; D. 81).

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must consider the factual record and reasonable inferences based on the factual record "in the light most favorable to the non-moving party." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). The moving party bears the burden of demonstrating that no genuine issue of material fact exists; if the moving party meets this burden, the opposing party must go beyond the pleadings and designate evidence showing there is a genuine triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## III.  ANALYSIS

**A.  Statute of Limitations**

Because the Court is sitting in diversity, it must apply Colorado substantive law, including Colorado's statutes of limitations.  *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945) (concluding that statute-of-limitations questions are *Erie*-substantive).  "'Whether a [Colorado] statute of limitations bars a particular claim is a question of fact,' but the issue may be decided as a matter of law 'if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date.'"  *Burns v. Mac*, No. 13-CV-2109-WJM-KLM, 2014 WL 1242032, at *11 (D. Colo. Mar. 26, 2014) (alteration in original) (quoting *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005)).  Under Colorado law, Plaintiff's claims are subject to a three-year (or possibly two-year) limitations period.[2]  *See* Colo. Rev. Stat. §§ 13-80-101(1)(h), 13-80-102(1)(a).  Two statutes could conceivably impact when this limitations period began to run here.  First, "[a] cause of action for wrongful possession of personal property, goods, or chattels shall accrue at the time the wrongful possession is discovered or should have been discovered by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108.  Second, under Colorado Revised Statutes § 13-80-118, "[i]f, when a cause of action accrues against a person, the person is out of this state and not subject to service of process or has concealed himself, the period limited for the commencement of the action by any statute of limitations shall not begin to run until he comes into this state or while he is so concealed."

---

[2] Plaintiff's remaining claims include conversion, trespass to chattels, and conspiracy.  Plaintiff's conspiracy claim—which is predicated on his conversion and trespass to chattels claims—shares a statute of limitations with them.  *Sterenbuch v. Goss*, 266 P.3d 428, 435–36 (Colo. App. 2011) (stating that "civil conspiracy claims share a statute of limitations with the underlying tort, and their accrual dates are linked to the accrual dates of the underlying tort") (citations and quotations omitted)).  Accordingly, the parties do not dispute that the same limitations analysis that applies to Plaintiff's other two claims will apply to his conspiracy claims.

4

Defendants contend that Plaintiff filed his complaint outside of the statute of limitations governing his common-law claims. Specifically, Defendants assert that a two-year statute of limitation applies to these claims, that the statute of limitations began running in February 2018 at the latest (when he discovered the loss, and that it related to the malware), and that Plaintiff's claims—first asserted on May 21, 2021—are therefore time-barred (D. 78 at 8–14). According to Defendants, the applicability of the two-year limitations period is "settled law" and "this is not a situation where two statutes are arguably applicable" (D. 99 at 5). As Plaintiff observes, this is an interesting position for Defendants to take after previously representing to the Court that Plaintiff's claims are subject to a three-year limitations period (*see, e.g.*, D. 11 at 4 ("The statute of limitations for the common law causes of action is three years.")).

For his part, Plaintiff disputes that a two (as opposed to three) year limitation period applies, including because where two different limitations periods could conceivably apply, Colorado law dictates that the Court should apply the longer period (D. 97 at 8). Plaintiff also disputes Defendants' position that his claims accrued in February 2018. Instead, he argues that his conversion claim accrued no earlier than December 2018 (when he demanded that the Thompson Defendants return his bitcoin) (D. 97 at 11) and that his trespass claim accrued no earlier than June 2019 (when he tied Defendant Benedict to a certain exchange platform) (D. 97 at 12). Plaintiff further asserts that—if necessary—the Court should apply statutory or equitable tolling doctrines (*id.* at 8 n.2, 13–14).

*1. Plaintiff's claims are subject to a three-year limitations period.*

There is no consensus among Colorado courts—or federal courts applying Colorado law—as to the statute of limitations applying to conversion and trespass-to-chattels claims.[3] *Compare Curtis v. Counce*, 32 P.3d 585, 588 (Colo. App. 2001) (applying three-year statute), *and Patterson v. Dex Media, Inc.*, No. 11-CV-02336-LTB-BNB, 2012 WL 3778338, at *5 (D. Colo. Aug. 31, 2012) (same), *with McGee v. Hardina*, 140 P.3d 165, 167 (Colo. App. 2005) (applying two-year statute), *and Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1168 (D. Colo. 2016) (same), *and Conry v. Barker*, No. CV14CV02672-CMA-KLM, 2015 WL 5636405, at *11 (D. Colo. Aug. 11, 2015) (same), *report and recommendation adopted*, No. 14-CV-02672-CMA-KLM, 2015 WL 5608133 (D. Colo. Sept. 24, 2015), *and Focke v. Allen*, No. 20-CV-03014-MEH, 2021 WL 3828714, at *5 (D. Colo. Aug. 27, 2021) (same).

The lack of consensus appears to derive from the fact that two different Colorado statutes might apply. Under Colorado Revised Statutes § 13-80-102(1)(a), "[t]ort actions" "must be commenced within two years after the causes of action accrues, and not thereafter." Because

---

[3] Courts have typically dealt with these statute of limitations issues only in the context of conversion claims. But under Colorado law, conversion and trespass-to-chattels claims are functionally the same in terms of pleading and proof (they merely support different remedies and depend on the *degree* to which the defendants interfered with the plaintiff's possessory rights):

> Historically, interference with chattels was governed by writs at law for conversion, trespass to chattels, or replevin. The technical pleading distinctions of the writ system are now mostly irrelevant to the issues a jury must decide. The practical distinction between the three causes of action is in the remedy sought or awarded. In a conversion action, the allegation is that the defendant so substantially interfered with the property that the plaintiff is entitled to recover its market value at the time of the conversion. In a trespass action, the interference is less substantial and the plaintiff seeks damages for loss of use.

Colo. Jury Instr., Civil 32:1, Notes on Use. Because these causes of action are effectively alternative formulations of the same legal theory (i.e., interference with possession of chattels), and because both potentially applicable Colorado limitations statutes facially apply to both claims, the limitations analysis for both claims is likely the same.

conversion is a tort, some courts have reasoned that this two-year limitations period applies to conversion claims.  *See, e.g.*, *McGee*, 140 P.3d at 167.  On the other hand, courts concluding that a three-year limitations period applies have relied on Colorado Revised Statutes § 13-80-101(1)(h), which provides that "[a]ll actions of replevin or for taking, detaining, or converting goods and chattels" (with certain exceptions, not applying here) "shall be commenced within three years after the cause of action accrues, and not thereafter."  *See, e.g.*, *Curtis*, 32 P.3d at 588.  For the following reasons, the Court resolves this apparent inconsistency in favor of a three-year limitations period.

First, Colorado's General Assembly has directed that when general and specific statutes conflict, courts should give effect to the specific statute:

> If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both.  If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

Colo. Rev. Stat. § 2-4-205; *accord Jones v. Cox*, 828 P.2d 218, 223 (Colo. 1992) (applying a similar general/specific canon of construction and concluding that a more specific limitations provision overrode the general limitations period for tort actions).  Here, Colorado Revised Statutes § 13-80-102(1)(a) generally subjects tort actions to a two-year limitations period, and Colorado Revised Statutes § 13-80-101(1)(h) specifically provides that certain property-related torts are subject to a three-year limitations period.  Both statutes were repealed and reenacted at the same time, so the more general § 13-80-102(1)(a) cannot be interpreted to supersede the more specific § 13-80-101(1)(h).  *See* 1986 Colo. Sess. Laws 695–96.  Accordingly, the Court must apply the specific directive that "actions for taking, detaining, or converting goods and chattels," which encompasses

Plaintiff's claims that Defendants wrongfully took possession of his bitcoins, "shall be commenced within three years after the cause of action accrues."

Second, in the limitations context, Colorado courts apply a further rule of statutory construction: "because statutes of limitation are in derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable." *Dawson v. Reider*, 872 P.2d 212, 214 (Colo. 1994) (quoting *Jones*, 828 P.2d at 222). Even if § 13-80-101(1)(h)'s specific language was not dispositive, whether this provision or § 13-80-102(1)(a) applies to conversion and trespass-to-chattels actions is at least arguable—a fact underscored by the lack of consensus among courts and Defendants' previous representation that § 13-80-101(1)(h) applies. This rule of construction suggests that Plaintiff's claims are subject to the three-year limitations period of § 13-80-101(1)(h).

Third, even if these rationales did not independently justify use of the three-year limitations period, the three-year limitations period is the law of the case. The law-of-the-case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *Lester v. City of Lafayette*, *Colorado*, No. 13-CV-01997-CMA-MJW, 2015 WL 13613269, at *2 (D. Colo. Feb. 25, 2015) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). It "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in the same case." *Id.* (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)). After a court invokes the law of the case, the court may only depart from its earlier ruling based on "(1) new and different evidence, (2) intervening controlling authority, or (3) a clearly erroneous prior decision which would work manifest injustice." *Id.* Here, at the parties' joint insistence, the Court

applied the three-year statute of limitations in assessing Plaintiff's claims at the motion to dismiss stage:

> Here, Defendants argue, and Plaintiff does not dispute, that Plaintiff's conversion and trespass to chattels claims are subject to a three-year statute of limitations. [Doc. 8 at 4 (citing to Colo. Rev. Stat. § 13-80-101(1)(h) (stating a three-year statute of limitations applies for "all actions of replevin or for taking, detaining, or converting goods or chattels")); Doc. 23 at 4 ("The defendants are correct that the limitations period for Mr. Schober's common law conversion and trespass to chattel claims is three years.")]. Thus, this court applies (without deciding) a three-year statute of limitations to its analysis.

(D. 33 at 6–7). Defendants have offered no good reason that the Court should now hold Plaintiff to the two-year limitations period. The applicable limitations period is not an evidentiary issue at all, and Defendants have not pointed the Court to any intervening controlling authority that demands a different result. Additionally, because courts are divided on this issue, the Court cannot say that applying a three-year statute would be clearly erroneous or work manifest injustice upon Defendants.

> *2. Whether Plaintiff asserted his claims within the applicable three-year limitations period is a disputed issue of material fact.*

Because Plaintiff's claims are subject to a three-year statute of limitations, the relevant summary-judgment question is whether Defendants have met their burden of showing that the undisputed facts demonstrate that Plaintiff's claims accrued more than three years before he asserted them. Defendants did not meet this burden.

By its plain terms, the Colorado accrual statute governing conversion-related claims suggests the statute of limitations does not begin to run until the plaintiff discovered (or should have discovered through reasonable diligence) that *somebody* was in wrongful possession of his

9

property. *See* Colo. Rev. Stat. § 13-80-108(7) ("A cause of action for wrongful possession of personal property, goods, or chattels shall accrue at the time the wrongful possession is discovered or should have been discovered by the exercise of reasonable diligence."); *McGee*, 140 P.3d 165 ("Because McGee attempted to recover his property *from Hardina* beginning on or about January 30, 1998, he had knowledge of the facts underlying his claim." (emphasis added)); *cf. Focke*, 2021 WL 3828714, at *5 (concluding that the plaintiff's conversion and civil theft claims had not accrued when she "only knew of the loss of her property interest" but "had no reason to suspect the wrongdoing that had caused the deprivation *or by whom*" (emphasis added)).

Defendants adduced evidence showing that Plaintiff's loss occurred in January 2018 and that he knew the fact of his loss at least by February 2018 (*see* D. 78-1 at 3–4 (admission that Plaintiff called the FBI's Public Access Line Unit on February, 8, 2018, to report that a computer intrusion "resulted in his loss of 16.4552 bitcoins"); D. 78-1 at 4 (admission that Plaintiff told the FBI that he noticed on February 7, 2018, that his attempted bitcoin transfer had been intercepted); D. 78-1 at 6 (admission that Plaintiff alerted the FBI on February 25, 2018, that his bitcoins had moved); D. 78-1 at 9 (admission that Plaintiff told the FBI that the theft began on January 29, 2018); D. 78-2 (FBI complaint form memorializing that on February 8, 2018, Plaintiff called the FBI's Public Access Line "to report computer intrusion via malware attack by unknown subject . . . resulting in a loss of 16 bitcoin" and detailing Plaintiff's other February 2018 contacts with the FBI); D. 78-3 (February 28, 2018, warning Plaintiff posted on Reddit advising others not to download the malware and that he had been "wiped out"); D. 78-3 at 3 (interrogatory response stating that the loss occurred on January 28, 2018)). They also adduced evidence that Plaintiff was aware within that same timeframe that malware had prevented his intended bitcoin transfer (D. 78-

1 at 7 (admission that Plaintiff told the FBI on February 16, 2018, that he could identify the name and file path of the malware on his laptop); D. 78-1 at 8 (admission that Plaintiff told the FBI on February 21, 2018, that the malware came from a Reddit link); D. 78-2 (Plaintiff's Reddit post warning others not to download the malware)).

But Defendants did not adduce evidence conclusively showing that Plaintiff knew—or would have known through the exercise of reasonable diligence—the other material elements of his conversion-related claims, including that any particular person or persons were in possession of his bitcoin.[4]  Rather, the earliest undisputed date on which Plaintiff knew any of Defendants' identities was October 2018, when he allegedly emailed a letter to the Read Defendants demanding the return of his cryptocurrency (*see* D. 1 at 13).[5]  Because October 2018 pre-dates Plaintiff's May 21, 2021, complaint by less than three years, there is at the very least a triable issue as to whether Plaintiff's complaint was timely.

The Court is not persuaded by Defendants' argument that the statute of limitations for Plaintiff's conversion-related claims began running when Plaintiff knew of his injury but had not yet learned the identities of the persons who had caused it.  Defendants rely on a series of negligence cases for this proposition (*see* D. 78 at 14 (citing *Tamblyn v. Mickey & Fox, Inc., Consultant Engineers*, 568 P.2d 491 (Colo. App. 1977); *Jenkins v. Duffy Crane & Hauling, Inc.*, No. 13-CV-00327-CMA-KLM, 2016 WL 9735142 (D. Colo. Oct. 17, 2016), *order vacated on*

---

[4] Defendants' summary judgment arguments generally contend that Plaintiff's lack of notice that any particular persons took his bitcoin is immaterial.  But to the extent that Defendants argue that Plaintiff did not exercise reasonable diligence, the Court concludes that there are fact issues on this question, because Plaintiff has adduced sufficient evidence that he acted diligently (*see* D. 97-10 (affidavit attesting that Plaintiff spent between 1,000 and 2,000 hours investigating the alleged theft of his bitcoins)).

[5] It strikes the Court that this date—which Plaintiff alleged in his complaint—may be the result of a typographical error.

*reconsideration*, No. 13-CV-00327-CMA-KLM, 2017 WL 4919221 (D. Colo. Oct. 27, 2017); *Lavarato v. Branney*, 210 P.3d 485 (Colo. App. 2009); *Kohler v. Germain Inv. Co.*, 934 P.2d 867 (Colo. App. 1996); and *Guidry v. United States*, No. 05-CV-01356-WYD, 2006 WL 1083959 (D. Colo. Apr. 25, 2006)). But negligence is a fundamentally different tort than conversion—unlike conversion, negligence is not subject to an accrual statute stating that claims accrue when another's "wrongful possession [of the plaintiff's property] is discovered or should have been discovered." And certain of the cases Defendants rely on actually undercut their position. *See Guidry*, 2006 WL 1083959, at *2 (denying summary judgment because "there [were] material facts in dispute concerning when Plaintiff reasonably should have discovered [the defendant's] involvement").

Even if Defendants were correct that Plaintiff's claims would ordinarily accrue when Plaintiff learned of the fact of his loss (and/or the general mechanism—malware), they fail to meaningfully grapple with Colorado Revised Statutes § 13-80-118, under which "any statute of limitations shall not begin to run . . . while [the defendant] is [] concealed." Neither their motion nor their reply address Plaintiff's statutory tolling argument (though Defendants' reply concludes Defendants did not conceal their identities (*see* D. 99 at 7)). Plaintiff has adduced summary judgment evidence from which a reasonable jury could find § 13-80-118's factual predicates satisfied. Specifically, Plaintiff has produced evidence suggesting that the thieves who stole Plaintiff's bitcoins (whoever they may have been) orchestrated a complex series of transactions and conversions (including to purportedly privacy-focused cryptocurrencies like Monero) using multiple accounts (*see* D. 97-7 (FBI report detailing these transactions and observing that the relevant transaction pattern was "indicative of flow through activity to obscure the origin of the

12

funds")). A jury could find that Defendants concealed their identities by taking such steps to obfuscate their role (if any) in the alleged theft.

In sum, Defendants have not met their summary judgment burden on the statute of limitations issue—genuine issues of disputed material fact remain as to when Plaintiff knew or should have known the material elements of his claims and as to whether the factual predicates for statutory tolling under Colorado law exist.

### B. Personal Jurisdiction

Defendants argue that they are not subject to this Court's jurisdiction because they lack minimum contacts with Colorado. Plaintiff disputes this, contending that Defendants purposefully directed their conduct at Colorado when they refused his demand that they return (or compensate him for) his bitcoins. But the real problem with Defendants' personal jurisdiction argument is that it is untimely: "If a party files a pre-answer motion and fails to assert the defense[] of lack of personal jurisdiction . . . he waives th[at] defense[]." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992) (citing Fed. R. Civ. P. 12(h)). Here, Defendants all filed pre-answer Rule 12 motions—none of which contested personal jurisdiction (D.8; D. 9; D. 11; D. 16 (Defendant Paul Read's joinder in the Thompson Defendants' motion to dismiss)). Defendants therefore waived their personal jurisdiction objections.

### C. Damages

Defendants' motion for summary judgment also addresses the appropriate measure of damages in this matter. Defendants, relying on *Diamond Fortress Technologies, Inc. v EverID, Inc.*, 2022 WL 1114528 (Del. Supr. Apr. 14, 2022), argue that "[t]he Court should . . . limit Mr. Schober's damages to the value of the Bitcoin at the time it left his possession or the highest value

within three months after that time" (D. 78 at 19). It is not clear to the Court why this is an issue appropriately raised at the summary judgment stage—this argument does not appear to turn on the presence or absence of fact issues and does not cleanly fit within the Rule 56 framework. *Diamond Fortress Technologies* addressed damages calculations in the context of a default judgment request; it is not a summary judgment case. 2022 WL 1114528, at *1.

If raised at the proper time, Defendants' damages-limitation argument might be compelling. *See*, *e.g.*, Colo. Jury Instr., Civil 32:1, Notes on Use (stating that "[i]n a conversion action, the allegation is that the defendant so substantially interfered with the property that the plaintiff is entitled to recover its market value *at the time of the conversion*" (emphasis added)); Colo. Jury Instr., Civil 32:3 ("If you find in favor the plaintiff, you shall award as (his) (her) (its) damages the full value of the [relevant personal property] at the time of the interference.").[6] But it is not a summary judgment argument and should instead be raised during pre-trial proceedings (for instance, in the context of a motion in limine seeking to preclude Plaintiff from introducing potentially irrelevant valuation evidence, or in the context of proposed jury instructions). Because Defendants' damages-limitation argument is not a summary-judgment argument, the Court will not rule on it at this stage in the litigation.

### D. Expert Testimony

Finally, Defendants claim that they are entitled to summary judgment because without expert testimony, Plaintiff cannot prove his case. Establishing Defendants' liability will no doubt require relatively complex tracing work, and this case strikes the Court as one that would greatly

---

[6] The Court does not wish to prejudge this issue, but it notes that Plaintiff faces an uphill battle in convincing it to deviate from the language of the pattern jury charges.

benefit from expert testimony. But just because engaging an expert would have been a prudent tactical choice for Plaintiff does not mean that the Court can conclude as a matter of law that Plaintiff is *required* to rely on expert testimony or that it is *impossible* for him to prove his case with lay testimony. Defendants cite no case holding that a plaintiff is required under Colorado law to engage an expert to prove up a conversion claim (even a complex one) or awarding summary judgment against a plaintiff in a conversion case because the plaintiff failed to engage an expert.

Instead, Defendants cite a single (unpublished) case from the United States District Court for the District of Utah *declining* to "grant summary judgment in favor of Defendants on the basis that Plaintiff ha[d] not designated an expert witness." *See Preventive Energy Sols., LLC v. nCap Ventures 5, LLC*, No. 2:16-CV-809-PMW, 2019 WL 2869950, at *3 (D. Utah July 3, 2019). While *Preventive Energy Solutions* acknowledges that "[c]ourts in . . . the Tenth Circuit have granted summary judgment where an expert witness has been precluded, or where the court found an expert testimony was required, but no expert had been designated," the circumstances present in such cases are not present here.

In *Harvey v. United States*, 685 F.3d 939, 950–51 (10th Cir. 2012),[7] for example, the Tenth Circuit held that summary judgment was appropriately granted because Arizona (or potentially Navajo) law required the plaintiff to present expert testimony to establish a medical malpractice claim, and Plaintiff did not comply with this state- or tribal-law requirement: "Mr. Harvey's failure to provide expert evidence on the issues of injury, causation, negligence, or wrongful act or omission rendered summary judgment appropriate on both his misdiagnosis and surgical claims

---

[7] *Harvey* is the only circuit-level case *Preventive Energy Solutions* relies on in its discussion of expert issues. *See Preventive Energy Sols., LLC*, 2019 WL 2869950, at *3.

under Navajo or Arizona law." The *Harvey* court cited to Arizona Supreme Court precedent holding that "the standard of care [in medical negligence cases] normally must be established through expert medical testimony" and to *statutory* expert testimony requirements under Arizona law for medical negligence cases. *Id.* at 951. It also cited to Navajo tribal law holding that expert testimony is required in medical negligence cases because "diagnosis of an individual requires professional expertise." *Id.* at 955.

Here, Defendants have identified no similar expert requirements under Colorado law. This is not a medical malpractice case in which Plaintiff was required by statute (or other state law) to engage an expert to proceed on his claims. The Court refuses to conjure an expert-testimony requirement applying to Colorado conversion claims out of thin air.[8] Accordingly, Plaintiff's motion for summary judgment on the basis of Plaintiff's failure to retain an expert is denied.

### IV. CONCLUSION

Based on the foregoing, the Thompson Defendants' motion for summary judgment (D. 78) is DENIED.

---

[8] While the Court will not hold that Plaintiff is required as a matter of law to engage an expert, the Court will of course apply the Federal Rules of Evidence, including Rules 602 (authorizing a witness to testify as to matters on which he has personal knowledge) and 701 (permitting a lay witness to offer opinion testimony "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702") in determining whether any trial testimony Plaintiff attempts to offer is admissible. Though the Court cannot say at this point that Plaintiff lacks competent witnesses (in part because Plaintiff's own role in investigating the purported theft of his bitcoin is unclear, because Plaintiff's discussion of the malware's operation and how he knows of the addresses embedded in the malware is conclusory, and because the Court is unsure at this point what—if any—testimony could be characterized as "opinion" testimony), Defendants may have legitimate evidentiary concerns that they can certainly raise during trial. *See, e.g.*, *Loughlin v. Amerisave Mortg. Corp.*, No. 1:14-CV-3497-LMM-LTW, 2018 WL 1896409, at *17 (N.D. Ga. Feb. 7, 2018) (collecting cases concluding that testimony regarding computer or software operation is beyond the scope of what a lay witness may properly offer), *report and recommendation adopted*, 2018 WL 1887292 (N.D. Ga. Mar. 19, 2018).

DATED December 19, 2023.

BY THE COURT:

_____
Gordon P. Gallagher
United States District Judge