IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ANDREW SCHOBER,<br><br>    Plaintiff,<br><br>    v.<br><br>BENEDICT THOMPSON, OLIVER READ, EDWARD J. THOMPSON, CLAIRE L. THOMPSON, PAUL READ and HAZEL DAVINA READ,<br><br>    Defendants. | Case No. 21-cv-01382-GPG-NRN<br><br>**PLAINTIFF'S WITNESS DISCLOSURE STATEMENT** |

1.  **INTRODUCTION**

On February 28, 2024, this Court ordered Plaintiff to submit disclosures relating to Plaintiff's witness testimony, by or before April 5, 2024 (Dkt. No. 106).

In February 2023, Plaintiff's counsel elected not to retain expert witnesses because certain issues, including how the "malware" functions and how cryptocurrency transactions are recorded, were not in dispute. Plaintiff's position is, as it was in February 2023, that he and other witnesses, including Defendant Benedict Thompson, will be able to testify as to their respective online activities and digital financial transactions.

For reasons further articulated below, there can be no reasonable dispute between the parties as to whether Plaintiff's cryptocurrencies were sent to a Bitcoin wallet address embedded in the malware installed on his laptop computer. In any event, one or more FBI agents and/or the appropriate custodian of records from the Department of Justice ("DOJ") will be subpoenaed for trial to authenticate documents or support testimony concerning the (previously, or prospectively still) undisputed fact that the malware installed on Plaintiff's laptop was used to steal Plaintiff's 16.4552 bitcoins.

Mr. Schober's testimony as to his investigation and his efforts to determine who controlled the specific Bitcoin wallet used to steal his bitcoins will constitute lay witness testimony because his testimony will not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Mr. Schober's testimony will be rationally based on his perceptions, and helpful to determining facts in issue; and his testimony will be comprised of his own reasonable inferences, based on his personal knowledge, business experience, and documents reviewed.

To the extent a malware or computer expert is required to assist the finder of fact in this matter—which, for reasons detailed herein, is unnecessary—a putative expert, to be mutually agreed upon by all parties, will be able to testify as to the functionality or features of the malware, or any other computer concept that may conceivably be disputed.

## 2.     LAY WITNESS TESTIMONY IS APPROPRIATE AND SUFFICIENT

Fed. R. Evid. 701 allows a lay witness to offer opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702," which governs expert testimony. Unlike expert testimony, lay opinion testimony is "the product of reasoning processes familiar to the average person in everyday life." *See Champagne Metals v. Ken-Mac Metals, Inc.*, No. CIV-02-0528-HE, 2009 U.S. Dist. LEXIS 134594, 2009 WL 10672256, at *5 (D. Colo. Feb. 25, 2009) (explaining under Fed. R. Evid. 701, "[t]he testimony may involve reasonable inferences based on personal knowledge, business experience and documents reviewed . . . .").

### Summary of Facts and Opinions to Which Mr. Schober Will Testify

Plaintiff Andrew Schober will testify to his investigation into the theft of his bitcoins, and he will offer opinion testimony to the extent his opinions are rationally based on his perceptions and helpful to determining facts in issue. Mr. Schober's testimony will not go beyond the modern common knowledge.

For the past decade Mr. Schober has worked full-time as a massage therapist. Although Mr. Schober obtained an Open-Source Intelligence ("OSINT") analyst certificate from the McAfee Institute, he was only compelled to obtain his OSINT certification by the circumstances that gave

{11586/002/01772685.DOCX}                              3

rise to this litigation. Mr. Schober performed his investigation (the investigation upon which his testimony will be based) prior to, and concurrent with, his efforts to become a certified OSINT analyst. See Fed. R. Evid. 701 – 02 (classifying testimony as lay or expert based on the characteristics of the testimony, not the witness).

"Open-source intelligence (OSINT) is an investigative process to find, collect, and use publicly available information. OSINT is now used for a wide variety of purposes, including cybersecurity (by both attackers and defenders), civil and criminal cases, corporate investigations, employee background checks, due diligence for transactions, marketing studies, competitive intelligence, and more." David G. Ries, OPEN-SOURCE INTELLIGENCE (OSINT): AN IMPORTANT INVESTIGATIVE TOOL FOR ATTORNEYS, 40 GPSolo 59, 59 (Sept/Oct. 2023). According to Secjuice, a security nonprofit, OSINT includes all publicly accessible sources of information, including:

> 1. The Internet, which includes the following and more: forums, blogs, social networking sites, video-sharing sites like YouTube.com, wikis, Whois records of registered domain names, metadata and digital files, dark web resources, geolocation data, IP addresses, people search engines, and anything that can be found online.
> 2. Traditional mass media (e.g., television, radio, newspapers, books, magazines).
> 3. Specialized journals, academic publications, dissertations, conference proceedings, company profiles, annual reports, company news, employee profiles, and résumés.
> 4. Photos and videos including metadata.
> 5. Geospatial information (e.g., maps and commercial imagery products).

Id. (citing Nihad Hassan, An Introduction to Open Source Intelligence (OSINT) Gathering, Secjuice (Aug. 12, 2018)).

Open-source intelligence processes are reasoning processes familiar to any average person who uses the internet or social media. Plaintiff will testify that he used OSINT processes to determine that Defendant Oliver Read and Defendant Benedict Thompson are associated with certain online aliases and transaction records.

### (a) Plaintiff's Open Source Intelligence Investigation

Mr. Schober's investigation is described in the document produced and bate stamped as SCHOBER_000001 – SCHOBER_000036. Mr. Schober will testify that, during his investigation (which he contemporaneously recorded), he used publicly-available, open-source search tools, like Google and Bitcoin blockchain explorers, to find information that led him to the identities of Defendant Oliver Read and Defendant Benedict Thompson.

Mr. Schober will testify that, in the course of his investigation, he discovered:

- The location of Defendant Oliver Read by searching and reviewing public online posts, and websites, cross-referencing and searching for exposed IP addresses, and analyzing various online and social media interactions involving Defendant Read;
- Various online posts and personal and location data posted online and associated with Defendant Benedict Thompson, and which connect Defendant Thompson to Defendant Oliver Read;
- A public online post by Defendant Oliver Read, in which Defendant Read references the malware used to convert Plaintiff's bitcoins;
- Public online and social media posts connecting and evidencing the relationship between Defendant Oliver Read and Defendant Benedict Thompson;

- Public online posts made by Defendant Benedict Thompson referencing features and techniques employed by the malware to convert Plaintiff's bitcoins;

- The malware he and the FBI found on the hard-drive of his laptop has features similar, and identical to, features used and discussed by Defendant Benedict Thompson in Defendant Thompson's public online and social media posts;

- The malware on Plaintiff's laptop contained 195,112 bitcoin addresses, and after Plaintiff searched for the transaction histories on each of those addresses, only four malware-embedded addresses had been involved in transactions;

- A now-deprecated feature of Shapeshift's publicly-available website allowed Mr. Schober to discover the connection between one of the malware-embedded Bitcoin addresses with a transaction history, and a Bitcoin wallet address owned by Defendant Benedict Thompson;

- The conclusions and opinions Mr. Schober formed based on his investigation (as a layperson) are supported by records, data, and documents collected, retained, and provided by third-parties (*e.g.*, the DOJ, Shapeshift, GitHub), which confirm the results of Plaintiff's investigation and beliefs.

Mr. Schober will testify to each step of the process he went through in conducting his investigation, including but not limited to his process for conducting and researching cryptocurrency transactions, the steps he took to identify the files installed by the malware on his laptop's hard-drive, and each of the web searches he performed to connect digital transaction records and aliases to the identities of Defendant Oliver Read and Defendant Benedict Thompson.

### (b) Evidence Relating to the Malware

Plaintiff will testify that the malware installed on his computer contained a file with a list of 195,112 Bitcoin addresses; he will also testify that only four of the 195,112 Bitcoin addresses contained in that file had been used in Bitcoin transactions[1].

The functionality and features of the malware cannot be (and have not previously been) disputed, and there is no reasonable basis to dispute that the malware installed on Plaintiff's laptop was used to steal Plaintiff's cryptocurrencies. The publicly-accessible Bitcoin blockchain shows that Plaintiff's cryptocurrencies were sent to a Bitcoin address embedded in the malware on his laptop. Plaintiff's percipient testimony, and the documents he reviewed and which are further evidenced by his correspondence with FBI agents, investigators, and other law enforcement officials, clearly demonstrate the functionality, features, and presence of the "clipboard jacking" malware on Plaintiff's laptop.

To the extent any of Defendants would, at this point, dispute the features of the malware or how the malware functions, such dispute is likely to confuse the issue to be decided by the finder of fact. The issue to be decided is whether Defendant Benedict Thompson was the person who used the malware to convert Plaintiff's bitcoins. To be clear, the issue is *not* whether a person (any person) used the malware to convert Plaintiff's bitcoins—there is no dispute that some person used the malware to convert Plaintiff's bitcoins. *See*, *e.g.*, Final Pretrial Order, Dkt. No. 108, at p. 6 (the Parties have stipulated that, "[o]n February 23, 2018, Plaintiff met with an FBI agent and gave the FBI custody of his laptop, which contained the Malware.").

---

[1] The Bitcoin addresses with transaction histories are: 1PpVQzeKrbS3h898ZMRKHPfpxRic8BTuwv; 1A6KNhoda4wo8g4Y1u6Ty3CC74y6ecfYDe; 1JrT4DePAThEHarvEiYyRu2x2anhMCsoPr; and 1CZioyptarnQ3rdT9np2rwMwXftMX9ATT7.

Were a reasonable dispute about the malware to arise, Plaintiff will, as needed, call appropriate custodians of record or agents from the FBI or DOJ to testify as to how the malware functioned and/or that the malware was used to steal Plaintiff's bitcoins. Additionally, should the testimony of a malware expert become necessary a putative expert, to be mutually agreed upon by all parties, should be appointed to testify as to the functionality and features of the malware[2].

**(c)     Bitcoin Blockchain Records**

There can be no reasonable dispute that the Bitcoin blockchain is an immutable, publicly-accessible, time-stamped ledger showing digital financial transactions between Bitcoin "wallet" addresses. The Bitcoin blockchain shows the transaction histories for all the Bitcoin addresses embedded in the malware.

Plaintiff will testify that the Bitcoin blockchain shows a direct connection between Defendant Benedict Thompson's Bitcoin wallet address, and one of the Bitcoin wallet addresses embedded in the malware (specifically, the address used to convert his bitcoins). Mr. Schober will testify that he used one of the various publicly-available Bitcoin blockchain explorers (*e.g.*, www.blockchair.com) to conduct an online search for each of the Bitcoin addresses he found embedded in the malware. He will testify that, based on simple (albeit time-consuming) searches using publicly-accessible, online search engines, he determined that only four of the Bitcoin addresses embedded in the malware had transaction histories. Because the Bitcoin blockchain ledger is a public resource that can be accessed by anyone, at any time, Mr. Schober's testimony will not be based on any scientific, technical, or other specialized knowledge within the scope of Rule 702. For example, Figure 1 (below) is a screenshot taken from the webpage with the URL

---

[2] Where the malware has been characterized as a clipboard-jacking malware containing 195,112 specific bitcoin wallet addresses.

address,

https://blockchair.com/bitcoin/transaction/a6db589147ec24d3d97acf244ac957cbfaeaf145d04c06ec57d782a62c365169 (accessed April 5, 2024), showing that Mr. Schober's Bitcoin Wallets (Bitcoin addresses: 1Mb6H2d4Xu7m5LiW2abA4xvtX7yfFHLtyk; and 1QGHJvJbsr1E3H9h3aj1xFRN2NZnhoz6aD)[3], sent Mr. Schober's bitcoins to the Bitcoin wallet with the address, 1CZioyptarnQ3rdT9np2rwMwXftMX9ATT7:



---

[3] The parties do not dispute that Mr. Schober owned and controlled these Bitcoin wallets.

{11586/002/01772685.DOCX}　　　　　　　　　9

*(Figure 1 – blockchair.com blockchain explorer search for transaction ID a6db589147ec24d3d97acf244ac957cbfaeaf145d04c06ec57d782a62c365169.)*

Plaintiff inadvertentlyسنt this transaction because the Bitcoin wallet address, 1CZioyptarnQ3rdT9np2rwMwXftMX9ATT7, was embedded in the malware and used by the "clipboard jacking" functionality of the malware to accomplish the transaction.

As shown in Figure 2, below, the Bitcoin blockchain[4] also reveals that, subsequent to the inadvertent transaction, the Bitcoin wallet with the address, 1CZioyptarnQ3rdT9np2rwMwXftMX9ATT7 (the "1CZ" address), sent Plaintiff's bitcoins to the Bitcoin wallet address, 3CWQ5d2XgCrYuz7F3g4fmhd6VQMv4iPio7 (the "3CW Address"):

---

[4] See webpage URL, https://blockchair.com/bitcoin/transaction/602ff735ec9607a1a19589f2f0f9e821403543e24a450a626cf7b71a0baa7f5d (blockchair.com public blockchain explorer, search for transaction ID 602ff735ec9607a1a19589f2f0f9e821403543e24a450a626cf7b71a0baa7f5d.

{11586/002/01772685.DOCX}                                   10



*(Figure 2 – blockchair.com blockchain explorer search for transaction ID 602ff735ec9607a1a19589f2f0f9e821403543e24a450a626cf7b71a0baa7f5d.)*

Plaintiff's testimony (and if necessary, testimony from employees at the Department of Justice, or from current or former FBI agents), along with various correspondence, records, and reports, will reveal that the 3CW Address, was: (a) used to exchange Bitcoin for Monero (another cryptocurrency, distinct from Bitcoin) by also utilizing the Monero wallet identifiable by the address,

44nUbfxaFUC42KHPm4sSy4KLVeGsHjcgHVJw1qDBpx6EZvqN9iyCpZL6ajMV2ddYPA4Jhz

P2E6a63JVasFkfGu6BGWv723i (the "44n Address"); and (b) involved in financial transactions initiated by a person utilizing the IP address "86.158.130.34".

Publicly-available online documentation, published on the official Monero website, will show that, in Monero transactions, "[t]he sender, receiver, and amount of every single transaction are hidden . . . ." See, https://www.getmonero.org/get-started/what-is-monero/ (accessed April 5, 2024). Thus, the only way an individual would be able to re-use a specific Monero address in two distinct transactions is if said person had knowledge, or a record, reflecting the specific Monero address re-used. Memorizing, or accidentally typing, on two separate occasions, a Monero wallet address, like the 44n Address, is virtually impossible.

Plaintiff will testify that he only knew to seek out and request information concerning the 44n Address based on records he personally reviewed, his use of the Shapeshift platform, and his correspondence with various third-parties about the 44n Address. During the discovery process, the Thompson Defendants, and a third-party, Shapeshift, produced records and information connecting Defendant Benedict Thompson to the 44n Address. Indeed, the parties have stipulated that "[Defendant Benedict Thompson] controlled and used the Bitcoin wallet address identifiable by the public key hash, '1BeNEdictBLbmVJ9LXkSwqiyWWf36XKTD1' (the 'Vanity Address')". (Final Pretrial Order (Dkt. No. 108)).

Records produced in this litigation by third-party, Shapeshift, show that Shapeshift facilitated a transaction involving both the 44n Address, and Defendant Benedict Thompson's "Vanity Address."

### (d)    IP Addresses

Mr. Schober will testify regarding his investigations relating to publicly-disclosed IP addresses and location tags. See *United States v. Crisman*, 2011 U.S. Dist. LEXIS 133469, *2, 2011 WL 5822731, citing *United States v. Christy*, 785 F.Supp.2d 1004, 1010 n.4 (D.N.M. 2011) (Browning, J.) for the proposition that, "[a]n IP address is an address specific to every computer attached to the internet. Anytime a computer logs onto the internet it has to have a unique IP address to transmit information and to receive information through the internet.".

There is no dispute that the IP address, "86.158.130.34", was provided for a computer located in Southampton, United Kingdom. There is also no dispute that Defendant Benedict Thompson used IP addresses similar to the "86.158.130.34" address (for example, Defendant Thompson used the IP address, "86.158.130.235"). Apparently, the only facts in dispute are: (i) whether Defendant Benedict Thompson used the "86.158.130.34" IP address on February 25, 2018; and (ii) whether Defendant Benedict Thompson controlled the particular cryptocurrency addresses—*i.e.*, the 44n Address and the 3CW Address—involved in the transactions that converted Plaintiff's bitcoins.

Plaintiff will testify that his investigation initially uncovered the transaction involving the 44n Address and the Vanity Address; and that later, records produced by Shapeshift confirmed that the transaction between the 44n Address and the Vanity Address indeed occurred. Also, during the discovery process, Plaintiff reviewed records produced by the DOJ, which summarize financial transactions between the 44n Address and the 3CW Address. The DOJ records reveal what happened to Plaintiff's converted bitcoins after they were transferred to the 3CW Address from the malware-embedded cryptocurrency address (the 1CZ address).

**Other Witnesses from Whom Testimony May be Sought**

**(a)     Former FBI agent Kiersten Hitchcock (or another agent familiar with records pertaining to the theft of Plaintiff's cryptocurrencies), or DOJ Custodian of Records**

A summary of the financial transaction records obtained by the FBI will show cryptocurrency transactions between the Bitcoin wallet with the address, 3CWQ5d2XgCrYuz7F3g4fmhd6VQMv4iPio7, and the Monero wallet with the address, 44nUbfxaFUC42KHPm4sSy4KLVeGsHjcgHVJw1qDBpx6EZvqN9iyCpZL6ajMV2ddYPA4JhzP2E6a63JVasFkfGu6BGWv723i. See, *United States v. Tao*, 2022 U.S. Dist. LEXIS 15293, *31-32, 2022 WL 252019, ("As long as [the FBI agent witnesses] limit their testimony to summarizing bank records and other financial records, their testimony will not implicate Rule 702.").

If necessary, a custodian of records from the Department of Justice will testify as to the specific features of the malware the FBI found on Plaintiff's laptop[5]—namely, the fact that the malware contained 195,112 Bitcoin addresses. *See United States v. Tao*, 2022 U.S. Dist. LEXIS 15293, *30, 2022 WL 252019 (citing *United States v. Berry*, 318 F. App'x 569, 570 (9th Cir. 2009) ("holding no abuse of discretion in treating a witness's testimony as lay testimony where the witness 'simply testified to what he found on the hard drive of [a] computer, without expressing an opinion that required specialized knowledge or offering insight beyond common understanding')")).

---

[5] Various custodians will be called to testify, as necessary, including Special Agent Kiersten Hitchcock (who has retired from her position with the FBI), Special Agent Ryan Fowler (who took over the criminal report relating to Plaintiff's stolen bitcoins after Agent Hitchcock retired), Special Agent Graham Coder (who worked with Agent Hitchcock, but is now with the FBI's Las Vegas Division), Aaron Martinez (Chief Division Counsel – FBI Denver Division, who responded to the *Touhy* Request), Taylar Dickey (Paralegal Specialist in FBI Denver, who assisted in preparing and sending the FBI's response to Plaintiff's *Touhy* request), and/or any other appropriate custodian of records for the FBI or DOJ.

### (b)   Shapeshift Custodian of Records

The authenticity of the Shapeshift records, subpoenaed by Plaintiff in the course of discovery in this matter are, apparently, not disputed. To the extent a custodian of records would be required or useful to explain or authenticate the records, an appropriate custodian will be called to testify.

### (c)   GitHub Custodian of Records

The authenticity of the GitHub records subpoenaed by Plaintiff in the course of discovery in this matter are, apparently, not disputed. The GitHub records show various IP addresses associated with specific GitHub usernames and online activity. To the extent a custodian of records would be required or useful to explain or authenticate the records, an appropriate custodian will be called to testify.

## 3.   EVIDENCE USED FOR IMPEACHMENT PURPOSES

Pursuant to Fed. R. Evid.. 607, "[a]ny party, including the party that called the witness, may attack the witness's credibility." All Defendants (except Paul Read) have indicated their intent to testify to their respective non-involvement in the events alleged in the Complaint. See Dkt. No. 108, at pp. 6-7. Because each Defendant's position in this case is, and has been, that he or she was not involved in the events alleged in the Complaint, Plaintiff is permitted to confront each Defendant with evidence that attacks the Defendant's credibility. For example, records produced by the FBI, Shapeshift, and Github, which reflect IP addresses, usernames, and email addresses associated with specific online activity, may be used to impeach Defendant Benedict Thompson's

expected testimony that, on February 25, 2018, he was not associated with the IP address "86.158.130.34".

## 4. CONCLUSION

Under Fed. R. Evid., Rule 706(a), "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations." Rule 706(a) also states that, "[t]he court may appoint any expert that the parties agree on and any of its own choosing."

Plaintiff's position is that no expert witnesses are required because Plaintiff will testify to his own investigation and his personal knowledge and experience using open-source and publicly-accessible or available tools and records, which are not based on scientific, technical, or other specialized knowledge. However, to the extent one or more expert witnesses are or may be required, Plaintiff requests leave to submit nominations for such witnesses.

Dated: April 5, 2024                      WANGER JONES HELSLEY PC


                                          By:  /S/ Ethan E. Mora
                                               Patrick D. Toole (SBN 190122)
                                               Ethan E. Mora (SBN 317937)
                                               265 E. River Park Circle, Suite 310
                                               Fresno, California 93720
                                               Telephone: (559) 233-4800
                                               Facsimile: (559) 233-9330
                                               ptoole@wjhattorneys.com
                                               emora@wjhattorneys.com
                                               Attorneys for Plaintiff, Andrew Schober

## PROOF OF SERVICE

My business address is 265 E. River Park Circle, Suite 310, Fresno, California 93720.  I am employed in Fresno County, California.  I am over the age of 18 years and am not a party to this case.

On the date indicated below, I served the foregoing document(s) described as **PLAINTIFF'S WITNESS DISCLOSURE STATEMENT** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

_____   (BY U.S. MAIL) I am readily familiar with the business' practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the United States Postal Service on the date noted below in the ordinary course of business, at Fresno, California.

_____   (BY PERSONAL SERVICE) I caused delivery of such envelope(s), by hand, to the office(s) of the addressee(s).

__X__   (**BY ELECTRONIC MAIL**) I caused such documents to be scanned into PDF format and sent via electronic mail to the electronic mail addressee(s) of the addressee(s) designated.

_____   (BY FACSIMILE) I caused the above-referenced document to be delivered by facsimile to the facsimile number(s) of the addressee(s).

_____   (BY OVERNIGHT COURIER)  I caused the above-referenced envelope(s) to be delivered to an overnight courier service for delivery to the addressee(s).

**EXECUTED on April 5, 2024, at Fresno, California**.

__X__   (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

　　　　　　　　　　　　　　　　　　　　　　　/S/ Kimberly R. Noble_____
　　　　　　　　　　　　　　　　　　　　　Kimberly R. Noble (knoble@wjhattorneys.com

## SERVICE LIST

Hazel Davina Wells
81 Oakleigh Road
Clayton, Bradford
West Yorkshire, UK
Hazelwells44@gmail.com

Oliver Read
81 Oakleigh Road
Clayton, Bradford
West Yorkshire, UK
Oliverread2001@gmail.com

Paul Read
10 Brook Lane
Clayton, Bradford
West Yorkshire, UK
Paulread66@aol.co.uk

Carl Alfred Hjort, III
ROBINSON WATERS & O'DORISIO, PC
1099 18th Street
Granite Tower
Suite 2600
Denver, CO 80202-1937
303-297-2600
chjort@rwolaw.com
btanner@rwolaw.com